**CONFIDENTIAL INFORMATION**
**EXEMPT FROM DISCLOSURE UNDER FOIA, 5 U.S.C. § 552**

# EXHIBIT A

**CONFIDENTIAL INFORMATION**
**EXEMPT FROM DISCLOSURE UNDER FOIA, 5 U.S.C. § 552**



Squire Patton Boggs (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, CA 90071

O   +1 213 624 2500
F   +1 213 623 4581
squirepattonboggs.com


Christopher Duncan
T   +1 213 689 6579
chris.duncan@squirepb.com

July 13, 2026

**VIA E-MAIL    SUSAN.S.THOMAS@CBP.DHS.GOV
BROKERMANAGEMENT@CBP.DHS.GOV**

Susan S. Thomas
Executive Assistant Commissioner
U.S. Customs and Border Protection (CBP), Office of Trade (OT)
1300 Pennsylvania Ave NW
Washington, DC 20229

**Re: Demand for Immediate Reactivation of Customs Broker Electronic Entry Filer Code**

Dear Executive Assistant Commissioner Thomas:

Squire Patton Boggs (US) LLP represents Forrest Xu ("Mr. Xu") concerning the deactivation of his customs broker electronic entry filer code, *i.e.*, N8Y, as alleged in your letter sent on June 1, 2026, as well as other customs matters. CBP's deactivation of Mr. Xu's entry filer code was unauthorized and unlawful. Please consider this letter Mr. Xu's demand for the immediate reactivation of his electronic entry filer code.

Pursuant to the U.S. Court of International Trade (CIT)'s orders in *Lizarraga Customs Broker v. United States Customs and Border Protection et al*., Slip Op. 10-113, Ct. No. 1:08-CV-00400 (Ct. Int'l Trade Oct. 4, 2010) (*Lizarraga*), CBP has no right to deactivate Mr. Xu's electronic entry filer code without adherence to proper procedure, without notice, and without an opportunity for Mr. Xu to respond, as set forth in 19 U.S.C. § 1641 and 19 C.F.R. Part 111. I understand these procedural requirements intimately because I litigated the *Lizarraga* case on behalf of the government as a CBP attorney with current DOJ International Trade Section Attorney-in-Charge Justin Miller.

Pursuant to 19 U.S.C. § 1641, CBP is authorized to license and regulate customs brokers, along with initiate disciplinary proceedings against brokers, such as revoking or suspending a license. Pursuant to 19 C.F.R. § 142.3a, the customs regulations provide that all licensed customs brokers are to receive an entry filer code. The broker regulations do not provide for the deactivation of a broker's entry filer code. The customs regulations at 19 C.F.R. § 142.3a(d), purportedly provide that "the Assistant Commissioner, Office of International Trade, or his designee, may refuse to allow the use of an assigned entry filer code if it is misused by the . . . broker." However, as explained in greater detail below, the CIT determined deactivation of a broker's entry filer code via this provision is tantamount to revocation of a broker's license, which requires due process, and the government confessed judgment on this issue.

45 Offices in 20 Countries

Squire Patton Boggs (US) LLP is part of the international legal practice Squire Patton Boggs, which operates worldwide through a number of separate legal entities.

Please visit squirepattonboggs.com for more information.

In *Lizarraga*, the customs broker argued that CBP's plan to "deactivate plaintiff's entry filer code without any explanation or hearing is effectively a revocation or suspension of plaintiff's broker's license without any showing of good cause and without the benefit of a hearing or other due process protections." The broker also argued that CBP's actions will result in broker "having to close his broker business on account of not being able to effectively and/or competitively service his clients." Finally, the broker argued CBP did not grant the customs broker "a hearing or any other semblance of basic due process in suspending his entry filer code." The CIT agreed with the broker on all points, and, ultimately, so did the government. After the government confessed judgment, CBP immediately reactivated the broker's entry filer code and took no further disciplinary action against the broker.

CBP's deactivation of Mr. Xu's electronic entry filer code, as provided in your June 1, 2026, deactivation letter, is identical to the *Lizarraga* case. CBP's deactivation of Mr. Xu's electronic entry filer code likewise amounts to a revocation or suspension of his broker license, as he has been forced to shut down his brokerage. Given CBP's actions amount to a suspension or revocation of Mr. Xu's broker license, CBP must afford Mr. Xu with the due process as required by 19 U.S.C. § 1641 and 19 C.F.R. Part 111. As in *Lizarraga*, in the instant matter, CBP did not: (1) serve Mr. Xu with a notice requesting that he show cause as to why his broker license should not be revoked, (2) notify Mr. Xu of a hearing before an administrative law judge, or (3) provide any semblance of due process whatsoever. Accordingly, CBP committed the same legal error as in the *Lizarraga* case and it must likewise reactivate Mr. Xu's entry filer code.

CBP's deactivation of Mr. Xu's electronic entry filer code is a clear and unquestionable procedural defect on CBP's part that completely violates the due process rights that Mr. Xu is guaranteed by statute and regulation. Accordingly, we demand that CBP immediately reactivate Mr. Xu's electronic entry filer code by **COB Wednesday, July 15, 2026**, or we will file a motion for a Temporary Restraining Order (TRO) against CBP at the CIT and seeking damages and attorney's fees as any defense of CBP's procedurally defective position is not substantially justified under *Lizarraga*.

If you have any questions or would like to discuss the matter further, please feel free to contact me by mobile phone at (915) 727-0070, or email at chris.duncan@squirepb.com.

Respectfully submitted,

Squire Patton Boggs (US) LLP

Christopher J. Duncan

Enc:    CBP June 1, 2026 Deactivation Letter
        Lizarraga Case Materials

cc:     Justin Miller (Justin.R.Miller@usdoj.gov)

2

6

Enclosure:
CBP June 1, 2026 Deactivation Letter



1300 Pennsylvania Avenue, NW
Washington, DC 20229

**U.S. Customs and Border Protection**

June 1, 2026

Forrest Gang Xu
20739 Lycoming St. SPC 82
Walnut, CA 91789

Dear Mr. Xu:

This letter is to inform you that, effective immediately, U.S. Customs and Border Protection (CBP) is no longer allowing you to use the assigned entry filer code N8Y, pursuant to 19 C.F.R. 142.3a(d). This action extends to both electronic filing in the Automated Commercial Environment (ACE) through the Automated Broker Interface (ABI) and paper filing utilizing your assigned entry filer code, N8Y. You may continue to file entries in the manner described at the end of this letter. CBP has taken this action because we have determined that you have willfully misused your assigned entry filer code. Additional information regarding the duration of this action and your opportunity to respond are detailed further below.

19 C.F.R. 111.37 prohibits a broker from allowing his license, permit or name to be used by or for any unlicensed person, other than his own employees authorized to act for him, in the solicitation, promotion or performance of any customs business or transaction. On numerous occasions you allowed unlicensed entity Eton Customs Brokers Inc. (Eton) to bill your client's customs duties and to submit duty checks to CBP. On August 7, 2024, during a broker visit, CBP notified you to cease conducting customs business in the name of "Eton Customs Broker Inc." Despite being told to stop, you continued to allow Eton to bill clients for customs duties and fees and advertise as a licensed customs broker. On February 5, 2025, CBP informed you by letter to cease and desist using the corporation's name "Eton Customs Broker Inc." On February 12, 2025, you responded and acknowledged improperly conducting customs business and taking corrective actions. However, you continued to allow Eton to submit duty checks to CBP. On June 03, 2025, CBP received checks from Eton which were rejected and you were again instructed to cease and desist allowing Eton to conduct Customs business. Continuing to allow Eton to transact customs business is in violation of 19 C.F.R. 111.37.

In addition, 19 C.F.R. 111.28 requires that "[e]very individual broker operating as a sole proprietor . . . must exercise responsible supervision and control (see § 111.1) over the transaction of the customs business of the sole proprietorship . . . " Between October 10, 2024 and October 19, 2025, you failed to identify the correct importer of record (IOR) when filing entry on at least 10 separate occasions. Your failure, on numerous occasions, to identify the correct IOR on an entry demonstrates a lack of responsible supervision and control, which is a violation of 19 C.F.R 111.28. In addition, between December 11, 2024 and February 3, 2026, you failed to validate multiple powers of attorney (POA) for which you filed entries, in violation of 19 CFR 111.28.

Between December 19, 2025 and March 27, 2026, CBP issued you seven separate informed compliance letters notifying you that a POA associated with an entry you filed was not obtained directly from the client and the POA information provided was not valid therefore you do not have a valid power of attorney with the importer of record for the specified entry in violation of 111.36(c)(3). You were informed that "continued misuse of your filer code when conducting Customs business including submission of invalid POAs or filing inaccurate data with CBP may result in the suspension of your filer code." In addition, after a review of POA documents including email correspondence provided by you for entry N8Y-00077768, CBP identified you are obtaining completed POAs from Feidi Corp., a foreign shipper and domestic freight forwarder without any direct contact between yourself and the importer of record (IOR). CBP also identified that the point of contact phone and fax numbers on the POA did not belong to the IOR. Failure to obtain a POA directly from the client is a violation of 19 C.F.R. 111.36(c)(3).

In addition, 19 C.F.R. 111.29(a) requires a broker to exercise due diligence in preparing or assisting in the preparation and filing of records relating to any customs business matter handled by him as a broker, and 19 C.F.R 111.32 prohibits a broker from "fil[ing] or procur[ing] or assist[ing] in the filing of any claim, or of any document, affidavit, or other papers, known by such broker to be false." Additionally, also per 19 C.F.R. 111.32, "a broker must not give, or solicit or procure the giving of, any information or testimony that the broker knew or should have known was false or misleading in any matter pending before the Department of Homeland Security or to any representative of the Department of Homeland Security." You used your entry filer code to transmit CBP Form 5106 records to CBP, knowing they contained false or unverified information. On April 29, 2026, CBP requested you provide all communication between yourself and 35 IORs regarding establishing POAs and their initial inquiry into filing a CBP Form 5106. In your response, you admitted that you knowingly provided CBP with invalid contact information not belonging to these IORs. These identified actions are all violations of 19 C.F.R. 111.32.

For CBP to consider reinstating the use of your entry filer code after a minimum of 180 calendar days from the date of this letter, you must provide the following information and documentation to CBP within 60 calendar days of the date of this letter.

- Provide a current comprehensive supervision plan describing how responsible supervision and control will be exercised over the customs business conducted under the national permit, including compliance with 19 C.F.R. 111.28.
  - Refer to CBP's Responsible Supervision and Control guidance on CBP.gov.
  - This plan must be unique to your business circumstances and practices.
- Provide a current list of all employees, if applicable, and the dates on which you hired them.
  - If you have employees, provide each employee's Wage and Tax Statement (W-2) or and other documentation proving each employee's legal status to work in the United States.
- Participate in an in-person broker visit with CBP before the 180-day suspension is complete.
- If you have authorized any current employees to sign customs documents on your behalf, provide copies of the powers of attorney you issued for that purpose.

9

- Provide your Standard Operating Procedure for preparing customs entries, including verification of invoice validity, classification, and client's right to make entry.
- Provide your Standard Operating Procedure for establishing and validating client powers of attorney including, but not limited to, the steps you take to confirm the client is legitimate.

CBP must be able to confirm the validity and sufficiency of the information and documentation provided within your submission.

You must provide the information identified above to CBP's Broker Enforcement Branch at brokermanagement@cbp.dhs.gov. If CBP is able to confirm the validity and sufficiency of the information contained within your response, your entry filer code will be reactivated on day 181. If CBP requires additional information after receiving your initial response, this will be communicated to you before the end of the 180-day period. Should you fail to provide sufficient information, CBP will continue to disallow the use of your entry filer code beyond the initial 180-day duration. In addition, CBP retains the right to initiate other enforcement actions. CBP may also conduct additional broker visit(s) to review compliance with all applicable U.S. laws and regulations.

Per 19 C.F.R. 142.3a(e), you may still file paper documents on your clients' behalf at the appropriate port of entry for manual processing while your assigned filer code is suspended. Please note that filing paper documents to the appropriate port of entry for manual processing does not discharge or reduce your obligations as a licensed customs broker in any respect. As a licensed customs broker, you are expected to exercise responsible supervision and control over the transaction of customs business per 19 C.F.R. 111.28(a) and exercise due diligence in preparing or assisting in the preparation and filing records relating to any customs business matter pursuant to 19 C.F.R. 111.29(a). Failure to comply with legal obligations as a licensed customs broker may result in monetary penalties, revocation or suspension of your customs broker license, or other appropriate actions.

If you have questions regarding this matter, please contact the Broker Enforcement Branch at brokermanagement@cbp.dhs.gov.

Sincerely,

Susan S. Thomas
Executive Assistant Commissioner
Office of Trade
U.S. Customs and Border Protection

cc:    Executive Director, Cargo and Conveyance Security, Office of Field Operations (OFO)
Executive Director, Trade Programs Directorate, Office of Trade (OT)
Director, Office of Field Operations, Los Angeles

# Enclosure:
# Lizarraga Case Materials

Slip Op. 11- 128

UNITED STATES COURT OF INTERNATIONAL TRADE

```
_____
                               :
LIZARRAGA CUSTOMS BROKER,      :
                               :
             Plaintiff,        :
                               : Before: Richard K. Eaton, Judge
                               :
      v.                       : Court No. 08-00400
                               :
BUREAU OF CUSTOMS AND BORDER   :
PROTECTION, U.S. DEPARTMENT OF :
HOMELAND SECURITY; and ROSA    :
HERNANDEZ, PORT DIRECTOR,      :
OTAY MESA, CALIFORNIA,         :
                               :
             Defendants.       :
_____:
```

OPINION AND ORDER

[Plaintiff's application for fees and other expenses pursuant to Equal Access to Justice Act is granted.]

Dated: October 17, 2011

*Sandler, Travis & Rosenberg, P.A.* (*Arthur K. Purcell* and *Kenneth N. Wolf*), for plaintiff.

*Tony West*, Assistant Attorney General; *Barbara S. Williams*, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Justin R. Miller*); Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection (*Nancy Gudel*), for defendants.

Eaton, Judge: This case is before the court on plaintiff Guillermo Lizarraga's ("plaintiff" or "Lizarraga") application for fees and other expenses pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d) (2006).  The application follows the defendants' Confession of Judgment dated

12

Court No. 08-00400                                                   Page 2

April 30, 2010 (the "Confession of Judgment") and the subsequent entry of judgment in plaintiff's favor. *See Lizarraga Customs Broker v. U.S. Customs & Border Protect.*, 34 CIT __, Slip Op. 10-113 (Oct. 4, 2010). Defendants, the Bureau of Customs and Border Protection ("Customs"), the U.S. Department of Homeland Security, and Rosa Hernandez, Port Director for the Otay Mesa Port of Entry, San Diego, California (collectively, "defendants"), oppose the application.

For the reasons set forth below, the court grants plaintiff's application for fees.

BACKGROUND

I.   Entry Filer Code

An entry filer code is a unique, three character code that Customs assigns to a licensed customs broker. 19 C.F.R. § 142.3a(b)(1) (2011). Filing "entries" means the filing of documentation required to ensure the release of imported merchandise from Customs' custody, or the act of filing that documentation. *Id.* § 141.0a(a).

Entries can be filed either manually or electronically through the Automated Broker Interface ("ABI") system. *Id.* §§ 143.34, 143.32(a). Ninety-six percent of all entries are filed electronically, and that figure is likely higher for licensed brokers. *See Automated Broker Interface (ABI)*, CBP.gov,

13

http://www.cbp.gov/xp/cgov/trade/automated/automated_systems/abi/ (last visited Sept. 20, 2011).  Each electronically-filed entry is identified by an entry number created by the broker.  19 C.F.R. § 142.3a(a), (b).  The first three digits of the entry number are the broker's entry filer code.  *Id.* § 142.3a(b)(1). Accordingly, the entry filer code identifies the broker filing a particular entry.  The ABI system is part of Customs' Automated Commercial System that allows entry filers to both submit data electronically and receive messages from Customs.  *Id.* § 143.1. In order to file electronically, the broker must have an active entry filer code and be approved for participation in the ABI system.  *Id.* §§ 143.2, 143.34.  The purpose of ABI is "to improve administrative efficiency, enhance enforcement of customs and related laws, lower costs[,] and expedite the release of cargo." *Id.* § 143.1.

II.  Suspension of Plaintiff's Entry Filer Code

Mr. Lizarraga is a licensed customs broker, and in 2008 had an assigned entry filer code.  Under 19 C.F.R. § 142.3a(d), "[t]he Assistant Commissioner, Office of International Trade, or his designee may refuse to allow use of an assigned entry filer code if it is misused by the importer or broker."  On October 21, 2008, the Director of Field Operations at the Otay Mesa Port of Entry in San Diego, California wrote to the Assistant

Court No. 08-00400                                              Page 4

Commissioner of the Office of International Trade and asked that

Mr. Lizarraga's entry filer code be deactivated for misuse.  Mem.

from Dir. Field Operations to Asst. Comm'r, Office of Int'l

Trade, Oct. 21, 2008 (C.R. Doc. 152).  Although it did not

compile a contemporaneous record,[1] Customs has represented that

---

[1]     On January 23, 2009, Customs filed, what it identified
as, the administrative record.  The record was comprised of three
looseleaf binders containing 156 documents amounting to roughly
1,000 pages.  Admin. R. (C.R. Doc. 1-156).  Of these, the
Assistant Commissioner of the Office of International Trade had
before him one document consisting of four pages when he made the
determination to suspend Mr. Lizarraga's entry filer code. *See*
Baldwin Decl., Mar. 3, 2010.  The court thoroughly reviewed the
documents and on February 24, 2010, conducted a hearing at which
counsel for defendants reviewed the documents in the record in
open court.  Tr. Or. Arg., Feb. 24, 2010, 6:10-28:2.  The first
two volumes of the record contained 122 documents, and about 800
pages whose purpose appeared to be to demonstrate to the court
that Mr. Lizarraga was a sloppy bookkeeper and a thorn in the
side of Customs generally, e.g.:

> THE COURT: Volume 1 seems to have a lot of audits of
> Mr. Lizarraga which seem to me to be completely off the
> point.  The audits find that he isn't conducting
> business the way [Customs] might have hoped.  They make
> the findings.  They ask him to correct things.  He
> corrects them or doesn't correct them.  There are
> letters back and forth.  None of these things seem to
> have, at least in Volume 1 -- I've had a lot of trouble
> figuring out how the [entry filer] code was involved.

Tr. Or. Arg., Feb. 23, 2010, 7:8-7:15.  The first document to
which counsel for the defendants pointed as having to do with the
suspension of the entry filer code was Document 146, which was
found at about eighty percent of the way through Volume 3.  This
document consists of notes, compiled with the assistance of
counsel, that purport to memorialize previous discussions.  Tr.
Or. Arg., Feb. 23, 2010, 9:16-10:19.  Thus, while there was,
arguably, some kind of "internal administrative review," no
record was made of it while it was being conducted.  For
instance, with respect to evidence that Mr. Lizarraga had

Court No. 08-00400                                                    Page 5

it then conducted an "internal administrative review" of the

Director's request.  On November 3, 2008, the Assistant

Commissioner "made the final determination to indefinitely and

immediately suspend Mr. Lizarraga's entry filer code" for misuse

(a final determination later memorialized in a letter to Mr.

Lizarraga dated November 10, 2008).  *See* Letter from Port Dir. to

Lizarraga, Nov. 10, 2008 (C.R. Doc. 156) ("Port Dir. Letter").

The Assistant Commissioner stated that "[t]he suspension is

---

provided his entry filer code for use by Mexican nationals,
document 152 was prepared by counsel after the fact:

> [COUNSEL FOR DEFENDANTS]: That information was based
> upon interviews that I had conducted with individuals
> involved in a transaction and then that information was
> then transmitted to Customs, the trade aspect of it.
> So there wouldn't be any -- 152 is a summary of the
> conversations between [U.S. Immigration and Customs
> Enforcement] and Customs.
> THE COURT: Let me see if I've got this straight.  You
> provided me with these three volumes.  They're supposed
> to represent the record but that there is nothing . . .
> in the record to back up this statement [regarding
> providing the entry filer code to Mexican nationals]?
> [COUNSEL FOR DEFENDANTS]: 152 would be the documentary
> evidence.
> THE COURT: 152 is just -- so there's nothing to back up
> the material that [the Assistant Commissioner] made his
> determination on other than 152?
> [COUNSEL FOR DEFENDANTS]: Other than the conversations
> between individuals.
> THE COURT: But they're not the record.
> [COUNSEL FOR DEFENDANTS]: No, Your Honor, they're not.

Tr. Or. Arg., Feb. 23, 2010, 10:15-11:6.  It is worth noting
that the Assistant Commissioner did not, in fact, even have
document 152 before him when he made his determination.  *See*
Baldwin Decl., Mar. 3, 2010.

16

Court No. 08-00400                                                    Page 6

necessary to prevent Mr. Lizarraga from using his individual filer code to facilitate smuggling narcotics into the Customs territory of the United States and allowing the use of his license, permit, and filer code . . . by Mexican nationals." Mem. from Asst. Comm'r, Office of Int'l Trade to Dir. Field Operations (C.R. Doc 155) ("Asst. Comm'r Mem."). Customs did not provide Mr. Lizarraga with notice of its internal administrative review or an opportunity for a hearing, nor did it solicit a written submission from him prior to its final determination.

Instead, by letter dated November 10, 2008,[2] Customs notified plaintiff that, effective November 14, 2008, it would "immediately and indefinitely" suspend his entry filer code. Port Dir. Letter (C.R. Doc. 156). The notice cited 19 C.F.R. § 142.3a(d) as authority for defendants' action, and stated that the action was "necessary to prevent the misuse of [Lizarraga's] filer code in the conducting of customs business." Port Dir. Letter (C.R. Doc. 156). The notice also stated that the suspension was to prevent Mr. Lizarraga from using his individual filer code to "facilitate smuggling narcotics," and to ensure that plaintiff's "license, permit, name[,] and filer code are not used by persons who are not employed by [Lizarraga] and authorized to act for [Lizarraga]." Port Dir. Letter (C.R. Doc.

---

[2]     Plaintiff received this notice on November 11, 2008. Lizarraga Aff. ¶ 2.

17

Court No. 08-00400                                            Page 7

156).

    The notice further stated:

> By requiring you to use the alternative filing
> procedures found in 19 CFR § 142.3a(e), [Customs] will
> be able to effectively review the accuracy of the
> documentation you are submitting for the entry of
> merchandise.  *This will enable you to continue
> conducting customs business; however, you will be
> required to file entry/entry summary documentation
> using customs assigned numbers with estimated duties
> attached before the merchandise may be released*.

Port Dir. Letter (C.R. Doc. 156).

    Thus, Customs stated that, even though he could no longer use his entry filer code, Mr. Lizarraga would nonetheless be able to continue to conduct his business as a customs broker.

III. Proceedings in CIT

    On November 13, 2008, Mr. Lizarraga sought to halt the suspension of his entry filer code by filing a motion for a temporary restraining order ("TRO") and a preliminary injunction. At the November 14, 2008 hearing, defendants opposed the entry of the TRO, in part, because they claimed the case involved America's national security.  As counsel for defendants stated:

> The importation of narcotics under an importer's filer
> code or a broker's filer code is illegal activity and
> effectively it represents a situation where the balance
> of hardships once those drugs come into the country
> would be adverse to the United States and the national
> security of the United States . . . . [N]arcotics were
> imported under this filer code.  So Customs has every
> right at this juncture to be concerned about the abuse
> or misuse of that filer code and every right to take

18

> every precaution available to it to insure national
> security for this country.

Tr. Or. Arg., Nov. 14, 2008, 8:15-9:1.

After the hearing with both sides present, the court granted plaintiff's motion for a TRO, issued an order to show cause why a preliminary injunction should not be granted, and set a hearing date.  A briefing schedule was established, which was subsequently modified by the parties.  Thereafter, defendants agreed to take no action against plaintiff's entry filer code until the court ruled on the preliminary injunction.  *See* Order at 2, *Lizarraga Customs Broker v. U.S. Customs & Border Protect.*, No. 08-00400 (Dec. 23, 2008) (acknowledging defendants' consent not to suspend plaintiff's entry filer code during the time the preliminary injunction was pending); *see also* Order at 1, *Lizarraga Customs Broker v. U.S. Customs & Border Protect.*, No. 08-00400 (Mar. 1, 2010) (reiterating that defendants would not suspend plaintiff's entry filer code until the court ruled on the motion for preliminary injunction).

Further, on November 13, 2008, plaintiff filed his verified complaint alleging, among other things, that he was a licensed customs broker and that Customs has "issued a notice . . . that plaintiff's entry filer code will be deactivated effective November 14, 2008."  Compl. ¶ 5.  Plaintiff's complaint alleged that "Customs' plan to suspend or deactivate plaintiff's entry

Court No. 08-00400                                              Page 9

filer code without any explanation or hearing was effectively a

revocation or suspension of plaintiff's broker's license without

any showing of good cause, and without the benefit of a hearing

or other due process protections."  Compl. ¶ 21.  In addition to

the preliminary injunction, the complaint sought relief in the

form of a declaratory judgment and a permanent injunction

restraining the defendants "from suspending his entry filer code

without a hearing providing for basic due process, in accordance

with the letter or spirit of 19 U.S.C. § 1641(d)(2)(B)."[3]  Compl.

---

[3]      Had Customs actually sought to revoke Mr. Lizarraga's
broker's license it would have had to comply with 19 U.S.C.
§ 1641(d)(2)(B) (2006) which provides:

   **Revocation or suspension**
        The Customs Service may, for good and sufficient
   reason, serve notice in writing upon any customs broker
   to show cause why a license or permit issued under this
   section should not be revoked or suspended.  The notice
   shall be in the form of a statement specifically
   setting forth the grounds of the complaint, and shall
   allow the customs broker 30 days to respond.  If no
   response is filed, or the Customs Service determines
   that the revocation or suspension is still warranted,
   it shall notify the customs broker in writing of a
   hearing to be held within 30 days, or at a later date
   if the broker requests an extension and shows good
   cause therefor, before an administrative law judge
   appointed pursuant to section 3105 of title 5 [5 U.S.C.
   § 3105 (2006)], United States Code, who shall serve as
   the hearing officer.  If the customs broker waives the
   hearing, or the broker or his designated representative
   fails to appear at the appointed time and place, the
   hearing officer shall make findings and recommendations
   based on the record submitted by the parties.  At the
   hearing, the customs broker may be represented by
   counsel, and all proceedings, including the proof of
   the charges and the response thereto shall be presented

20

Court No. 08-00400                                                    Page 10

¶ 23(c).

On January 12, 2009, defendants filed their Answer to the Complaint.  On January 23, 2009, defendants filed the administrative record, and on March 27, 2009, they filed their motion to dismiss and for judgment on the agency record. Thereafter, on July 13, 2009, defendants moved for a voluntary remand.  In their papers seeking the voluntary remand, defendants stated:

> Remand is particularly appropriate in this case, as we have been advised by Customs that upon remand, *the agency will issue a new notice of action and then allow Mr. Lizarraga to administratively challenge the agency's action.  The new notice of action will include a description of the procedures Mr. Lizarraga may use to contest Custom's new notice of action*.  If Mr. Lizarraga decides to administratively challenge the agency's action, the agency will review the issues presented by Mr. Lizarraga and make a new determination as to whether his entry filer code should be suspended

> with testimony taken under oath and the right of cross-examination accorded to both parties.  A transcript of the hearing shall be made and a copy will be provided to the Customs Service and the customs broker; which shall thereafter be provided reasonable opportunity to file a post-hearing brief.  Following the conclusion of the hearing, the hearing officer shall transmit promptly the record of the hearing along with the findings of fact and recommendations to the Secretary for decision.  The Secretary will issue a written decision, based solely on the record, setting forth the findings of fact and the reasons for the decision. Such decision may provide for the sanction contained in the notice to show cause or any lesser sanction authorized by this subsection, including a monetary penalty not to exceed $30,000, than was contained in the notice to show cause.

21

or deactivated.

Defs.' Mot. to Stay & for Vol. Remand ("Defs.' Remand Mot.") 3.
Thus, as early as July 13, 2009, defendants acknowledged that Mr.
Lizarraga was entitled to an opportunity to be heard, and that he
had been denied this due process by Customs' actions.

Plaintiff objected that the proposed administrative review
did not address all of Mr. Lizarraga's claims.  Pl.'s Resp. to
Defs.' Remand Mot. 1 ("Inherent in defendants' otherwise vague
proposal for remand is an admission that [Customs] failed to
provide due process to Mr. Lizarraga as required by law. . . .
Under the Administrative Procedure[] Act ("APA"), the challenged
agency action must be held unlawful and set aside because it was
undertaken contrary to law.  That result is consistent with law
and Mr. Lizarraga's legitimate expectation of finality after nine
months of litigation.").  Therefore, because Customs' offer of an
opportunity to be heard was not accompanied by a concession that
Customs' previous actions should be set aside, plaintiff did not
consent to the remand.  On August 6, 2009, the court denied
defendants' remand motion.  Order at 2, *Lizarraga Customs Broker
v. U.S. Customs & Border Protect.*, No. 08-00400 (Aug. 6, 2009)
("[T]he stay would not end in a determination concerning the
actions already taken by [Customs].").

Subsequently, the parties briefed and the court granted
defendants' request to file an amended answer, which was filed on

Court No. 08-00400                                        Page 12

September 17, 2009.  In their Amended Answer, defendants stated:

"defendants admit that the suspension or deactivation of a

broker's entry filer code must comport with 5 U.S.C. § 558."  Am.

Answer ¶ 22(iii); *see also* Tr. Or. Arg., July 15, 2010, 11:7-19

(acknowledging same).  The significance of the citation to 5

U.S.C. § 558 is that this section is part of the Administrative

Procedure Act, and provides for the "annulment of a licence" only

after the "licensee has been given—(1) notice by the agency in

writing of the facts or conduct which may warrant action; and (2)

opportunity to demonstrate or achieve compliance with all lawful

requirements."  5 U.S.C. § 558(c).

Briefing of the pending motions was complete as of November

13, 2009.  Oral argument was held on February 24, 2010.  At the

conclusion of the February 24th hearing, the court stayed

proceedings until March 10 to provide the parties an opportunity

to pursue settlement.  Thereafter, the parties informed the court

that they were unable to settle the case.  On March 26, 2010, the

court issued an order remanding the matter to Customs solely for

the purpose of making a record before an administrative law judge

with respect to plaintiff's claim that the suspension of his

entry filer code would be tantamount to a revocation of his

broker's license.  Order at 2-4, *Lizarraga Customs Broker v. U.S.

Customs & Border Protect.*, No. 08-00400 (Mar. 26, 2010).

On April 23, 2010, defendants filed their Confession of

23

Judgment in plaintiff's favor and moved to stay the execution of the remand order pending entry of the judgment itself.  The sole reason the defendants gave for proffering their Confession of Judgment was: "We have engaged in a cost/benefit analysis with respect to retaining and administering an ALJ, and based upon our analysis we offer the following Confession of Judgment . . . ." Confession of Judgment 2-3.

The substantive portion of the Confession of Judgment requested a "judgment granting relief in favor of plaintiff Guillermo Lizarraga (Mr. Lizarraga), as stated herein and in the proposed order, be entered."  Confession of Judgment 1.  Further, it offered the following "Confession of Judgment: we agree not to suspend or deactivate Mr. Lizarraga's entry filer code for any past fact or event (i.e., for any fact or event that will have occurred prior to the entry of the attached proposed Court order.)."  Confession of Judgment 3 (footnote omitted).  By these words, Customs effectively "set aside" its previous actions taken to suspend Mr. Lizarraga's entry filer code.

Further, at oral argument defendants represented to the court that Customs would not seek to summarily suspend a broker's entry filer code:

> Well, we know for certain that brokers are entitled to
> the APA if their entry filer code is deactivated, the
> procedur[al] protections of the APA.  So with respect
> to what occurred to Mr. Lizarraga in this instance, the
> Customs treatment of Mr. Lizarraga, it's certain that

24

Court No. 08-00400                                                    Page 14

that is not going to occur again.

Tr. Or. Arg., July 15, 2010, 10:13-18.  Counsel's reference to

the APA was to the provisions of 5 U.S.C. § 558.

Thereafter, in *Lizarraga*, the court found that the

Confession of Judgment mooted plaintiff's motion for a

preliminary injunction because it "remove[d] the threat that his

business will be harmed as a result of the findings of the

internal investigation."  *Lizarraga*, 34 CIT at __, Slip Op. 10-

113, at 14 (Oct. 4, 2010).  The accompanying judgment ordered:

> judgment granting relief in favor of plaintiff is hereby
> entered; . . . the Remand Order dated March 26, 2010 is
> declared moot, and thus the parties are relieved from
> compliance therewith; . . . the defendants shall not
> suspend or deactivate plaintiff's entry filer code for
> any past fact or event (i.e., for any fact or event that
> will have occurred prior to the entry of this judgment);
> and . . . the suspension, deactivation, revocation or
> similar act or threat thereof of a broker's entry filer
> code must comport, at a minimum, with 5 U.S.C. § 558
> (2006).

Judgment at 1-2, *Lizarraga Customs Broker v. U.S. Customs &*

*Border Protect.*, No. 08-00400 (Oct. 4, 2010).

On December 21, 2010, plaintiff filed a Form 15 application

for attorney's fees under the Equal Access to Justice Act, 28

U.S.C. § 2412(d) and USCIT R. 54.1, seeking a reimbursement of

attorney's fees in the amount of $223,305.83 and an additional

$2,850.16 for costs and expenses, for a total of $226,155.99.

Court No. 08-00400                                          Page 15

DISCUSSION

I.   Equal Access to Justice Act Framework

Under EAJA, "a court shall award to a prevailing party other than the United States fees and other expenses . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust."  28 U.S.C. § 2412(d)(1)(A) (2006).  A position is substantially justified if it is "justified to a degree that could satisfy a reasonable person" and has a "'reasonable basis in both law and fact.'"  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal citation omitted).  The government's "position" includes the underlying actions of any administrative agency, as well as the government's litigation arguments.  *Smith v. Principi*, 343 F.3d 1358, 1361-62 (Fed. Cir. 2003).  Although the "position" of the government involves prelitigation conduct as well as the litigation itself, "only one threshold determination for the entire civil action is to be made."  *Comm'r, Immigration & Naturalization Serv. v. Jean*, 496 U.S. 154, 159 (1990).

Pursuant to EAJA, an application for fees and expenses must be granted when: "(1) the claimant is a prevailing party; (2) the government's position during the administrative process or during litigation was not substantially justified; (3) no special circumstances make an award unjust; and (4) the fee application is timely and supported by an itemized fee statement."  *Former*

26

Court No. 08-00400                                                    Page 16

*Emps. of Tyco Elecs., Fiber Optics Div. v. U.S. Dep't of Labor*, 28 CIT 1571, 1577, 350 F. Supp. 2d 1075, 1081 (2004) (citing 28 U.S.C. § 2412(d)(1)(A)-(B)).  Furthermore, the court "shall not . . . award[] in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee."  28 U.S.C. § 2412(d)(2)(A)(ii).


II.  Plaintiff's Eligibility for Fee-Shifting Based on Case's
     Procedural History

     Defendants begin their response to Mr. Lizarraga's application by arguing that the court need not engage in the four-part analysis, outlined above in *Tyco*, because the plain language of the EAJA statute demonstrates that the fee-shifting provisions do not extend to issues that were never addressed by the court:

> Ultimately, the Court never reached the merits of Mr. Lizarraga's claims or the merits of the Government's dispositive motions as the Government filed a Confession of Judgment that disposed of the case prior to the effectuation of the Remand Order.  Specifically, under the Confession of Judgment, the Government agreed not to suspend or deactivate Mr. Lizarraga's entry filer code for any past fact or event.

Defs.' Mem. in Opp. to Pl.'s Appl. ("Defs.' Mem.") 3.  In other words, defendants assert that the plaintiff may seek EAJA reimbursement only for claims actually considered by the court.

27

Here, defendants insist that Mr. Lizarraga is not entitled to an award of fees because the court never determined if he was entitled to the full due process protections he would have received had Customs sought to revoke his broker's license.

In making their argument, defendants contend that entertaining Mr. Lizarraga's application would put the court "'in the position of conducting essentially de novo review of the entire case for purposes of the fee litigation, contrary to the command against 'spawn[ing] a second litigation' of the Supreme Court and to the far more streamlined 'substantial justification review' envisioned by the EAJA itself.'"  Defs.' Mem. 10 (quoting *Hardisty v. Astrue*, 592 F.3d 1072, 1078 (9th Cir. 2010), *cert. denied*, 131 S. Ct. 2443 (2011)); *see also Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 609 (2001) ("We have also stated that 'a request for attorney's fees should not result in a second major litigation, and have accordingly avoided an interpretation of fee-shifting statutes that would have 'spawned a second litigation of significant dimension.'" (internal citations omitted)).

The court finds that the *Hardisty* rationale does not extend to the circumstances of this case.  In *Hardisty*, the plaintiff challenged his denial of supplemental disability income by the Social Security Administration on several grounds.  *Hardisty*, 592 F.3d at 1075.  The district court, however, remanded solely on

28

the basis that the agency improperly discredited the plaintiff's testimony.  In doing so, the court chose not to consider the other arguments raised by him.  *Id.*  When the plaintiff later sought EAJA fees, the court concluded that, because the agency was "substantially justified" in contesting Hardisty's credibility, he was not entitled to attorney's fees on the issue of his testimony.  In addition, the court declined to award attorney's fees based on the other arguments that it had chosen not to reach.  *Id.* at 1077 ("Nothing in these provisions extends fee-shifting to issues not adjudicated.  Section 2412(d)(1)(A) provides no indication that attorneys' fees should be awarded with respect to positions of the United States challenged by the claimant but unaddressed by the reviewing court.").  The Court of Appeals for the Ninth Circuit affirmed the latter ruling.

The posture of this case distinguishes it from *Hardisty*.  First, as defendants themselves pointed out in their papers seeking entry of the Confession of Judgment,

> [h]ere . . . we agree not to suspend or deactivate Mr. Lizarraga['s] entry filer code for any past fact or event.  This is the sum of the relief that is legally available to Mr. Lizarraga regarding his challenge to the merits of [Customs'] determination to suspend or deactivate his code . . . .  Accordingly, pursuant to Article III, there is no longer a justiciable case or controversy with respect to this claim.

Confession of Judgment 4.  Thus, as defendants acknowledge, the question of the legality of Customs' actions in suspending Mr.

Court No. 08-00400                                                Page 19

Lizarraga's entry filer code was before the court and resolved in
his favor.

In addition, while defendants characterize the due process
claim as being rendered moot, for purposes of this application
that is not precisely the case.  That is, while defendants assert
that they did not concede the issue of whether Mr. Lizarraga was
entitled to the procedural protections of section 1641(d), Defs.'
Mem. 3, they did concede the larger due process point.

Indeed, throughout this litigation, Customs has
progressively acknowledged that Mr. Lizarraga was entitled to,
and denied, due process at the administrative level.  Thus, in
their Motion for a voluntary remand, Amended Answer, statements
in open court, and Confession of Judgment, the defendants
effectively conceded that Mr. Lizarraga had been denied adequate
due process administratively.  Defendants first made this
concession by seeking a voluntary remand to revisit Customs'
decision to suspend Mr. Lizarraga's entry filer code, and
offering to provide him with notice and an opportunity to
challenge Customs' actions.  Defendants' concession became more
specific by admitting that he was entitled to the protections of
5 U.S.C. § 558, Amend. Answer ¶ 22(iii), and making similar
statements in open court during their motion for entry of the
Confession of Judgment.  Finally, in the Confession of Judgment,
Customs annulled its acts at the administrative level and

Court No. 08-00400                                              Page 20

provided guarantees of due process in the future.  Therefore, even though the Confession of Judgment prevented the court from ruling on the exact nature of the required due process, the overarching issue (i.e., that Mr. Lizarraga was entitled to some due process protection) was admitted by Customs.

In fact, counsel for defendants conceded that not only would Mr. Lizarraga be entitled to the benefits of the APA should he again find himself in the situation presented here, but that "brokers are entitled to the APA."  Tr. Or. Arg., July 15, 2010, 10:13-14.  This admission was then included in the declaratory portion of the court's judgment ending the case.  Judgment at 1-2, *Lizarraga Customs Broker v. U.S. Customs & Border Protect.*, No. 08-00400 (Oct. 4, 2010) ("the suspension, deactivation, revocation or similar act or threat thereof of a broker's entry filer code must comport, at a minimum, with 5 U.S.C. § 558 (2006)."  Thus, although the court may not have ruled on the merits of the precise limits of the due process to which Mr. Lizarraga was entitled (i.e., whether he was entitled to the same level of due process that he would have been had Customs wished to revoke his broker's license), the material issues in this case were resolved in plaintiff's favor.  This is demonstrated by the judgment, which granted relief with respect to Customs' acts in suspending Mr. Lizarraga's entry filer code and as to the minimum due process requirements to be afforded brokers thereafter.

Moreover, unlike the Court in *Hardisty*, the court was fully engaged with and cognizant of all of the due process arguments in this case throughout the litigation. This was not the situation in *Hardisty*, a primary concern of the Ninth Circuit:

> Such an inquiry requires the district court to decide whether government positions it may not have evaluated at all were in fact substantially justified. That puts the district court in the position of conducting essentially de novo review of the entire case for purposes of the fee litigation . . . . We decline to impose such burdens on district courts.

*Hardisty*, 592 F.3d at 1078. That is not the case here, however, because the court reviewed all of the relevant facts and law in the case. Specifically, on February 24, 2010, the court conducted a hearing at which the administrative record was examined in detail. In addition, the opinion accepting defendants' Confession of Judgment discussed both the revocation of the entry filer code and due process considerations. Therefore, addressing this EAJA application will not "spawn a second litigation" that raises facts and legal issues unfamiliar to the court.

Important policy reasons also support allowing EAJA applications to proceed in cases conceded by the government before resolution by a court. As the Supreme Court emphasized, "[t]he clearly stated objective of the EAJA is to eliminate financial disincentives for those who would defend against unjustified governmental action and thereby to deter the

32

unreasonable exercise of Government authority." *Ardestani v. Immigration & Naturalization Srv.*, 502 U.S. 129, 138 (1991). The government, therefore, should not be able to avoid liability simply by precluding decisions on the merits. In *Foster v. Boorstin*, 561 F.2d 340 (D.C. Cir. 1977), the Court, although discussing fee-shifting in the context of a Title VII case that did not advance past the filing of a complaint, noted that:

> [i]f the government could avoid liability for fees merely by conceding the cases before final judgment, the impact of the fee provision would be greatly reduced. The government would remain free to assert boilerplate defenses, and private parties who served the public interest by enforcing the Act's mandates would be deprived of compensation for the undertaking. Thus, a general bar to awards of fees in cases resolved before final judgment cannot be accepted by the court.

*Foster*, 561 F.2d at 343 (citations omitted). Similar concerns are present here.

Therefore, the court holds that plaintiff is not foreclosed from seeking EAJA fees for the reasons advanced by defendants. As such, a review of the four-part analysis set forth in *Tyco Electronics* is warranted.


A. Prevailing Party Status

The defendants do not dispute that plaintiff was the prevailing party in this action. Further, as plaintiff points out, an EAJA applicant can be the "prevailing party" for purposes of section 2412 where the requested relief is granted and the

Court No. 08-00400                                      Page 23

case declared moot.  Pl's Br. in Supp. of Mot. for Att'y's Fees &
Expenses ("Pl.'s Br.") 6 (citing *Atochem v. United States*, 9 CIT
207, 209, 609 F. Supp. 319, 321 (1985); *Consol. Int'l Auto., Inc.
v. United States*, 16 CIT 692, 695, 797 F. Supp. 1007, 1010
(1992)).  Specifically, plaintiff cites *Consolidated
International* for the proposition that "a court should look to
the substance of the litigation, and not merely to the technical
disposition of the case or motion."  *Consol. Int'l*, 16 CIT at
695, 797 F. Supp. at 1010.  Mr. Lizarraga also relies on *United
States v. Hitachi Am., Ltd.*, 24 CIT 497, 101 F. Supp. 2d 830
(2000), where this Court noted that a "prevailing party" is "one
who 'succeeds on any significant issue in litigation which
achieves some of the benefit the parties sought in bringing
suit,' not success on each issue sued."  *Hitachi*, 24 CIT at 498,
101 F. Supp. 2d at 832 (quoting *Hensley v. Eckerhart*, 461 U.S.
424, 433 (1983)).

     With these principles in mind, plaintiff argues that he
"prevailed" in this litigation because a judgment was entered in
his favor; he was successful in setting aside Customs' earlier
action by blocking it from deactivating his entry filer code
based upon any past facts or events; and further, that the case
established a minimum level of due process to which a broker is
entitled before his license can be suspended or deactivated.
Pl.'s Br. 8; *see also Lizarraga*, 34 CIT at __, Slip Op. 10-113,

Court No. 08-00400                                                      Page 24

at 16.

The court agrees with plaintiff that he was the "prevailing party."  Only the most mechanical interpretation of that term could lead to a different conclusion based on the relief initially requested by Lizarraga and the final resolution of this case.  In the demand for relief in his Complaint, plaintiff sought preliminary and permanent injunctions restraining the defendants from "suspending or deactivating plaintiff's entry filer code."  Compl. ¶ 23(b), (c).  Likewise, the final judgment in this case ordered that defendants shall "not suspend or deactivate plaintiff's entry filer code for any past fact or event," thus effectively setting aside Customs' actions. *Lizarraga*, 34 CIT at __, Slip Op. 10-113, at 14.  In addition, defendants' remand request, their Amended Answer, defense counsel's representations in open court, and the judgment itself establish that, as a minimum, a broker similarly situated to Mr. Lizarraga is entitled to the benefits of the APA.  *Lizarraga*, 34 CIT at __, Slip Op. 10-113, at 16–17.  Looking to the "substance of the litigation" then, Mr. Lizarraga clearly prevailed in ultimately securing this permanent guarantee from the defendants. He thus unquestionably "'succeed[ed] on [a] significant issue in litigation,'" and "'achieve[d] some of the benefit [he] sought in bringing suit.'"  *See Hitachi*, 24 CIT at 498, 101 F. Supp. 2d at 832 (citations omitted).

35

Court No. 08-00400                                              Page 25

Therefore, plaintiff has satisfied the EAJA "prevailing party" element.

B. Substantial Justification

To determine if a position is "substantially justified," the Federal Circuit "requires that the Government show that it was *clearly* reasonable in asserting its position, *including its position at the agency level*, in view of the law and the facts." *Gavette v. Office of Pers. Mgmt.*, 808 F.2d 1456 (Fed. Cir. 1986); *see also Shinyei Corp. of Am. v. United States*, No. 2010-1178, 2010 WL 4146384, at *3 (Fed. Cir. Oct. 22, 2010) (quoting *Pierce*, 487 U.S. at 565) ("A position is substantially justified if it is 'justified to a degree that could satisfy a reasonable person' and has a 'reasonable basis in law and fact.'").  The defendants bear the burden of demonstrating that their position was substantially justified.  *See Nakamura v. Heinrich*, 17 CIT 119, 120 (1993) (not reported in the Federal Supplement) (citing *Gavette*, 808 F.2d at 1467).

> Courts are often reluctant to award fees because they
> have operated so long under the American rule
> prohibiting fee-shifting.  In fact, the reluctance of
> the courts to award fees prompted the adoption of the
> language in Rule 37 on which this standard is based.
> Under these circumstances, it is particularly
> appropriate to place the burden on the government to
> prove the reasonableness of its actions.  To do so
> encourages parties to contest action which they believe
> to be unreasonable and thereby serves to refine public
> policy.

36

Court No. 08-00400                                                Page 26

*Gavette*, 808 F.2d at 1465-66 (quoting H.R. Rep. No. 1418, at 14 (1980)).

Plaintiff insists that defendants have not met their burden primarily because of Customs' actions at the administrative level.  Looking at defendants' administrative position, Mr. Lizarraga stresses that defendants failed to give him notice of Customs' proceeding, or to offer him any opportunity to defend himself.  Pl.'s Br. 8.  He relies on *Bonanza Trucking Corporation v. United States*, 11 CIT 436, 664 F. Supp 1453 (1987), which involved the failure to disclose an internal investigative report in proceedings to revoke a license to cart bonded merchandise. Pl.'s Br. 8.  The failure led this Court to question whether "asserting such denial of due process can ever result in an *ex post facto* determination under EAJA that the position of the United States in court was substantially justified."  *Bonanza Trucking*, 11 CIT at 440, 664 F. Supp at 1456.

Plaintiff then notes that, despite the alleged gravity of his action (i.e., that the national security of the country was at stake), it was revealed during the litigation that Customs compiled no contemporaneous administrative record prior to the commencement of this action.  Pl.'s Br. 10.  Moreover, Mr. Lizarraga was not permitted to see, review, or respond to any of the "charges" underlying the agency's action.  Pl.'s Br. 10.

According to plaintiff, Customs also failed to provide him (or any other broker) with any guidance on what type of actions would constitute "misuse" of the entry filer code, and arbitrarily and capriciously denied his request for even a short delay of the effective date for deactivation.  Pl.'s Br. 11.  Taken together, then, Lizarraga contends that "from the point of view of a 'reasonable person,' defendants' position at the administrative level, particularly the decision to completely deny [] Lizarraga due process prior to taking action that defendants knew or should have known would destroy his business, would not be considered correct."  Pl.'s Br. 12.

Defendants argue that their position regarding Mr. Lizarraga's due process claim was reasonable because: (1) it was based upon a reasoned examination of the entry process and the factors that distinguish entry filer codes from broker's licenses; (2) there is a "genuine dispute" between the parties as to whether Mr. Lizarraga should have been afforded the procedural protections of 19 U.S.C. § 1641(d) prior to the deactivation or suspension of his entry filer code; and (3) the question of what due process should be afforded customs brokers when their entry filer codes are deactivated is one of first impression, and the agency's processes were consistent with its mission of border security and protecting the integrity of the entry process. Defs.' Mem. 12.

Court No. 08-00400                                                    Page 28

The court concludes that defendants' position was unreasonable and that Customs has conceded as much.  As noted, "only one threshold determination for the entire civil action is to be made."  *Jean*, 496 U.S. at 159.  That is, the measure of "substantial justification" is not made at various stages of a case, but only once.  Here, it is clear that the actions taken at the agency level by Customs were not justified, and that defendants recognized that this was true early on in the proceedings before the court.  First, even before filing their Amended Answer, defendants sought a voluntary remand to: (1) issue a new Notice of Action; and (2) allow Mr. Lizarraga to administratively challenge the agency's action.  Defs.' Mot. to Stay & for Vol. Remand 2.  Thus, at the beginning stages of the litigation, defendants recognized that Mr. Lizarraga was entitled to due process, which he had been denied when the initial determination was made.

Thereafter, defendants filed their Amended Answer which stated "defendants admit that the suspension or deactivation of a broker's entry filer code must comport with the [APA]."  Am. Answer ¶ 22(iii).  Thus, defendants conceded not only that Lizarraga and other brokers were owed due process, but they identified the minimum procedures to which they were entitled.  Finally, in their Confession of Judgment, defendants conceded their error in suspending Mr. Lizarraga's entry filer code.

Court No. 08-00400                                          Page 29

Confession of Judgment 3 ("[W]e agree not to suspend or deactivate Mr. Lizarraga's entry filer code for any past fact or event.").  Thus, it is clear that defendants acknowledged that Customs' actions were not based on a "reasoned examination" of the entry process, and that there was no genuine dispute on the case's two major issues, i.e., (1) that Customs was not legally justified in its suspension of Mr. Lizarraga's entry filer code; and (2) Mr. Lizarraga was entitled to due process before his entry filer code could be suspended.  Indeed, the only "genuine dispute" in this case was the kind of due process that plaintiff was entitled to when Customs moved against him.  Based on the foregoing, it is clear that defendants have not demonstrated that their position was substantially justified.

    C. Special Circumstances

    Should the court find that their position was not substantially justified, defendants argue, in the alternative, that special circumstances make a fee award unjust, as "equitable considerations weigh against awarding EAJA fees."  Defs.' Mem. 24—25 (listing as such "equitable considerations": (1) "the alleged misuse associated with Mr. Lizarraga's filer code [that] was compromising the integrity of the entry process"; (2) the lack of "clear standards, by way of judicial precedent, statute, or otherwise, that could have guided the Government"; and (3)

40

"Mr. Lizarraga's actions that . . . unnecessarily protracted this litigation").  They note that special circumstances have been recognized where the government unsuccessfully advanced novel and credible legal theories in good faith, where the case is one of first impression, or where there is an unsettled area of the law. Defs.' Mem. 24.  Characterizing their actions during the litigation as "advanc[ing] a novel and credible legal theory," defendants view an award of attorney's fees in this case as "punish[ing] the Government for advancing a plausible legal argument in good faith."  Defs.' Mem. 24.

Despite defendants' arguments to the contrary, the progress of this case demonstrates that defendants never advanced any novel theories, as they quickly moved to abandon their position with respect to Customs' administrative action.  Although defendants claim that the decision to confess judgment was based on a cost/benefit analysis, it is simply not credible that they would abandon the country's national security because of the cost of engaging an administrative law judge.  Rather, it seems clear that defendants realized their case was untenable, and sought an accommodative result.  Indeed, defendants never advanced a "plausible legal theory," but rather progressively receded from Customs' initial position until ultimately conceding error and ending the case.

As to defendants' claim that Mr. Lizarraga unnecessarily

41

protracted the litigation, the facts indicate the contrary.  That is, plaintiff can hardly be said to have extended the case by refusing to agree to actions that were not in his best interest. For instance, had plaintiff agreed to the voluntary remand, there is no guarantee that he would have achieved the result of Customs withdrawing the suspension of his entry filer code, the very result he accomplished by continuing the case.  Thus, this case presents no special circumstances that would preclude an EAJA award, rather, if the equities favor either party, it is plaintiff.

   D. Timely Filed Itemized Statement

Under 28 U.S.C. § 2412(d)(1)(B), "[a] party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses . . . , including an itemized statement . . . stating the actual time expended and the rate at which fees and other expenses were computed."  28 U.S.C. § 2412(d)(1)(B). Thus, the final component of the four-part analysis set forth in *Tyco Electronics* is whether "the fee application is timely and supported by an itemized fee statement."  *Former Emps. of Tyco Elecs. v. U.S. Dep't of Labor*, 28 CIT 1571, 1577, 350 F. Supp. 2d 1075, 1081 (2004).  For purposes of EAJA, an application is timely if it is filed "within thirty days of final judgment in

Court No. 08-00400                                        Page 32

the action," and "'final judgment' means a judgment that is final

and not appealable."  28 U.S.C. §§ 2412(d)(1)(B), (d)(2)(G).

Under Fed. R. App. P. R. 4(a)(1)(B), a final judgment is

appealable "within 60 days after the judgment or order appealed

from is entered" when "the United States or its officer or agency

is a party."  Therefore, for purposes of EAJA, an applicant has

thirty days from the expiration of the sixty-day appeal period to

file an EAJA application.  *See Impresa Construzioni Geom.*

*Domenico Garufi v. United States*, 531 F.3d 1367, 1370 (Fed. Cir.

2008) ("[T]he time for filing an EAJA request [runs] from the

expiration of the time for appeal, without consideration of

whether the particular final judgement would have or could have

been appealed.").

Here, final judgment was entered on October 4, 2010,

*Lizarraga*, 34 CIT __, Slip Op. 10-113.  Thus, the judgment was

appealable until December 3, 2010 and plaintiff had until January

3, 2011 to file his EAJA application.  Plaintiff filed his Form

15 application on December 21, 2010 and also provided the

requisite itemized statement detailing the time expended on the

case, as well as the appropriate supporting documentation

demonstrating that he meets the net worth requirement of EAJA.[4]

---

[4]    Under 28 U.S.C. § 2412(d)(2)(B), parties eligible to
recover fees and expenses under EAJA include "(i) an individual
whose net worth did not exceed $2,000,000 at the time the civil
action was filed, or (ii) any owner of an unincorporated

43

Court No. 08-00400                                              Page 33

Pl.'s Decl. in Supp. of Appl., Ex. A, B.  The defendants do not
dispute that plaintiff's application was timely filed.
Therefore, plaintiff has satisfied all four parts of the *Tyco*
analysis.


III. Amount of Award

     The plaintiff's itemized statement includes (1) 671 hours of
attorneys' time; (2) 19.1 hours of paralegals' time; and (3)
other costs and expenses totaling $2,850.16.  Pl.'s Decl. in
Supp. of Appl., Ex. A.  The plaintiff thus seeks reimbursement
for $223,305.83 in combined attorney and paralegal fees, and an
additional $2,850.16 in costs and expenses, for a total of
$226,155.99.  Pl.'s Decl. in Supp. of Appl. 5 ¶ 13.


     A. Apportionment

     The problem arises as to how to handle fees incurred by Mr.
Lizarraga with respect to pressing his position that he was
entitled to "basic due process, in accordance with the letter or
spirit of 19 U.S.C. § 1641(d)(2)(B)" as demanded in his

---

business, or any partnership, corporation, association, unit of
local government, or organization, the net worth of which did not
exceed $7,000,000 at the time the civil action was filed, and
which had not more than 500 employees at the time the civil
action was filed."  28 U.S.C. § 2412(d)(2)(B).  Here, plaintiff
has demonstrated his eligibility through submission of an
affidavit from his Certified Public Accountant.  Baker Aff.,
Pl.'s Decl. in Supp. of Appl., Ex. B.


44

Complaint.  Compl. ¶ 23(c).  That is, in his Complaint Mr. Lizarraga insisted that, before his entry filer code could be suspended, he was entitled to all of the procedures and protections to which he would have been entitled had Customs sought to revoke his broker's license.  While it is clear that defendants' suspension of Mr. Lizarraga's entry filer code at the administrative level was not substantially justified, it is also clear that the precise degree of due process to which he was entitled at the administrative level remained an open question at the close of the case.  The court never reached a final decision on this issue because defendants' Confession of Judgment ended the case.

The question then becomes whether Mr. Lizarraga is entitled to legal fees for all of the time his counsel expended, or only for the time spent on the precise issues on which he received a favorable judgment.  In other words, while the court has rejected defendants' claim that Mr. Lizarraga is not entitled to any legal fees because it did not reach the merits of Mr. Lizarraga's claims, this does not settle the question of whether he is entitled to fees for the issues on which he did not receive all of the relief demanded in his complaint.

The court finds that Mr. Lizarraga is entitled to attorney's fees for all of the time his lawyers put into this case for two reasons.  First, as noted, the inquiries to determine (1) whether

45

Court No. 08-00400                                                    Page 35

plaintiff is a prevailing party and (2) whether there was a substantial justification for the government's actions are made once for the entire litigation, not on an issue-by-issue basis. This being the case, the Supreme Court has indicated that only one finding should likewise be made with respect to fees, unless the claims in a lawsuit are so distinct they could have been litigated in separate lawsuits. *See Hensley*, 461 U.S. at 435–36; *see also Wagner v. Shinseki*, 640 F.3d 1255, 1259 (Fed. Cir. 2011) (citing *Jean*, 496 U.S. at 160); *Barrera v. Principi*, 18 Fed. Appx. 901, 904 (Fed. Cir. 2001) (citing *Jean*, 496 U.S. at 161-62). Therefore, "a fee award presumptively encompasses all aspects of the civil action." *Jean*, 496 U.S. at 161; *see also Wagner*, 640 F.3d at 1259; *Former Emps. of Motorola Ceramic Prods. v. United States*, 336 F.3d 1360, 1368 n.3 (Fed. Cir. 2003); *Barrera*, 18 Fed. Appx. at 904. Here, as discussed *supra*, the court concludes that plaintiff was the prevailing party and that the defendants' positions were not substantially justified. Having made these threshold determinations, the court is not required to further this inquiry on an issue-by-issue basis for the purposes of awarding attorney's fees under EAJA.

Second, even if the court were inclined to examine plaintiff's entitlement to fees on an issue-by-issue basis, this approach would be impracticable in this case. Indeed, apportioning the fee award here is inappropriate because the

46

issues were so inextricably linked that they cannot be separated in any meaningful way.  In cases where "a plaintiff . . . present[s] in one lawsuit distinctly different claims for relief that are based on different facts and legal theories . . . , counsel's work on one claim will be unrelated to his work on another claim."  *Hensley*, 461 U.S. at 434–35.  In such cases, the "congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim."  *Id.* at 435.

In other cases, however, "the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories.  Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis."  *Id.*; *see also Plyler v. Evatt*, 902 F.2d 273, 280-81 (4th Cir. 1990) (quoting *Hensley*, 461 U.S. at 435) ("[W]here the issues presented in the later proceedings or in separate claims involve the same common core of facts or related legal theories, the case 'cannot be viewed as a series of discrete claims.'").  In such cases, "[w]hile the parties' postures on individual matters may be more or less justified, the EAJA—like other fee-shifting statutes—favors treating a case as an inclusive whole, rather than as atomized line-items."  *Jean*, 496 U.S. at 161-62.

Here, the issue central to all of plaintiff's claims and all of defendants' defenses was the due process, if any, to which Mr. Lizarraga was entitled when Customs took steps to suspend his entry filer code.  Thus, the issues were "overlapping and intertwined."  *Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981).  When the issues in a case are "overlapping and intertwined," a court may decline "to dissect the interlocking evidence and consider it in isolation as supporting only one claim or the other."  *Williams v. Roberts*, 904 F.2d 634, 640 (11th Cir. 1990); *see also Plyler*, 902 F.2d at 280-81 (quoting *Willie M. v. Hunt*, 732 F.2d 383, 386 (4th Cir. 1984) ("Here the district court acted within its discretion in ruling that the issues . . . were so 'inextricably intermingled with the original claims in the lawsuit' that severing those proceedings for a separate analysis of 'prevailing party' status was not justified."); *Afro-Am. Patrolmen's League v. City of Atlanta*, 817 F.2d 719, 725 (11th Cir. 1987) (quoting *Jones*, 636 F.2d at 1382) ("'In fixing the fee, the district court should be mindful that in complex civil rights litigation . . . issues are overlapping and intertwined.'").

Thus, plaintiff is entitled to fees for all of the hours spent prosecuting his case.

48

Court No. 08-00400                                          Page 38

B.    Special Factor Enhancement

When granting an application for attorney's fees, the court is directed to award "reasonable fees and expenses."  28 U.S.C. § 2412(b).  Pursuant to 28 U.S.C. § 2412(d)(2)(A), "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase of cost of living or a special factor, such as limited availability of qualified attorneys for the proceedings involved, justifies a higher fee."

Counsel for plaintiff seeks a special factor enhancement and in the event the court does not award such increase, a cost of living fee adjustment.

According to Mr. Lizarraga's lawyers, the "special factor" enhancement applies to this case because they have "extensive experience in customs law and litigation, and distinctive knowledge and specialized skill in the representation of customs brokers," and "[t]he competent and effective prosecution of plaintiff's case required the specialized skills in customs practice and litigation and knowledge of the customs brokerage regulations and practices that are beyond what general practice lawyers would encounter."  Pl.'s Br. 22–23.  In other words, plaintiff believes a special factor enhancement is required here because (1) his counsel possess expertise in a specialized practice area; and (2) these specialized skills were necessary to adequately represent the client.

49

   At the outset, it should be noted that the grant of a special factor enhancement is conditioned upon the requirement that specialized skill was actually needed for the action before the court.  In *Pierce*, the Supreme Court clarified that the EAJA special factor exception for qualified attorneys "refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question."  *Pierce*, 487 U.S. at 572.  The Court noted, as an example of a special factor, expertise in "an identifiable practice specialty such as patent law."  *Id.*  The Court then listed several factors that it deemed *insufficient* to merit an increase in the statutory cap: "[t]he 'novelty and difficulty of issues,' 'the undesirability of the case,' the 'work and ability of counsel,' and 'the results obtained.'"  *Id.* at 573 (internal citations omitted).  The Court explained that these "are factors applicable to a broad spectrum of litigation; they are little more than routine reasons why market rates are what they are."  *Id.*

   As this Court has found in the past, for purposes of EAJA, customs law is a specialized practice area, distinct from general and administrative law.  *Jazz Photo Corp. v. United States*, 32 CIT __, __, 597 F. Supp. 2d 1364, 1369 (2008) (citing *Nakamura v. Heinrich*, 17 CIT 119, 121 (1993) (not reported in the Federal Supplement)).  It is not clear, however, that specialized customs law skills were required for competent representation in this

case.  *See Jazz Photo*, 32 CIT at \_\_, 597 F. Supp. 2d at 1369-70 (declining to award a special factor enhancement for all issues in a customs case except for one because "specialized customs law skills" were only required for that one issue) (citing *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 969 (D.C. Cir. 2004) ("*Pierce* made clear that an increase in the cap is justified only by work requiring specialized skills or knowledge beyond what lawyers use on a regular basis.  Producing high-quality work on a short deadline hardly satisfies this standard.")).

Having been an active participant in this case throughout, the court finds that the due process arguments that were central to the case could have been made by any competent lawyer familiar with administrative law.  Furthermore, the knowledge needed to make Mr. Lizarraga's arguments with respect to the importance of the entry filer code could have been conveyed to any competent attorney by plaintiff himself.  This being the case, the novelty and difficulty of the issues, although they were present, did not require the attention of lawyers who specialize in customs law.

In addition, while customs law is a specialized area of law, the special factor of "the limited availability of qualified attorneys for the proceedings involved," 28 U.S.C. § 2412(d)(2)(A)(ii), also implies difficulty in securing qualified counsel at a reasonable rate due to scarcity or other factors.  *Jazz Photo*, 597 F. Supp. 2d at 1370 (citing *Hyatt v.*

51

Court No. 08-00400                                              Page 41

*Barnhart*, 315 F.3d 239, 249 (4th Cir. 2002)).  Indeed, "the statute does not assign extra compensation by 'fields' but by asking the practical question whether in the case at hand lawyers qualified to handle the case can be found for $125 or less." *Atl. Fish Spotters Ass'n v. Daley*, 205 F.3d 488, 492 (1st Cir. 2000).  As defendants point out, even if specialized skills were required to litigate this case, plaintiff has made no showing that he could not have secured counsel at the regular rate. Defs.' Mem. 28.  Indeed, plaintiff has not even argued that there were no other attorneys available who could have handled the case.  *Id.* at 29.  As a result, plaintiff is not entitled to a special factor enhancement.

C. Cost of Living Adjustment

With respect to an increase for the cost of living, based on long-established precedent and the defendants' failure to object, the court finds that a cost of living increase is warranted.  *See* 28 U.S.C. § 2412(d)(2)(A)(ii).  The court may exercise judicial discretion in granting cost of living adjustments so as to effectuate the intent of Congress "to provide adequate compensation notwithstanding inflation."  *Payne v. Sullivan*, 977 F.2d 900, 903 (4th Cir. 1992).  In making a cost of living adjustment, the court may calculate the increase using the

52

Consumer Price Index ("CPI-U").[5]  *See Kerin v. U.S. Postal Serv.*, 218 F.3d 185, 194 (2d Cir. 2000) ("[T]he district court may choose to apply a cost of living adjustment to [the statutory rate], as measured by the Consumer Price Index.").

Here, the court calculates adjustments to EAJA fees using the CPI-U data for the Northeast Urban Area, available from the Bureau of Labor Statistics, for the periods in which the services were performed: the second half of 2008, all of 2009, and 2010. *See Kerin*, 218 F.3d at 194 ("[T]he hourly rate . . . should only be increased by the corresponding Consumer Price Index for each year in which the legal work was performed." (internal citation omitted)).  To calculate the EAJA fee adjustment, the court makes an adjustment to the $125 statutory EAJA amount.  *See Allegheny Bradford Corp. v. United States*, 28 CIT 2107, 2114, 350 F. Supp. 2d 1332, 1339 (2004); 28 U.S.C. § 2412(d)(2)(A)(ii).  The adjustment is calculated as follows: the statutory hourly rate ($125) is multiplied by the applicable CPI-U for the time period, divided by the CPI-U for March 1996 when the EAJA statutory cap went into effect.

Accordingly, the adjusted EAJA fee rate for 2008 is $177.15 ($125 x 230.723/162.8).  The adjusted rate for 2009 is $181.83

---

[5]      "CPI-U" refers to the Consumer Price Index data for "All Urban Consumers."  Consumer Price Index, U.S. Bureau of Lab. Stats., http://www.bls.gov/cpi/tables.htm (last visited Sept. 20, 2011).

Court No. 08-00400                                                   Page 43

($125 x 236.825/162.8).  The adjusted rate for 2010 is $184.32

($125 x 240.059/162.8).


     D. Calculation

     The court must next consider the number of hours requested

in the EAJA application.  As noted, plaintiff's itemized

statement includes (1) 671 hours of attorneys' time; (2) 19.1

hours of paralegals' time; and (3)other costs and expenses

totaling $2,850.16.  Pl.'s Decl. in Supp. of Appl., Ex. A.

     Plaintiff has therefore requested reimbursement for 19.1

hours of paralegal time.  Although "the EAJA makes no explicit

provision for law clerk 'fees,'" *Nakamura*, 17 CIT at 122; *see

also Masias v. Sec'y of Health & Human Servs.*, 634 F.3d 1283,

1288 (Fed. Cir. 2011), the Supreme Court has determined that "a

prevailing party that satisfies EAJA's other requirements may

recover its paralegal fees from the Government at prevailing

market rates."  *Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571,

590 (2008).  Here, plaintiff's request for paralegal time is

billed at various hourly rates, ranging from $100 to $175, which

plaintiff has affirmed is "well within the range of prevailing

market rates for a specialized practice area like customs

litigation."  Pl.'s Decl. in Supp. of Appl. 4-5 ¶ 11.  As there

is no indication that these rates are not the norm and because

defendants have not challenged them, they will be used to

54

Court No. 08-00400                                          Page 44

calculate the reimbursement amount for paralegal services.

Finally, while the defendants oppose the awarding of attorney fees to plaintiff generally, they have not challenged any specific portion of plaintiff's claim or any item included on plaintiff's statement. Defs.' Mem. 28-29. Additionally, defendants have not challenged the reasonableness of any of the additional costs and expenses, totaling $2,850.16, itemized by plaintiff.

Because defendants have failed to object to any specific cost or set of hours billed by plaintiff, and have not asked the court to exclude any charged items, all of the hours provided by plaintiff will be used to calculate the total reimbursement award according to the calculations displayed in the table below. Plaintiff, however, has not provided an annual breakdown of attorneys' hours so that the CPI-U adjusted hourly rate can be applied to yield a cost-of-living-adjusted fee rate for the second half of 2008, all of 2009, and 2010. As a result, plaintiff is directed to prepare a revised EAJA application detailing the eligible attorneys' hours by year, excluding hours for paralegal services, so that the court may determine the proper EAJA award.

| Item | Rate | Calculation | Total |
|---|---|---|---|
| **Attorney's Fees (2008)** | 2008 CPI-U Adjusted Rate: $177.15 ($125 x 230.723/162.8) | $177.15 x ___ Hours | $____ |
| **Attorney's Fees (2009)** | 2009 CPI-U Adjusted Rate: $181.83 ($125 x 236.825/162.8) | $181.83 x ___ Hours | $____ |
| **Attorney's Fees (2010)** | 2009 CPI-U Adjusted Rate: $184.32 ($125 x 240.059/162.8) | $184.32 x ___ Hours | $____ |
| **Paralegal Services** | Prevailing Market Rate As Determined by Plaintiff | 19.1 Hours x Prevailing Market Rate ($100 to $175 per hour) | **$1,833.00** |
| **Costs** | | | **$2,850.16** |
| | | **TOTAL** | $_____ |

Court No. 08-00400                                                    Page 46

CONCLUSION

For the reasons set forth above, plaintiff's application for
fees and other expenses pursuant to the EAJA is GRANTED.
Accordingly, it is hereby

ORDERED that plaintiff provide a yearly breakdown of
attorneys fees (excluding paralegal services) by November 16,
2011.

                                    /s/ Richard K. Eaton
                                    Richard K. Eaton


Dated:    October 17, 2011
          New York, New York