UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HONORABLE LISA W. WANG, JUDGE

| | |
|---|---|
| Forrest Xu, <br><br>        *Plaintiff*, <br><br> v. <br><br> UNITED STATES, <br><br>        *Defendant*. | Court No. 26-03403 |

### **DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER**

OF COUNSEL

MARC MATTHEWS
ALEXANDRA KHREBTUKOVA
LISA ROSS
ROBERT MATHAI
Office of Chief Counsel
U.S. Customs and Border Protection

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge International Trade Field Office

AIMEE LEE
Assistant Director

DAVID N. HEITNER
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, NY 10278
(202) 598-3861

*Attorneys for Defendants*

August 3, 2026

**TABLE OF CONTENTS**

BACKGROUND ...........................................................................................................2

I.   The Legal Framework ........................................................................................2

  a.  Customs Broker License.................................................................................2

  b.  Entry Filer Code ...........................................................................................2

  c.  Suspension or Revocation of a Customs Broker License.......................................4

II.   Facts at Issue.....................................................................................................5

ARGUMENT ...........................................................................................................10

    Plaintiff's Motion for a Temporary Restraining Order Should Be Denied ...........................10

  A.  Temporary Restraining Order Standard .................................................................10

  B.  Plaintiff Cannot Establish that He is Likely to Succeed on the Merits ..............................11

    1.  Plaintiff Is Entitled to Notice and an Opportunity to Achieve Compliance Under the APA.......................................................................................11

    2.  Plaintiff Received Process Consistent with Section 558(c)............................................14

  C.  Plaintiff has Failed to Establish Irreparable Harm ..................................................17

  D.  The Balance of Hardships and Public Interest Factors Weigh Decidedly in Favor of Denial..........................................................................................19

CONCLUSION..........................................................................................................21

**TABLE OF AUTHORITIES**

**Cases**

*Am. Inst. for Imported Steel Inc. v. United States,*
600 F. Supp. 204 (Ct. Int'l Trade 1984) ................................................................. 17

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.,*
239 F.3d 1343 (Fed. Cir. 2001)............................................................................... 10

*American National Fire Ins. Co., v. United States,*
30 C.I.T. 931, 937 (2006)…………………………………………………………10

*Ashley Furniture Indus. LLC v. United States,*
569 F. Supp. 3d 1261 (Ct. Int'l Trade 2022) ......................................................... 17

*Buckingham v. Secretary of U.S. Dep't of Agr.,*
603 F.3d 1073 (9th Cir. 2010) ................................................................................ 14

*Carolina v. Tobacco Co. v. U.S. Customs Serv.,*
28 C.I.T. 324 (2004) ................................................................................................. 5

*Cf. Gallagher & Ascher Co. Simon,*
687 F.2d 1067 (7th Cir. 1982) .......................................................................... 14, 16

*Di Jub Leasing Corp. v. U.S.,*
505 F. Supp. 1113 (Ct. Int'l Trade 1980) .............................................................. 18

*Elkem Metals Co. v. United States,*
135 F. Supp. 2d 1324 (Ct. Int'l Trade 2001) ......................................................... 17

*Empressa Cubana Exportadora de Alimentos y Productos Varios v. U.S. Dep't of Treasury,*
638 F.3d 794 (D.C. Cir. 2011)................................................................................ 12

*Holt Hauling and Warehousing System, Inc. v. U.S. Customs Serv.,*
650 F. Supp. 1013 (Ct. Int'l Trade 1986) .......................................................... 12, 16

*Kwo Lee, Inc. v. United States,*
24 F. Supp. 3d 1322 (Ct. Int'l Trade 2014) ........................................................... 17

*Lanvin, Inc. v. Colonia, Inc.,*
739 F. Supp. 182 (S.D.N.Y. 1990)......................................................................... 18

*Lizarraga Customs Broker v. Bureau of Customs and Border Protection ,*
35 C.I.T. 1439 (2011) ........................................................................................ 13, 14

*Mann Construction, Inc. v. United States,*
27 F.4th 1138 (6th Cir. 2022) ................................................................................ 12

*Mazurek v. Armstrong*,
520 U.S. 968 (1997) ................................................................................................. 10

*Munaf v. Geren*,
553 U.S. 674 (2008) ................................................................................................. 10

*Nken v. Holder*,
556 U.S. 418 (2009) ................................................................................................. 10

*Otter Products LLC v. U.S*,
37 F. Supp. 1306 (Ct. Int'l Trade 2014) .................................................................. 17

*Pillsbury Co. v. United States*,
18 F. Supp. 2d 1034 (Ct. Int'l Trade 1998) ......................................................... 11, 12

*S.J. Stile Assoc. v. Snyder*,
646 F.2d 522 (C.C.P.A. 1981) .................................................................................. 17

*Shandong Huarong General Group v. U.S*,
122 F. Supp. 2d 143 (Ct. Int'l Trade 2000) ............................................................. 17

*Shree Rama Enter. v. United States*,
983 F. Supp. 192 (Ct. Int'l Trade 1997) ............................................................... 17, 18

*Silfab Solar, Inc. v. United States*,
296 F. Supp. 3d 1295 (Ct. Int'l Trade),
*aff'd* 892 F.3d 1340 (Fed. Cir. 2018) ....................................................................... 10

*Sumecht NA, Inc. v. United States*,
923 F.3d 1340 (Fed. Cir. 2019) ................................................................................ 10

*Sumecht NA, Inc. v. United States*,
331 F. Supp. 3d 1408 (Ct. Int'l Trade 2018) ........................................................... 17

*Tabacos de Wilson, Inc. v. United States*,
324 F. Supp. 3d 1304 (Ct. Int'l Trade 2018) ........................................................... 18

*Tel Sanayi A.S. v. United States*,
483 F. Supp. 3d 1370 (Ct. Int'l Trade 2020) ........................................................... 18

*Union Steel v. U.S.*,
617 F. Supp. 2d 1373 (Ct. Int'l Trade 2009) ........................................................... 19

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008) ..................................................................................................... 10

*Wonderland Switzerland AG v. Evenflo Company, Inc.*,
162 F.4th 1346 (Fed. Cir. 2025) ...................................................................................... 17

*Zenith Radio Corp. v. United States*,
710 F.2d 806 (Fed. Cir. 1983)......................................................................................... 17

**Statutes**

5 U.S.C. § 551(8) ....................................................................................................... 11, 12

5 U.S.C. § 558............................................................................................................... 11

5 U.S.C. § 558(c) ...................................................................................................*passim*

19 U.S.C. § 1641.............................................................................................................. 2

19 U.S.C. § 1641(b)(4) ................................................................................................. 2, 5

19 U.S.C. § 1641(d)(2)(B) ................................................................................... 1, 4, 5, 12

19 U.S.C. § 1641(b)(1) ..................................................................................................... 2

19 U.S.C. § 1641(a)(2)................................................................................................. 2, 13

19 U.S.C. § 1641(b) ......................................................................................................... 2

19 U.S.C. § 1641(b)(1)-(4) ............................................................................................. 12

19 U.S.C. § 1641(b)(2) ..................................................................................................... 2

19 U.S.C. §1641(b)(6) ...................................................................................................... 6

19 U.S.C. § 1641(c) ......................................................................................................... 2

19 U.S.C. §1641(d) .......................................................................................................... 4

19 U.S.C. § 1641(e) ......................................................................................................... 5

19 U.S.C. § 2084.............................................................................................................. 4

19 U.S.C. § 4320............................................................................................................ 19

28 U.S.C. § 1581(i)........................................................................................................... 5

28 U.S.C. § 1581(i)(1) .................................................................................................... 11

28 U.S.C. § 1581(i)(4) .................................................................................................... 11

iv

**Rules**

USCIT R. 3(a)(3) ........................................................................................................... 11

**Regulations**

19 C.F.R. § 24.5 ........................................................................................................... 19

19 C.F.R. § 111, Subpart C ............................................................................................ 2

19 C.F.R. §111, Subpart D ......................................................................................... 2, 4

19 C.F.R. § 111.1 ........................................................................................................... 2

19 C.F.R. § 111.2(a)(1) ............................................................................................... 13

19 C.F.R. § 111.5(a) .................................................................................................... 13

19 C.F.R. § 111.11 ...................................................................................................... 13

19 C.F.R. § 111.11-111.14 .......................................................................................... 13

19 C.F.R. § 111.19(a) .................................................................................................... 2

19 C.F.R. § 111.19(f) ..................................................................................................... 6

19 C.F.R. § 111.28 ......................................................................................................... 2

19 C.F.R. § 111.28(a) ................................................................................................. 5, 7

19 C.F.R. § 111.28(a)(4) ............................................................................................... 6

19 C.F.R. § 111.28(a)(11) ............................................................................................. 6

19 C.F.R. § 111.28(a)(12) ............................................................................................. 6

19 C.F.R. § 111.28(a)(13) ............................................................................................. 6

19 C.F.R. § 111.30 ......................................................................................................... 6

19 C.F.R. § 111.36(c)(3) ........................................................................................... 7, 19

19 C.F.R. § 111.67-111.68 ...........................................................................................

19 C.F.R. § 111.55-111.74 ............................................................................................ 4

19 C.F.R. § 111.74 ........................................................................................................................ 5

19 C.F.R. § 111.75 ........................................................................................................................ 5

19 C.F.R. § 111.91(a) .................................................................................................................... 5

19 C.F.R. § 141.19(b)(1) ............................................................................................................. 19

19 C.F.R. § 141.31 ........................................................................................................................ 6

19 C.F.R. § 141.32 ........................................................................................................................ 6

19 C.F.R. § 141.38 ........................................................................................................................ 6

19 C.F.R. § 141.46 ................................................................................................................... 7, 19

19 C.F.R. § 141.86 ........................................................................................................................ 6

19 C.F.R. § 142.3a ......................................................................................................... 3, 4, 9, 13

19 C.F.R. § 142.3a(b) .................................................................................................................... 3

19 C.F.R. § 142.3a(b)(1) ............................................................................................................... 3

19 C.F.R. § 142.3a(d) ............................................................................................................... 4, 20

19 C.F.R. § 142.3a(e) .......................................................................................................... 4, 13, 18

19 C.F.R. § 143.32(o) ......................................................................................................... 3, 13, 20

19 C.F.R. § 143.34 .............................................................................................................. 3, 20

**Other Authorities**

Executive Order 14411, 91 Fed. Reg. 35125 (June 10, 2026) ....................................................... 19

Executive Order 14256, 90 Fed. Reg. 14, 899 (Apr. 7, 2025) ....................................................... 20

Customs Broker Guidance for the Trade Community, CBP Publication No. 3221-0523, (Sept. 8, 2023), ................................................................................................................. *passim*

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HONORABLE LISA W. WANG, JUDGE

| | |
|---|---|
| Forrest Xu, <br><br>    *Plaintiff,* <br><br> v. <br><br> UNITED STATES, *et al.,* <br><br>    *Defendants*. | Court No. 26-03403 |

**<u>DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR A TEMPORARY</u>**
**<u>RESTRAINING ORDER</u>**

Pursuant to Rule 65 of the United States Court of International Trade, defendant, the

United States, respectfully requests that the Court deny plaintiff's, Forrest Xu ("Plaintiff" or

"Mr. Xu"), motion for a temporary restraining order.  ECF No. 4.

Plaintiff asserts that U.S. Customs and Border Protection ("CBP") suspended his

electronic entry filer code for persistent misuse without the benefit of sufficient due process—

when, in fact, he was provided with a multitude of notices for a litany of violations, and was

given several opportunities to correct his deficiencies over the course of an almost two-year

period, well in excess of the procedural requirements set forth in the Administrative Procedure

Act ("APA").  As we explain below, before suspending his entry filer code, the APA requires

that Plaintiff must be given (1) notice of the facts warranting suspension and (2) an opportunity

to cure his deficiencies.  5 U.S.C. § 558(c).  Mr. Xu was provided with both in abundance

through numerous letters, emails, and other communications warning him to cease his entry filer

code misuse.  Plaintiff's contention that he was entitled to an adjudicative disciplinary

proceeding before an administrative law judge ("ALJ") pursuant to 19 U.S.C. § 1641(d)(2)(B) is

unsupported by statute or any other authority.

1

A temporary restraining order is an extraordinary remedy, not lightly granted. Aside from his unsuccessful attempt to establish a likelihood of success on the merits, Plaintiff fails to conduct even a cursory analysis of the other required elements, relegating his assertion of irreparable harm to two conclusory and self-serving sentences in a declaration. Plaintiff has, therefore, failed to carry his burden to justify a temporary restraining order.

## BACKGROUND

### I.     The Legal Framework

#### a.  Customs Broker License

Congress established a licensing regime for "customs brokers" conducting customs business. 19 U.S.C. § 1641(b)(1) (defining the term "customs broker"). The term "customs business" means

> those activities involving transactions with U.S. Customs and Border Protection concerning the entry and admissibility of merchandise, its classification and valuation, the payment of duties, taxes, or other charges assessed or collected by U.S. Customs and Border Protection upon merchandise by reason of its importation, or the refund, rebate, or drawback thereof. It also includes the preparation of documents or forms in any format and the electronic transmission of documents, invoices, bills, or parts thereof, intended to be filed with U.S. Customs and Border Protection in furtherance of such activities, whether or not signed or filed by the preparer, or activities relating to such preparation, but does not include the mere electronic transmission of data received for transmission to Customs.

19 U.S.C. § 1641(a)(2); *see also* 19 C.F.R. § 111.1 (defining "customs broker" and "customs business", among other terms).

CBP may issue licenses to individuals or corporations, provided the corporation has one officer holding an individual license. 19 U.S.C. § 1641(b). A prospective broker may apply for a license, provided he meets the threshold requirements and passes an examination. 19 U.S.C. § 1641(b)(2); 19 C.F.R. §§ 111.11-111.14. A customs broker also cannot perform customs business until he is granted a national permit. 19 U.S.C. § 1641(c); 19 C.F.R. § 111.19(a).

A customs broker is required to comply with a multitude of CBP requirements. *See* 19

2

C.F.R. §111, Subpart C.  Critically, a broker must at all times exercise responsible supervision and control over the customs business he performs, ensuring that all agents and employees also comply with the broker's obligations. 19 U.S.C. § 1641(b)(4); 19 C.F.R. § 111.28.  Incumbent in doing so is not violating any of the many obligations, responsibilities, and requirements set forth in 19 U.S.C. § 1641 and 19 C.F.R. Part 111 and associated laws.

### b.  Entry Filer Code

All documentation relating to an entry of goods into the United States must be identified by a unique 11-character entry number.  19 C.F.R. § 142.3a(a)-(b) (explaining entry documentation required).  The first three digits represent a unique code identifying the filer, and are known as an entry filer code, or simply a filer code.  19 C.F.R. § 142.3a(b); *see also* Customs Broker Guidance for the Trade Community ("Customs Broker Guidance"), CBP Publication No. 3221-0523, v.2.0, Ch. 9.A (Sept. 8, 2023), *available at* https://www.cbp.gov/sites/default/files/2025-08/Version%202.0%20-%20Customs%20Broker%20Guidance.pdf.  A party wishing to obtain an entry filer code must apply through the relevant port and Center of Excellence and Expertise (Center) that processed or is processing the broker's license and permit applications.  *Id.*  An entry filer code may be assigned to any broker, importers meeting certain criteria, as well as other entities.  *Id.*, Ch. 9.A, D.; *see also* 19 C.F.R. § 142.3a(b)(1).  A filer code is non-transferrable.  Customs Broker Guidance, Ch. 9.A.  An individually licensed broker who later obtains a corporate license must obtain a separate code for business conducted by that corporation.  *Id.*  The number may be used on electronically submitted documents through the Automated Commercial Environment ("ACE"), the Automated Broker Interface ("ABI"), or manual forms.  *Id.*  A broker wishing to utilize the ABI system must submit a letter of intent to the ABI client representative.  *Id.*

ACE and ABI support electronic entry filing, in which data submitted is screened through an automated process and, based upon a set of "selectivity criteria," the entries may be automatically released for immediate delivery or considered for general examination, general examination with

3

document review, or intensive examination.  19 C.F.R. §§ 143.32(o), 143.34.  The selectivity criteria system is dependent on the accuracy of the data submitted by the broker, and any inaccuracy or misrepresentation would compromise CBP's ability to effectively target entries for further scrutiny.

The Executive Assistant Commissioner, Office of Trade,[1] or designee, "may refuse to allow use of the assigned entry filer code if it is misused by the importer or broker."  19 C.F.R. § 142.3a(d).  Examples of such misuse include, but are not limited to: (1) a broker intending to defraud or deceive CBP, such as by not "possess[ing] a valid power of attorney"; (2) failing to "timely and accurately adhere to CBP informed compliance measures and correct its actions."; and (3) allowing unlicensed persons to use the broker's filing code.  Customs Broker Guidance, at Ch. 9.E.  This procedure (the refusal to allow the use of an entry filer code) is independent from disciplinary proceedings for a license set forth in Section 1641(d) and 19 C.F.R. Part 111, Subpart D.  If a party either did not receive an entry filer code or had it suspended for misuse, that broker or importer may nonetheless continue to file entry documentation without the use of ACE or ABI.  The party may obtain forms with pre-printed, machine-readable entry numbers to file the documents and transact this customs business manually.  19 C.F.R. § 142.3a(e).  Conversely, disciplinary penalties imposed under Section 1641(d) will not affect a broker's ability to use his entry filer code.

### c.  Suspension or Revocation of a Customs Broker License

Again, it is important to note that a determination by CBP involving the refusal to allow the use of an entry filer code is an independent process from the disciplinary proceedings for a license set forth in Section 1641(d) and 19 C.F.R. Part 111.  If a customs broker fails to abide by regulations or program requirements, CBP may attempt to address the deficiency by sending "informed compliance" or "warning" letters, conducting in-person visits of the broker's office, or speaking to

---

[1] The terms "Assistant Commissioner" and "Office of International Trade" have since been superseded by the Facilitation and Trade Enforcement Act, Pub. L. 114-125 (Feb. 24, 2016). *See also* 19 U.S.C. § 2084.

the broker by telephone or virtually.  Customs Broker Guidance, Ch. 10.D, 11.A.  For specified

violations, CBP can also initiate a disciplinary proceeding to impose a monetary penalty or to

suspend or revoke the broker's license.  19 U.S.C. § 1641(d); 19 C.F.R. Part 111, Subpart D.  CBP

may seek these penalties when progressive remedial steps fail or, immediately, for egregious

violations.  Customs Broker Guidance, Ch. 11.A-11.B.  To suspend or revoke a broker's license,

CBP must provide notice to the broker, allow 30 days for the broker to respond, if not waived by the

broker, and hold a hearing before an administrative law judge ("ALJ") within the succeeding 30

days.  19 U.S.C. § 1641(d)(2)(B); *see also* 19 C.F.R. §§ 111.55-111.74.  In connection with the

hearing, the broker may be represented by counsel, conduct discovery, and submit argumentation

and evidence.  19 U.S.C. § 1641(d)(2)(B); 19 C.F.R. §§111.67-111.68.  The ALJ will then submit

his findings of fact and recommended decision to the Executive Assistant Commissioner, who may,

by order, adopt the decision and suspend or revoke the broker's license.  19 C.F.R. §§ 111.68,

111.74.  A broker may seek judicial review of that decision in the Court of International Trade

within 60 days of the issuance of CBP's order.  19 U.S.C. § 1641(e); 19 C.F.R. § 111.75.

**II.    Facts at Issue**

Plaintiff holds an individual license as a customs broker.  *See* Letter from Susan Thomas to

Plaintiff, dated June 1, 2026 (the "Suspension Letter"), Compl. Ex. B, Enc., pg. 8-9[2] (ECF No. 4-1).

On August 7, 2024, CBP conducted an on-site broker visit with Plaintiff, and conducted an interview

and reviewed his records.[3]  Suspension letter, pg. 8; Center Supporting Documentation, Decl. of

---

[2] The first page of the Suspension Letter attached as an exhibit to the Complaint, bears the page
number 8, although it is found on page 5 of that pdf file.

[3] Because Plaintiff brought this action pursuant to 28 U.S.C. § 1581(i), evidence is limited to the
administrative record.  *Carolina Tobacco Co. v. U.S. Customs Serv.*, 28 C.I.T. 324, 325 (2004) ("The
scope of review in a 28 § 1581(i) action is limited to the administrative record.").  Given the
emergency relief sought by Plaintiff, CBP has yet to be able to compile and certify an administrative
record.  The Center Supporting Documents cited herein, are a collection of documents to CBP's
suspension of Plaintiff's entry filer code and represent part of what will be the administrative record,
although more documents will likely be necessary to complete the administrative record.

Sharolyn J. McCann, Ex. A, pg. 3-25.  During this interview, CBP uncovered numerous violations of regulations and broker requirements.  Suspension Letter, at 8.  During this visit, CBP also informed Plaintiff that he was impermissibly conducting business in the name Eton Customs Brokers Inc. ("Eton").  *Id.*  Eton is an unlicensed entity controlled by Plaintiff for which he is in the process of applying for a corporate broker's license.  *See id.* at pg. 8.

On October 10, 2025, CBP sent Plaintiff seven informed compliance letters for failing to identify a proper importer of record in his electronic entry filings in violation of Section 1641(b)(4), 19 C.F.R. § 111.28(a), and 19 C.F.R. § 111.91(a).  Center Supporting Documentation, at pg. 38-44. Plaintiff identified companies with no financial interest in the importation as the importers of record, rather than the owner or purchaser of the goods as required.  *Id.*  These letters noted CBP's intent to "work with [Plaintiff's] office to achieve informed compliance," but that future violations could result in consequences, such as penalties or liquidated damages.  *Id.*  On October 22, 2024, two similar informed compliance letters were issued for additional failure to properly identify the importer of record.  Center Supporting Documentation, pg. 45-46.

On February 5, 2025, Alan Aprea, Director for the Electronics Center, Los Angeles Field Office, sent Plaintiff a letter detailing the deficiencies identified during the August 7, 2024 broker visit.  *Id.* at pg. 26-27.  The letter notified Plaintiff that he had: (1) improperly conducted business as Eton, based on advertising, signage, and invoices in violation of Section 1641(b)(6) and 19 C.F.R. § 111.30; (2) used improperly executed powers of attorney to transact business with CBP on behalf of clients in violation of 19 C.F.R. §§ 141.31, 141.32, 141.38; (3) failed to provide information on his brokerage's standard operating procedures upon request in violation of 19 C.F.R. §§ 111.28(a)(11), (12), (13); and (4) provided commercial invoices with incomplete or inaccurate information in violation of 19 C.F.R. § 141.86.  Center Supporting Documentation, at pg. 26-27.  The letter indicated that Plaintiff had ten days to justify his conduct and explain the actions taken to address the identified issues.  *Id.*  On February 12, 2025, Plaintiff acknowledged his violations and explained

6

how he would implement corrective actions and cease doing business at Eton.  *Id*. at 28-29; Suspension Letter, at pg. 8.

On May 27, 2025, CBP issued a letter to Plaintiff for his failure to answer a request from CBP for information in violation of 19 C.F.R. § 111.19(f) and 111.28(a)(12); Center Supporting Documents, at pg. 47.  CBP gave Plaintiff until June 2, 2025 to respond and warned that future violations may result in penalties.  *Id.*

On May 30, 2025, Plaintiff was issued an informed compliance letter for, again, possessing invalid powers of attorney.  Center Supporting Documentation, at pg. 63.

On June 6, 2025, Customs Entry Officer Miyoshi Feliciano sent an email to Plaintiff informing him that, contrary to the instructions in the February 5, 2025 informed compliance letter, he continued transacting customs business as Eton when he again submitted duty checks under Eton's name.  Center Supporting Documentation, at pg. 36.

On December 19, 2025, CBP sent an informed compliance letter to Plaintiff for his failure to possess valid powers of attorney for certain clients in violation of 19 C.F.R. §§ 141.46 and 111.36(c)(3).  Center Supporting Documentation, at pg. 49-50.  CBP sent two additional letters on March 9, 2026, three letters on March 11, 2026, and one on March 27, 2026, for similarly invalid powers of attorney in violation of Section 1641(b), 19 C.F.R. §§ 111.28(a), 111.36(c)(3), and/or 141.46.  *Id.*, at pg. 51-62; Suspension letter, at pg. 9.  Through these letters, CBP sought to work with Plaintiff to achieve compliance but warned that future violations may incur further consequences.  Center Supporting Documentation, at pg. 51-62.  The letters dated March 9 and March 11 specifically noted that "continued misuse of [Plaintiff's] filer code when conducting Customs business including submission of invalid POAs or filing inaccurate data with CBP may result in the suspension of [Plaintiff's] filer code."  *Id.* at pg. 52, 56, 58, 60

On April 24, 2026, CBP sent Plaintiff a letter stating that it suspected that he had used ACE

7

to electronically file several CBP Form 5106s[4] for importers of record with inaccurate or invalid contact information or addresses. Center Supporting Documentation, at pg. 81-83. CBP requested that, within seven days, Plaintiff verify the information in each form, provide all communications with the importers of record, and explain Plaintiff's process for verifying the accuracy of such information, including steps taken to validate and verify the information for each power of attorney for each importer. *Id.*, at pg. 82-83; Suspension letter, at pg. 9. The letter warned that, in addition to other consequences, failure to respond could result in CBP disabling Plaintiff's ability to electronically file CBP Form 5106s through ACE. Center Supporting Documentation, at pg. 83. The letter further reiterated Plaintiff's duty as a broker to refrain from filing or assisting in the filing of false information and that a failure to comply could include "revocation or suspension of [his] customs license, or other appropriate action." *Id.* at pg. 83. On April 19, 2026, Plaintiff responded, providing some, but not all, of the information and documents CBP requested. *Id.* at pg. 78.

On May 4, 2026, CBP sent a letter to Plaintiff responding to his submission. *Id.* at pg. 77. CBP found that Plaintiff did not provide evidence that he directly communicated with seven of the importers about the information included in the CBP Form 5106 as required and provided only partial correspondence for another 15. *Id.* at pg. 78. CBP found that, despite Plaintiff's claim that he reviewed all powers of attorney for completeness, 35 were incomplete or unverified. *Id.* at pg. 78. CBP also found that, despite Plaintiff's representations that all the importers of record were legitimate, operating business, two of the supposedly government-issued identifications provided by Plaintiff were not valid. *Id.* at pg. 78. CBP also stated that Plaintiff admitted to knowingly providing false or inaccurate contact information for several importers of record. *Id.* at pg. 78; Suspension Letter, at pg. 9. CBP thus concluded that Plaintiff electronically submitted documentation that he certified to be true, when he knew or should have known it was not. *Id.* at pg.

---

[4] A CBP Form 5106 identifies an importer of record and is necessary for CBP to assign an importer of record number.

78; Suspension Letter, at pg. 9.  In order to give CBP the opportunity to review each of Plaintiff's future CBP Form 5106s for veracity and accuracy before assigning an importer of record number, CBP revoked Plaintiff's ability to file through ACE for 180 days and required him to email the form to CBP for review.  *Id.* at pg. 78-79; Suspension Letter, at pg. 9.

On June 1, 2026, Executive Assistant Commissioner Susan Thomas suspended Plaintiff's ability to use his entry filer number through ACE and ABI for a minimum of 180 days for the persistent misuse detailed above.  Suspension Letter, at 8-10.  He was also provided with instructions regarding how to manually file documents on behalf of his clients pursuant to 19 C.F.R. § 142.3a(e). Suspension Letter at pg. 10.  Plaintiff was given the opportunity to have his entry filer code reinstated provided he satisfactorily submitted certain documentation, including a supervision plan and standard operating procedures demonstrating how he would achieve compliance with his obligations, and within 60 days and participated in a broker visit within 180 days.  *Id.* at pg. 9.

On June 3, 2026, Salvatore Ingrassia, Acting Executive Director of Cargo and Conveyance Security, Office of Field Operations, distributed an internal memorandum notifying all directors that Plaintiff's entry filer code had been suspended, but that his documents should still be manually processed by CBP port personnel. Suspension of Broker's Filer Code: Forrest Gang Xu, CBP Memorandum for Directors, Office of Field Operations (the "Field Operations Memo"), McCann Decl., Ex. B.  The memo instructed CBP port personnel to review his submissions with enhanced diligence to ensure their accuracy, given the demonstrated risk of inaccurate filings.  *Id.*

On July 20, 2026, Plaintiff's counsel sent, via email, a letter to Susan Thomas dated July 13, 2026, demanding the reactivation of Plaintiff's entry filer number or threatening that he would file a motion for a temporary restraining order.  Letter from Christopher Duncan to Susan Thomas, dated July 13, 2026, Compl., Ex. A, pg. 5-6 (ECF No. 4-1).  On July 24, 2026, EAC Thomas responded by declining to rescind the suspension and noting the multitude of instances of misuse remaining unresolved.  Letter from Susan Thomas to Christopher Duncan, dated July 24, 2026, Compl. Ex. B

9

(ECF No. 4-2).  Ms. Thomas again invited Plaintiff to submit the requested documentation and offered to consider reducing the length of the suspension provided Plaintiff "adequately address[ed] the outstanding requirements and demonstrate[ed] a commitment and ability to fully comply with his obligations as a customs broker . . ." *Id.*

Plaintiff then commenced this action by filing a summons (ECF No. 1) and a Motion for a Temporary Restraining Order ("Pl. Br.") on July 29, 2026.  Plaintiff later filed the Complaint (ECF No. 5) on July 30, 2026.[5]

## ARGUMENT

**Plaintiff's Motion for a Temporary Restraining Order Should Be Denied**

### A.  Temporary Restraining Order Standard

The standard for granting a temporary restraining order is identical to that of a preliminary injunction. *Silfab Solar, Inc. v. United States*, 296 F. Supp. 3d 1295 (Ct. Int'l Trade), *aff'd* 892 F.3d 1340 (Fed. Cir. 2018).  Such preliminary relief is an "extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis and citation omitted).  Like a preliminary injunction, it is "never awarded as of right."  *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008)).  "To receive a preliminary injunction, the movant must show '(1) likelihood of success on the merits, (2) irreparable harm absent immediate relief, (3) the balance of interests weighing in favor of relief, and (4) that the injunction serves the public interest.'"  *Sumecht NA,*

---

[5] For actions commenced pursuant to 28 U.S.C. § 1581(i), the plaintiff must file the summons and complaint "concurrently."  USCIT Rule 3(a)(3); 28 U.S.C. § 2632(a).  Plaintiff failed to follow this procedure.  Not filing the summons and complaint concurrently is grounds for dismissal for lack of subject matter jurisdiction. *See American National Fire Ins. Co., v. United States*, 30 C.I.T. 931, 937 (2006) ("Because Plaintiff filed its summons on January 4, 2000, and complaint on January 26, 2000, the Court can have no jurisdiction to hear its claims under 28 U.S.C. § 1581(i).")

*Inc. v. United States*, 923 F.3d 1340, 1345 (Fed. Cir. 2019) (quoting *Silfab Solar, Inc. v. United States*, 892 F.3d 1340, 1345 (Fed. Cir. 2018)).  The balance of interests and public interest factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).  "[C]ase law and logic both require that a movant cannot be granted a preliminary injunction unless it establishes both of the first two factors, *i.e.*, likelihood of success on the merits and irreparable harm." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001) (citation omitted).  As discussed below, Plaintiff has failed to establish any element of the standard for a temporary restraining and the application should be denied.

**B.  Plaintiff Cannot Establish that He is Likely to Succeed on the Merits**

As explained herein, the due process afforded to a determination involving the refusal to allow the use of an entry filer code (19 C.F.R. § 142.3a(d)) is governed by the APA (Section 558(c)), and CBP provided this process to Mr. Xu before making the determination.  Plaintiff's assertion that he was entitled to further due process or that CBP failed, as a matter of fact, to fulfill its obligations are without merit.

**1.  Plaintiff Is Entitled to Notice and an Opportunity to Achieve Compliance Under the APA.**

As we demonstrate below, the due process afforded to an individual before the suspension of an entry filer code is governed by Section 558(c) of the APA, which involves notice by the agency in writing of the facts or conduct which may warrant the action, and an opportunity to demonstrate or achieve compliance with all lawful requirements.  CBP afforded Mr. Xu with this due process.

To begin, the procedures of this process are tied to the APA's definition of a license.  The APA defines the term license broadly to "include[] the whole or a part of an agency permit, certificate, approval, registration, charter, membership, statutory exemption or other form of permission." 5 U.S.C. § 551(8).  This definition is broader than credentials formally named as a license, to include a range of permits and permissions granted by the United States Government.

11

*Pillsbury Co. v. United States* 18 F. Supp. 2d 1034, 1037 (Ct. Int'l Trade 1998) (collecting examples of APA licenses).  In line with this broad definition, the permission to use an entry filer code to interface with the ACE and ABI systems to electronically submit required documentation to CBP constitutes a license under Section 558(c) of the APA.  *See Pillsbury*, 18 F. Supp. at 1036-37 (holding that Customs Service's permission to file for drawbacks through an expedited procedure constituted a license).

Under the APA, prior to the "withdrawal, suspension, revocation, or annulment of a license," Section 558(c) requires: "(1) notice by the agency in writing of the facts or conduct which may warrant the action; and (2) opportunity to demonstrate or achieve compliance with all lawful requirements."  Because the permission to use an entry filer code falls within the scope of a license under the APA, Mr. Xu is entitled to the process set forth in Section 558(c) before a determination to refuse to allow its use.  *See, e.g.*, *Pillsbury*, 18 F. Supp. 2d at 1037-38; *see also Holt Hauling and Warehousing System, Inc. v. U.S. Customs Serv.*, 650 F. Supp. 1013, 1016-17 (Ct. Int'l Trade 1986) (finding that customs license to operate bonded warehouse was an APA license entitled to Section 558(c) procedures).  As we show in the next section below, CBP followed this process.

However, Plaintiff asserts that he was entitled to greater process, namely a hearing before an ALJ.  *See* Compl. ¶ 7.  This argument is unsupported by the plain provisions of the APA.  The suspension of a license pursuant to Section 558(c) simply does not "require formal adjudications for license revocations." *Empresa Cubana Exportadora de Alimentos y Productos Varios v. U.S. Dep't of Treasury*, 638 F.3d 794, 802 (D.C. Cir. 2011).  The APA provides baseline procedures to be followed for all manner of Government activities, like the suspension of an entry filer number, whereas Congress may direct different procedures for specified Government actions, such as the revocation of a customs broker license.  *See Mann Construction, Inc. v. United States*, 27 F.4th 1138, 1145 (6th Cir. 2022) (describing the APA as a "baseline" which Congress may expressly

12

deviate from).

Plaintiff relies on Section 1641(d)(2)(B) in an attempt to invoke the procedures for the suspension or revocation of a customs broker license for purposes of the determination involving his entry filer code. While the use of an entry filer code meets the broad definition of a license under the APA, as we show below, the use of an entry filer code is not the legal equivalant of a customs broker's license. Consequently, Mr. Xu is not entitled to the same due process as provided for the suspension or revocation of a customs broker's license.

Each item (an entry filer code versus a customs broker's license) entails separate qualifications, application processes, privileges, duties, and independent revocation procedures. A customs broker license permits an individual generally to conduct customs business as a broker, and, with a valid power of attorney, on behalf of importers before CBP. An entry filer code primarily identifies the party filing entries with CBP and facilitates the electronic filing of information via ABI and ACE. *Compare* 19 U.S.C. § 1641(b)(1)-(4), (b)(6), (d)(1) *and* 19 C.F.R. §§ 111.2(a)(1), 111.5(a) 111.11, 111.21-111.42 *to* 19 C.F.R. § 142.3a.

As CBP informed Plaintiff, the suspension of his entry filer code does not preclude him from filing entries on behalf of importers, albeit in paper form, and from conducting other forms of customs business. Suspension Letter, at pg. 10 (Noting that Plaintiff "may still file paper documents on [his] clients' behalf at the appropriate port of entry for manual processing while [his] assigned filer code is suspended, . . ."); *see also* Field Operations Memo (expressly instructing port staff to process Plaintiff's manual filings). This manual process allows CBP to ensure the accuracy of Mr. Xu's filings until such time as Plaintiff puts in place the necessary practices and procedures to ensure the integrity of his electronic filings. Suspension Letter at pg. 9-10 (describing necessary safeguards); Field Operations Memo; *cf.* 19 C.F.R. §§ 143.32(o), 143.34 (inaccurate electronic data may impair screening of imports for heightened scrutiny). Accordingly, suspension of an entry filer

13

code is not equivalent to a suspension or revocation of a customs broker license, and therefore is not entitled to the same procedures.

Plaintiff's citation to *Lizarraga Customs Broker v. Bureau of Customs and Border Protection* to support his purported entitlement to a hearing before an ALJ is entirely misplaced. 35 C.I.T. 1439 (2011). First, the facts of that case are readily distinguished. In *Lizarraga*, the Court concluded that CBP provided a plaintiff essentially no notice or process whatsoever when summarily revoking that plaintiff's entry filer code after an undisclosed internal review. *Id.* at 1440-42, 1453. Here, by contrast and as explained *infra*, Plaintiff was provided with several notices and opportunities to achieve compliance consistent with Section 558(c). Furthermore, the *Lizarraga* Court expressly noted that it did not examine whether that plaintiff was entitled to an administrative hearing before an ALJ regarding the merits of that plaintiff's suspension, and the case accordingly provides no support for Plaintiff's contention that he is entitled to a hearing. *Id.* at 1457 ("While it is clear that defendants' suspension of Mr. Lizarraga's entry filer code at the administrative level was not substantially justified, it is also clear that the precise degree of due process to which he was entitled at the administrative level remained an open question at the close of the case. The court never reached a final decision on this issue because defendants' Confession of Judgment ended the case."). Although the *Lizarraga* Court did remand to the agency to appoint an ALJ to create a factual record as to the impact of the entry code deactivation would have on the conduct and operation of his business, *see* ECF No. 102 of the *Lizarraga* docket, *Lizarraga* provides no support for Plaintiff's argument that he is entitled to an ALJ to review the merits of the suspension of his code, akin to the procedures for the revocation of a broker's license.

## 2. Plaintiff Received Process Consistent with Section 558(c)

Section 558(c) requires notice of the non-compliance and an opportunity to achieve compliance, often termed a "second chance" to conform. *See Buckingham v. Secretary of U.S. Dep't*

14

*of Agr.*, 603 F.3d 1073, 1086 (9th Cir. 2010).  Among other things, Plaintiff persistently misused his entry filer code by failing to secure valid powers of attorney, conducting business in the name of an unlicensed entity, transmitting false or inaccurate data about importers of record under his code, and failing to correct his conduct as required by informed compliance letters, all tracking the non-exhaustive examples of filer code misuse listed in the Customs Broker Guidance.  *Id.* at 9.E. Plaintiff received notice of each of the instances in which he misused his entry filer code through informed compliance notices, letters, emails, and verbal communications and was granted an opportunity to cease his offending conduct, easily satisfying both prongs of Section 558(c).  *See, e.g., Gallagher & Ascher Co. Simon*, 687 F.2d 1067, 1075-76 (7th Cir. 1982) (upholding the suspension of customs brokers' special permits after they were issued a warning letter for excessive untimely entries and several weeks elapsed before suspension in which brokers could have corrected their behavior.)  CBP made Plaintiff aware of violations as early as August, 2024.  CBP did not immediately suspend, but first attempted to secure Plaintiff's compliance with the requirements associated with his entry filer code.  Only after many months of persistent noncompliance did CBP take this step.  The full scope and timeframe of CBP's notice to Plaintiff, associated warnings, and time to achieve compliance are detailed as follows:

| Date | Notice to Pl. | Violation | Warnings | Page[6] |
|------|---------------|-----------|----------|---------|
| Aug. 7, 2024 | Broker visit | Transacting business as unlicensed corporate broker | Verbal | NA[7] |
| Oct. 10, 2024 | 7 informed compliance letters | Improper importer of record | Penalties or liquidated damages | 38-44 |
| Oct. 22, 2024 | 2 informed compliance letters | Improper importer of record | Penalties or liquidated damages | 45-46 |
| Feb. 5, 2025 | Letter regarding finding of Aug. | Transacting business as unlicensed corporate broker; invalid power of attorney; failure to timely | Imposition of penalties | 26-27 |

---

[6] Page citations to Center Supporting Documents.

[7] *See* Suspension Letter, at pg. 8.

15

|  | 7, 2024 broker visit | respond timely to CBP requests for information and documentation; improper commercial invoices |  |  |
|---|---|---|---|---|
| May 27, 2025 | Informed compliance letter | Failure to respond to CBP request for information | Future violations may result in penalties or liquidated damages | 47 |
| May 30, 2025 | Informed Compliance Letter | Invalid power of attorney | NA | 63 |
| June 6, 2025 | Letter to Plaintiff | Transacting business as unlicensed corporate broker | NA | 36 |
| Dec. 19, 2025 | Informed Compliance Letter | Invalid power of attorney | Future violations may result in penalties or liquidated damages | 49-50 |
| Mar. 9, 2026 | 2 informed compliance letters | Invalid power of attorney | Continued misuse of entry filer code may result in suspension of code | 51-54 |
| Mar. 11, 2026 | 2 informed compliance letters | Invalid power of attorney | Continued misuse of entry filer code may result in suspension of code | 55-60 |
| Mar 27, 2026 | Informed Compliance Letter | Invalid power of attorney | Future violations may result in penalties or liquidated damages | 61-62 |
| Apr. 24, 2026 | Informed compliance review letter. | Suspected invalid or inaccurate CBP Form 5106 data electronically submitted by Plaintiff | Letter warned Plaintiff that failure to respond may result disabling Plaintiff's ability to file CBP Form 5106s electronically. | 81-83 |
| May 4, 2026 | Review of CBP Form 5106 data and powers of attorney | Disabling electronic 5106 filing privileges for 180 days after finding inaccurate and incomplete Form 5106 and power of attorney data | Monetary penalties, suspension or revocation of license, or other appropriate action | 77-80 |

As demonstrated, several of the letters noted that CBP was prepared "to work with your office to achieve informed compliance" and that continued violations might result in consequences including, penalties, liquidated damages, suspension of Plaintiff's filer code, other appropriate action, and/or suspension or revocation of his broker's license.[8] *E.g.*, Center Supporting

---

[8] On several occasions, Plaintiff was invited to demonstrate compliance and/or submit additional

Documentation, at pg. 52.  Indeed, CBP found that Plaintiff acknowledged deficiencies or admitted to the misuse with respect to several violations.  *See* Suspension Letter, at pg. 8-9 ("you responded and acknowledged improperly conducting customs business") ("you admitted that you knowingly provided CBP with invalid contact information no belonging to these [importers of record]"); *see also* Center Supporting Documentation, at pg. 28 (acknowledging "deficiencies," including incomplete powers of attorney).  Notably, Plaintiff has declined to challenge the substance of CBP's decision.  He does not contend, for instance, that CBP's decision was arbitrary and capricious or unsupported by substantial evidence under the APA.   Accordingly, CBP afforded Plaintiff process well in excess of that required by Section 558(c).  *Cf. Gallagher & Ascher Co.*, 687 F.2d at 1075-76 (describing minimal process as satisfying Section 558(c)); *see Holt Hauling and Warehousing System*, 650 F. Supp. 1013, at 1016-18 (describing the minimal process required to suspend bonded warehouse license pursuant to Section 558(c)).

### C.  Plaintiff has Failed to Establish Irreparable Harm

Plaintiffs seeking an injunction bear an "extremely heavy burden" to establish irreparable harm.  *Shandong Huarong General Group v. U.S*, 122 F. Supp. 2d 143,146 (Ct. Int'l Trade 2000).  To satisfy this standard, plaintiff must offer more than "speculative" evidence; they must demonstrate that they face an "immediate and viable" threat of irreparable harm.  *Otter Products LLC v. U.S*, 37 F. Supp. 1306, 1315 (Ct. Int'l Trade 2014) (quoting *Kwo Lee, Inc. v. United States*, 24 F. Supp. 3d 1322, 1326, 1328 (Ct. Int'l Trade 2014)) (holding that imminent and immediate bankruptcy constituted irreparable harm); *Sumecht*, 331 F. Supp. 3d at 1412 (citing *Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (Fed. Cir. 1983)).  As the Federal Circuit explained in *Zenith*: "A preliminary injunction will not issue simply to prevent a mere possibility of injury, even where prospective injury is great.  A presently existing actual threat must be shown." *Zenith*,

---

documentation or justification.  *See, e.g.* Center Supporting Documents, at pg. 27-28, 77-83.

710 F.2d at 809 (citing *S.J. Stile Assoc. v. Snyder*, 646 F.2d 522, 525 (C.C.P.A. 1981)).  And, as the *Otter* court recognized, "[t]he threat of irreparable harm must be 'demonstrated by probative evidence,'" and "'cannot be determined by surmise.'"  37 F. Supp. 3d at 1315 (quoting *Am. Inst. for Imported Steel Inc. v. United States,* 600 F. Supp. 204, 209 (Ct. Int'l Trade 1984), and *Elkem Metals Co. v. United States,* 135 F. Supp. 2d 1324, 1331 (Ct. Int'l Trade 2001); *see also Ashley Furniture Indus. LLC v. United States*, 569 F. Supp. 3d 1261, 1275-78 (Ct. Int'l Trade 2022).  Allegations of significant monetary injury do not constitute irreparable harm, absent a credible threat of economic extinction.  *See  Shree Rama Enter. v. United States*, 983 F. Supp. 192, 195 (Ct. Int'l Trade 1997).

To begin, Plaintiff's only evidence of irreparable harm is the single, conclusory, and self-serving declaration that CBP's suspension "prevents [him] from operating as a customhouse broker" and that he "will continue to incur substantial additional costs and irreparable financial harm."  Decl. of Forrest Xu ¶¶ 7-8 (ECF No. 4-3).  Such conclusory testimony is inadequate to establish irreparable harm.  *Wonderland Switzerland AG v. Evenflo Company, Inc.*, 162 F.4th 1346, 1358 (Fed. Cir. 2025).  Moreover, affidavits from interested parties, such as Plaintiff himself, are an exceptionally weak form of evidence, absent any independent corroboration.  *See, e.g.*, *Tabacos de Wilson, Inc. v. United States*, 324 F. Supp. 3d 1304, 1312 (Ct. Int'l Trade 2018) (finding affidavits of plaintiffs' corporate officers insufficient to establish irreparable harm)

In any event, Plaintiff has proffered no evidence, or even explanation, establishing why he cannot follow the manual entry filing procedures pursuant to 19 C.F.R. § 142.3a(e), or what the effect on his business would be.  *See Di Jub Leasing Corp. v. U.S.*, 505 F. Supp. 1113, 1121 (Ct. Int'l Trade 1980) (finding that the failure to explain how revocation of customs cartman license would impact other business operations insufficient to support irreparable harm).  Even if he could, Plaintiff has failed to illustrate the requisite harm to his business.  Establishing

18

irreparable harm to a business operation, in particular, requires a detailed showing of "hard evidence" from independent sources. *Shree Rama Enter.*, 983 F. Supp. 192 at 1167-8. Plaintiff has failed to offer any evidence that his finances, assets, and other business activities are insufficient to cover any *potential* operating costs he *may* incur until his entry filer code is reinstated. *See Celik Halat ve Tel Sanayi A.S. v. United States*, 483 F. Supp. 3d 1370, 1379-80 (Ct. Int'l Trade 2020) (finding no irreparable harm where generalized statements of harm to operations, loss of customers, and financial deficits did not establish "severe" harm to business). In failing to do so, Plaintiff has failed to establish the "severe" harm or imminent threat of financial extinction required. *Id*. at 1379-80; *Shree Rama Enter.*, 983 F. Supp. at 1167-68 (finding evidence insufficient to "claim a threat of extinction").

Moreover, in CBP's July 24, 2026, letter responding to Plaintiff's demand for immediate reactivation of his entry filer code, CBP offered to consider reducing the suspension if Plaintiff submitted sufficient information to demonstrate compliance with his obligations as a broker. Compl. Ex. B (ECF No. 4-2). Plaintiff's failure to mitigate his damages precludes his assertion of irreparable harm. *Lanvin, Inc. v. Colonia, Inc.*, 739 F. Supp. 182, 192-93 (S.D.N.Y. 1990) ("A movant for extraordinary relief cannot mask an ongoing failure on its part to mitigate its damages as an ongoing instance or irreparable harm.").

### D. The Balance of Hardships and Public Interest Factors Weigh Decidedly in Favor of Denial

The enforcement of the trade laws to ensure a party's compliance with its duties and responsibilities is the foremost public importance. *See Union Steel v. U.S.*, 617 F. Supp. 2d 1373, 1381 (Ct. Int'l Trade 2009) ("Accurate and effective enforcement of trade laws serves the public interest."). Here, Mr. Xu's misuse of his entry filer code implicates greater concerns. Congress expressly required that CBP establish a program to assign numbers to importers of record and accurately collect certain information about them. 19 U.S.C. § 4320. In accordance with this

19

directive, CBP requires that accurate and complete information be provided for all importers of record on CBP Form 5106 and that brokers retain valid powers of attorney for their client importers. 19 C.F.R. §§ 24.5, 111.36(c)(3), 141.19(b)(1), 141.46. The President, through Executive Order 14411, Fed. Reg. 35125 (June 10, 2026), found that effective enforcement "ensures importers of record (IORs) are correctly assigned and accountable for duties owed; and guarantees compliance with numerous Federal laws, including laws governing forced labor, rules of origin, origin marking, intellectual property, revenue collection, and product safety." *Id.* at Sec. 1. The President has found that this accurate and complete information regarding importers is necessary for the "national security, foreign policy, and economy of the United States. *Id.* The failure to provide accurate information regarding importers of records and obtain accurate and valid powers of attorney for them, frustrates Congress and the President's directives to ensure accurate information about importers and undermines CBP's ability to enforce the health, safety, and national security laws of the United States as they relate to imports. *Id.* at Sec. 2(a)(i), (d); 19 U.S.C. § 4320.

As CBP explained in repeated notices, Plaintiff misused his entry filer code to, among other things, knowingly transmit to CBP false or unverified information incorrectly identifying multiple importers of record, with invalid powers of attorney, and without any direct contact between Plaintiff and the importer of record. As a result of Plaintiff's actions, dozens of importer of record numbers were issued for which CBP does not have accurate and complete information, exposing the public's health and safety, and the nation's security, to the unacceptable risk of unlawful importation of dangerous goods and lost customs revenue. *See, e.g.*, Executive Order 14256, 90 Fed. Reg. 14,899 (Apr. 7, 2025) ("Many shippers based in the People's Republic of China (PRC) hide illicit substances and conceal the true contents of shipments sent to the United States through deceptive shipping practices … [and] these exports play a significant role in the synthetic opioid crisis in the United States."). Plaintiff's persistent pattern of noncompliance and failure to submit

20

evidence to CBP that he has instituted procedures to prevent future violations as requested in the Suspension Letter, suggests that Plaintiff's misuse of his entry filer code will continue during the period of any injunction, further placing at risk the public health, safety, and national security. Suspension Letter, at pg. 8.  Indeed, it is only through the manual processing of Plaintiff's entries and related filings that CBP can provide the additional scrutiny necessary to ensure the accuracy of Plaintiff's documents and information while still permitting him to engage in customs business. *See* Field Operations Memo; *cf.* 19 C.F.R. §§ 143.32(o), 143.34 (inaccurate electronic data may impair screening of imports for heightened scrutiny).

Issuing Plaintiff's requested injunction would also encourage other brokers to disregard their duty to properly use their entry filing codes.  19 C.F.R. § 142.3a(d).  Thus, the balance of hardships and the public interest weigh overwhelmingly against granting plaintiffs' motion.

### CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court deny Plaintiff's motion for a temporary restraining order

Respectfully submitted,

OF COUNSEL

MARC MATTHEWS
ALEXANDRA KHREBTUKOVA
LISA ROSS
ROBERT MATHAI
Office of Chief Counsel
U.S. Customs and Border Protection
August 3, 2026

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

AIMEE LEE
Assistant Director

By: /s/ David Heitner
DAVID N. HEITNER
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, NY 10278
(202) 598-3861

*Attorneys for Defendants*

22