### UNITED STATES COURT OF INTERNATIONAL TRADE

| | | |
|---|---|---|
| FORREST XU, | : | |
| | : | |
| Plaintiff, | : | Court No. 26-03403 |
| v. | : | |
| | : | |
| U.S. CUSTOMS AND BORDER PROTECTION, | : | |
| U.S. DEPARTMENT OF HOMELAND SECURITY, | : | |
| SUSAN S. THOMAS, EXECUTIVE ASSISTANT | : | |
| COMMISSIONER, OFFICE OF TRADE, | : | |
| | : | |
| Defendants. | : | |
| | : | |

### PLAINTIFF'S MEMORANDUM IN SUPPORT OF
### EMERGENCY MOTION FOR PRELIMINARY INJUNCTION

### ARGUMENT

Plaintiff Forrest Xu customs broker moves this Court for a preliminary injunction preventing U.S. Customs and Border Protection (Customs), including Executive Assistant Commissioner Susan S. Thomas, their officers, agents, servants, employees, attorneys, and those persons in active concert of participation with them, from continuing to unlawfully deactivate plaintiff's customs broker electronic entry filer code, *i.e.*, N8Y, until a date set by this court. The facts of this case together with an exhibit are attached to Mr. Xu's motion for temporary restraining order (Doc 4), complaint (Doc 5, and motion for reconsideration (Doc 10). Plaintiff meets the standard necessary for a temporary restraining order/preliminary injunction preventing Customs from deactivating a broker's entry filer code, as this Court granted in *Lizarraga Customs Broker v. United States Customs and Border Protection et al.*, Slip Op. 10-113, Ct. No. 1:08-CV-00400 (Ct. Int'l Trade Oct. 4, 2010).

To prevail on its motion for a preliminary injunction, Mr. Xu must show four factors, (1) that he will suffer immediate and irreparable harm or injury; (2) that there is a likelihood of success on

Court No. 26-03403

the merits; (3) that the public interest would be better served by the relief requested; and (4) that the balance of hardship favors the petitioner. *Zenith Radio Corp. v. United States*, 710 F. 2d 806, 809 (Fed. Cir. 1983); *Kemet Elecs.Corp. v.  Barshefsky*, 976 F. Supp. 1012, 1017 (1997). While courts traditionally analyze each case under these four factors, the U.S. Court of Appeals for the Federal Circuit has clearly stated that no one factor is dispositive and that a strong showing of one factor may serve to compensate weakness in another factor. *See, e.g., FMC Corp. v. United States*, 3 F.2d 424, 427 (Fed. Cir. 1993). Plaintiff meets all the requisite criteria.

1.     **Mr. Xu faces an immediate and continuing threat of immediate and irreparable harm**

Immediate and irreparable harm is a serious harm that likely cannot be undone. *Zenith*, 710 F.2d at 809. To satisfy this criterion, Mr. Xu must show there exists a present and actual or viable threat. *Id*. Defendants' action is such a threat warranting this court's immediate intervention. Specifically, the absence of any statutory or regulatory guidelines for suspending or deactivating a broker's entry filer code, the lack of any explanation for defendants' plan to take such action (*i.e.*, sporadic warnings in random communications do not rise to an explanation of this specific action that Customs has taken), defendants' admitted failure to issue Mr. Xu a notice listing charges of entry filer code misuse and a proposed penalty of entry filer code deactivation, defendant's failure to offer Mr. Xu an opportunity to respond to such specific charges and proposed penalty, defendants' failure to conduct any hearing on the proposed suspension or deactivation, the intense competitive and business-ending injury that is currently unfolding due to defendants' action, and the unavailability of an effective remedy to undo the injury Mr. Xu is now facing because of the defendants' action manifestly show a clear and present likelihood of immediate and irreparable injury to Mr. Xu.

Court No. 26-03403

The injury must be immediate. *See Id.* Defendants have already deactivated Mr. Xu's broker entry filer code effective June 1, 2026. As detailed in Mr. Xu's declarations and supporting records, defendants' actions have had a direct, immediate, and devastating impact upon Mr. Xu's brokerage business operations. *See* Exhibit A. In fact, all of Mr. Xu's customers have moved to other brokers, forcing him to shutter his brokerage unless this court, as it did in *Lizarraga*, allows him to continue to operate during the pendency of this case. Mr. Xu's injury is clear, unequivocally immediate, and worsens by the day as the opportunity to recover lost clients diminishes as more time passes.

There must be an actual, irreparable threat of injury, not a mere possibility of injury sometime in the future. *See Id.* Courts have found that where specific competitive injury exists, this would be illustrative of irreparable harm. *See Id.* Irreparable harm has been specifically recognized where a party is threatened with or experiences the loss of a business. *See, e.g., Tom Doherty Assoc., Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 37 (2d Cir. 1995), cited in *Kemet Elecs. Corp*, 976 F. Supp. at 1018.

The court in *Kemet* denied the plaintiffs their request for a preliminary injunction because they were unable to satisfy any of the four criteria. *Id.* at 1021. In sharp contrast to the present case, the plaintiffs in *Kemet* were unable to show irreparable harm because they simply "assumed that a reduction in the tariffs on capacitors and resistors will necessarily result in a reduction in import prices," without support for their assumption. *Id.* at 1018, 1019. Furthermore, the plaintiffs in *Kemet* failed to consider that the reduction in prices for capacitors may be offset by an increase in demand. *Id.* at 1019. For this reason, among others, the court denied their request for preliminary injunction. *Id.* at 1021. The present case does not present an example of some possible speculative injury, nor does it concern unsubstantiated assumptions. Here, defendants' action

3

Court No. 26-03403

constitutes an actual negative impact on plaintiff's business – it has caused the brokerage to close its doors – and thus constitutes specific competitive injury. *See Id*; *Zenith*, 710 F.2d at 809.

Under the regulations, <u>all</u> licensed customs brokers are assigned an entry filer code. 19 C.F.R. § 142.3a(b). This code allows brokers to file entries electronically and quickly via the Automated Broker Interface (ABI) system, and this provides brokers with additional time to submit payment of duties 10 days after entries are filed. Without access to an entry filer code, in today's electronic environment, as this court found in *Lizarraga*, Mr. Xu cannot realistically compete with all other brokers who have such filer codes. Without an entry filer code, Mr. Xu would be forced to spend countless hours manually preparing and physically filing entries and must immediately pay estimated duties at the time of filing. With manual filing (or "live entry" filing), Mr. Xu needs to travel to the port to physically bring to customs each entry and pay the customs cashier. As defendants know, manual filing creates additional overly burdensome processing delays, which is why they encourage all brokers to file electronically. Unlike in *Kemet*, the competitive injury Mr. Xu faces cannot be offset in any realistic manner, given the nature of the importing business and the electronic filing procedures available to all other licensed customs brokers. Under these circumstances, and given the competitive broker climate, no importer would hire a broker who can only file manual entries.

Irreparable injury may also be shown where there is an absence of safeguards. *See Holt Hauling & Warehousing Sys., Inc. v. U.S. Customs Service*, 10 C.I.T. 769 (1986). In *Holt*, this Court held that Congress recognized that licensees "are subjected to irreparable injuries unless safeguards are provided," such as the establishment of firm guidelines for the suspension of licenses. *Id.* at 772. Given this court has found that deactivation of an entry filer code is tantamount to suspension of a broker license, *Holt* is significant for its recognition of a need to

4

Court No. 26-03403

have set standards when dealing with licensees to avoid "irremediable administrative action." *See id*. In this case, a very similar concern exists because of the total absence of any statutes, regulations, or even policy guidelines for the suspension or deactivation of entry filer codes. Defendants have deliberately failed to disclose the direct reasons for their action, which would normally be born out during the back and forth of this administrative process. Again, contrary to defendants' claims, which contradict its litigation position in *Lizarraga*, sporadic, vague warnings in multiple communications concerning a variety of different matters that allude to the possibility of the deactivation of a filer code at some point in the future does not constitute an explanation or adequate reasoning, much less required due process.

Finally, Mr. Xu's existing injury is clearly irreparable. *See Zenith,* 710 F.2d at 809. Now that Mr. Xu's entry filer code is deactivated, he cannot continue to operate his brokerage business in a competitive manner. Mr. Xu has lost all his clients, is forced to refer those clients to other brokers who can, with their entry filer code rights, efficiently and quickly handle volumes of import transactions, and has had to shut down his brokerage completely. *See* Exhibit A. Mr. Xu cannot so easily recover the injury to its business from defendants' action because there is no way to know whether Customs will ever reinstate his entry filer code, and no guidelines or hearing process in this regard, there is no effective remedy will compensate Mr. Xu for its present and continuing injury. Accordingly, this case warrants this court's immediate intervention to prevent defendants from continuing to deactivate Mr. Xu's entry filer code. Moreover, the manifest and uncontested showing of irreparable injury that Mr. Xu is experiencing proves there are no adequate remedies for him other than a preliminary injunction. *See Brother Indus. (USA), Inc. v. United States*, 17 CIT 748 (1993). Mr. Xu thus satisfies the criterion of immediate and irreparable injury.

Court No. 26-03403

### 2.    <u>Mr. Xu is likely to succeed on the merits</u>

The foregoing clearly establishes that Mr. Xu faces immediate and irreparable injury. As this court found in *Lizarraga*, Mr. Xu is also likely to succeed on the merits. Defendants do not even claim they provided Mr. Xu with the required basic notice with charges and proposed penalty, and opportunity to respond to these charges and proposed penalty, that this court has previously determined are required are the absolute minimum that may be required to suspend or deactivate an entry filer code.

Pursuant to the Administrative Procedure Act (APA), courts must set aside agency decisions or actions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *See* 5 U.S.C. § 706 (2) (A). The APA also dictates that courts must strike down agency action that is "contrary to constitutional right, power, privilege or immunity." *See* 5 U.S.C. § 706 (2) (B). In the present case, defendants' action is a clear violation of these statutory provisions and must be set aside. Defendants' action is arbitrary and capricious because they have summarily deactivated Mr. Xu's entry filer code without disclosing the specific reasons therefore and providing Mr. Xu with the opportunity to counter these reasons through evidence and argument.

In *National Customs Brokers & Forwarders Ass'n of America, Inc. ("NCBFAA") v. United States*, Customs issued interim regulations that would permit a consignee to enter merchandise into the United States without using a licensed customs broker if the merchandise was valued at $200 or less. 59 F.3d 1219, 1220 (Fed. Cir. 1995). The National Customs Brokers and Forwarders Association of America (NCBFAA) sought a temporary restraining order and preliminary injunction challenging the proposed regulations. *Id.* at 1221. This Court granted the NCBFAA's request for a temporary restraining order prohibiting the implementation of the said

6

Court No. 26-03403

regulations. *Id.* Ultimately, the request for a preliminary injunction was denied because this court found Customs' decision was not arbitrary and capricious. *Id.* at 1224. Completely distinguishable from this case, Customs in *NCBFAA* had solicited public comments on the interim regulations and Customs was acting within the clear language of 19 U.S.C. § 1321 (a) (2) which permits "duty-free entry of merchandise valued at $200...or less," and which also specifically granted the Secretary of the Treasury ("Secretary") discretion to set a higher limit. *Id.* at 1220. In accordance with this statute, Customs on behalf of the Secretary added section 143.26 to title 19 of the Code of Federal Regulations allowing consignees to enter merchandise which met the requirements of section 1321(a)(2). *Id.* Unlike *NCBFAA*, defendants here are not taking action according to statutory language of 19 U.S.C. § 1641(d), the regulatory language of 19 C.F.R. § 142.3a(d), or any set criteria. Defendants have failed to apply any standards or reasons for their action. In this case, Customs provided no rationale or reasons for its actions and did not even at minimum state why or how Mr. Xu purportedly "misused" his entry filer code. *See* 19 C.F.R.§ 142.3a(d).

### 3.      __The public interest is best served by the issuance of a preliminary injunction__

In considering whether the public interest is best served by the issuance of a preliminary injunction, courts look to such factors as favoring the economic viability of existing public services, expediting administrative action and preserving orderly procedure. *See, e.g., Virginia Petroleum Jobbers Ass'n v. Federal Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958). In the present case, Customs has chosen to follow no procedure in suspending or deactivating Mr. Xu's filer entry code, and those actions undermine the need for uniformity and predictability regarding disciplinary actions involving a broker's entry filer code. We understand Customs has deactivated, or plans to deactivate, many other brokers' entry filer codes in the same unlawful summary manner.

Court No. 26-03403

Should defendants not be prevented from implementing their plan, the economic viability of the existing brokers will undoubtedly be threatened. Mr. Xu and other brokers across the country will be left the whims of the EAC and her underlings, who, as this court observed in *Lizarraga*, may choose to deactivate filer code privileges as an easy alternative to undertaking a full license revocation proceeding under 19 U.S.C. § 1641(d), thereby avoiding the purposely robust due process requirements for such an action to accomplish the same ends. To not enjoin defendants would in practice appoint Customs, not this court, the power of judge, jury, and executioner because its violative actions themselves threaten to prevent Mr. Xu and other brokers from even obtaining their day in court. Customs may take the court's inaction as an indirect blessing to act with impunity in deactivating filer codes of other brokers nationwide without any semblance of due process.

### 4.    **The balance of hardships favors Mr. Xu**

The issuance of a preliminary injunction to prevent defendants' continuing action will have incidental or no adverse impact upon Customs administration of broker licenses or upon other licensed customs brokers in the region, or anywhere else in the country, whereas denial of the preliminary injunction will have tremendous impact upon Mr. Xu – ending his brokerage – as explained above. In contrast, Customs is free to continue its other broker regulation activities during the pendency of the case.

Mr. Xu has a vested right in maintaining its broker's license and the benefits that directly flow from that license, including the right to be assigned an entry filer code. 19 C.F.R. § 142.3a. A license can only be revoked or suspended for cause and under due process safeguards. 19 U.S.C. § 1641(d); 19 C.F.R. § 111.50 et seq. By deactivating Mr. Xu's entry filer code, defendants are effectively suspending or revoking his license. This is particularly true here where Customs chose

Court No. 26-03403

not to provide notice of the specific reasons for its actions or a clearly proposed penalty and refused to provide Mr. Xu with any hearing or other opportunity to respond before the entry filer code deactivation went into effect.

## CONCLUSION

Mr. Xu has demonstrated all four factors required to substantiate the need for a preliminary injunction: (1) he has and will continue to suffer the loss of his customs brokerage; (2) he will succeed on the merits because Customs did not provide even basic due process; (3) other brokers have and will continue to also suffer this fate if the court does not step in; and (4) Customs will simply return to the *status quo* after *Lizrraga*, wherein it pledged not to deactivate brokers' entry filer codes in this manner. For these reasons, Mr. Xu respectfully requests that this court grant this motion and order such other relief as the court sees fit given defendants' substantially unjustified action and litigation position.

Dated: August 7, 2026

*/s/ Christopher J. Duncan*
Christopher J. Duncan
SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Lost Angeles, CA 90071
Telephone: (213) 624-2500
Facsimile: (213) 623-4581

*Attorneys for Plaintiff*

9

Court No. 26-03403

## CERTIFICATE OF SERVICE

I hereby certify that on August 7, 2026, the foregoing **PLAINTIFF'S**

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR**

**RECONSIDERATION** was filed and served via CM/ECF to the following parties:


Justin R. Miller
Attorney-in-Charge
International Trade Field Office

David Heitner
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278

*Attorneys for Defendant*


                                        */s/ Christopher J. Duncan*
                                        Christopher J. Duncan