UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HONORABLE LISA W. WANG, JUDGE

Forrest Xu,

*Plaintiff*,

v.

UNITED STATES,

*Defendant*.

Court No. 26-03403

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR A PRELIMINARY INJUNCTION

OF COUNSEL

MARC MATTHEWS
ALEXANDRA KHREBTUKOVA
LISA ROSS
ROBERT MATHAI
Office of Chief Counsel
U.S. Customs and Border Protection

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge International Trade Field Office

AIMEE LEE
Assistant Director

DAVID N. HEITNER
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, NY 10278
(202) 598-3861

*Attorneys for Defendants*

August 12, 2026

**TABLE OF CONTENTS**

BACKGROUND ...........................................................................................................2

I.  The Legal Framework ......................................................................................2

   a.  Customs Broker License................................................................................2

   b.  Entry Filer Code ...........................................................................................3

   c.  Suspension or Revocation of a Customs Broker License............................5

II.  Facts at Issue...................................................................................................6

ARGUMENT ............................................................................................................11

   A.  Preliminary Injunction Standard.................................................................11

   B.  Plaintiff Cannot Establish that He is Likely to Succeed on the Merits ..............................12

      1.  Plaintiff Is Entitled to Notice and an Opportunity to Achieve Compliance
          Under the APA.........................................................................................12

      2.  Plaintiff Received Process Consistent with Section 558(c)...............................17

   C.  Plaintiff has Failed to Establish Irreparable Harm .............................................20

   D.  The Balance of Hardships and Public Interest Factors Weigh Decidedly
       in Favor of Denial........................................................................................24

CONCLUSION.........................................................................................................26

## TABLE OF AUTHORITIES

**Cases**

*Am. Inst. for Imported Steel Inc. v. United States,*
600 F. Supp. 204 (Ct. Int'l Trade 1984) .................................................................... 20

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.,*
239 F.3d 1343 (Fed. Cir. 2001) ................................................................................ 12

*American National Fire Ins. Co., v. United States,*
30 C.I.T. 931, 937 (2006)…………………………………………………………………11

*Ashley Furniture Indus. LLC v. United States,*
569 F. Supp. 3d 1261 (Ct. Int'l Trade 2022) ............................................................ 21

*Buckingham v. Secretary of U.S. Dep't of Agr.,*
603 F.3d 1073 (9th Cir. 2010) .................................................................................. 17

*Carolina v. Tobacco Co. v. U.S. Customs Serv.,*
28 C.I.T. 324 (2004) .................................................................................................... 6

*Di Jub Leasing Corp. v. U.S.,*
505 F. Supp. 1113 (Ct. Int'l Trade 1980) ................................................................. 23

*Elkem Metals Co. v. United States,*
135 F. Supp. 2d 1324 (Ct. Int'l Trade 2001) ............................................................ 20

*Empressa Cubana Exportadora de Alimentos y Productos Varios v. U.S. Dep't of Treasury,*
638 F.3d 794 (D.C. Cir. 2011) .................................................................................. 13

*Gallagher & Ascher Co. Simon,*
687 F.2d 1067 (7th Cir. 1982) ............................................................................ 18, 20

*Holt Hauling and Warehousing System, Inc. v. U.S. Customs Serv.,*
650 F. Supp. 1013 (Ct. Int'l Trade 1986) ............................................................ 13, 20

*Kwo Lee, Inc. v. United States,*
24 F. Supp. 3d 1322 (Ct. Int'l Trade 2014) .............................................................. 20

*Lanvin, Inc. v. Colonia, Inc.,*
739 F. Supp. 182 (S.D.N.Y. 1990) ........................................................................... 22

*Lizarraga Customs Broker v. Bureau of Customs and Border Protection ,*
35 C.I.T. 1439 (2011) .......................................................................................... 16, 17

*Mann Construction, Inc. v. United States,*
27 F.4th 1138 (6th Cir. 2022) ................................................................................... 13

*Mazurek v. Armstrong*,
520 U.S. 968 (1997)..................................................................................................11

*Munaf v. Geren*,
553 U.S. 674 (2008)..................................................................................................11

*Nken v. Holder*,
556 U.S. 418 (2009)..................................................................................................12

*Otter Products LLC v. U.S*,
37 F. Supp. 1306 (Ct. Int'l Trade 2014) ..................................................................20

*Pillsbury Co. v. United States*,
18 F. Supp. 2d 1034 (Ct. Int'l Trade 1998) .............................................................13

*S.J. Stile Assoc. v. Snyder*,
646 F.2d 522 (C.C.P.A. 1981) .................................................................................20

*Shandong Huarong General Group v. U.S*,
122 F. Supp. 2d 143 (Ct. Int'l Trade 2000) .......................................................20, 23

*Shree Rama Enter. v. United States*,
983 F. Supp. 192 (Ct. Int'l Trade 1997) .......................................................21, 23, 24

*Silfab Solar, Inc. v. United States*,
296 F. Supp. 3d 1295 (Ct. Int'l Trade),
*aff'd* 892 F.3d 1340 (Fed. Cir. 2018) ......................................................................12

*Sumecht NA, Inc. v. United States*,
923 F.3d 1340 (Fed. Cir. 2019)................................................................................12

*Sumecht NA, Inc. v. United States*,
331 F. Supp. 3d 1408 (Ct. Int'l Trade 2018)............................................................20

*Tabacos de Wilson, Inc. v. United States*,
324 F. Supp. 3d 1304 (Ct. Int'l Trade 2018) ...........................................................23

*Tel Sanayi A.S. v. United States*,
483 F. Supp. 3d 1370 (Ct. Int'l Trade 2020) ...........................................................24

*Union Steel v. U.S.*,
617 F. Supp. 2d 1373 (Ct. Int'l Trade 2009) ...........................................................24

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008)......................................................................................................11

*Wonderland Switzerland AG v. Evenflo Company, Inc.*,
162 F.4th 1346 (Fed. Cir. 2025) ........................................................................ 21

*Zenith Radio Corp. v. United States*,
710 F.2d 806 (Fed. Cir. 1983) ........................................................................... 20

**Statutes**

5 U.S.C. § 551(8) ............................................................................................... 13

5 U.S.C. § 558(c) .......................................................................................... *passim*

19 U.S.C. § 1641 .................................................................................................. 3

19 U.S.C. § 1641(b)(4) ..................................................................................... 3, 6

19 U.S.C. § 1641(d)(2)(B) ........................................................................... 1, 5, 14

19 U.S.C. § 1641(b)(1) ........................................................................................ 2

19 U.S.C. § 1641(a)(2) ........................................................................................ 2

19 U.S.C. § 1641(b) ......................................................................................... 2, 8

19 U.S.C. § 1641(b)(1)-(4) ................................................................................. 15

19 U.S.C. § 1641(b)(2) ........................................................................................ 2

19 U.S.C. §1641(b)(6) ......................................................................................... 7

19 U.S.C. § 1641(c) ............................................................................................. 2

19 U.S.C. §1641(d) ....................................................................................... *passim*

19 U.S.C. § 1641(e) ............................................................................................. 5

19 U.S.C. § 2084 ................................................................................................. 4

19 U.S.C. § 4320 ............................................................................................ 24, 25

28 U.S.C. § 1581(i) .......................................................................................... 6, 11

**Rules**

USCIT R. 3(a)(3) ................................................................................................ 11

iv

**Regulations**

19 C.F.R. § 24.5 ............................................................................................................. 25

19 C.F.R. § 111, Subpart C ............................................................................................. 3

19 C.F.R. § 111, Subpart D .......................................................................................... 4, 5

19 C.F.R. § 111.1 ............................................................................................................ 2

19 C.F.R. § 111.2(a)(1) ................................................................................................. 15

19 C.F.R. § 111.5(a) ..................................................................................................... 15

19 C.F.R. § 111.11 ........................................................................................................ 15

19 C.F.R. § 111.11-111.14 ............................................................................................. 2

19 C.F.R. § 111.19(a) ..................................................................................................... 2

19 C.F.R. § 111.19(f) ..................................................................................................... 7

19 C.F.R. § 111.28 .......................................................................................................... 3

19 C.F.R. § 111.28(a) ................................................................................................... 6, 8

19 C.F.R. § 111.28(a)(11) .............................................................................................. 7

19 C.F.R. § 111.28(a)(12) .............................................................................................. 7

19 C.F.R. § 111.30 .......................................................................................................... 7

19 C.F.R. § 111.36(c)(3) .............................................................................................. 8, 25

19 C.F.R. § 111.67-111.68 ............................................................................................. 5

19 C.F.R. § 111.55-111.74 ............................................................................................. 5

19 C.F.R. § 111.74 .......................................................................................................... 5

19 C.F.R. § 111.75 .......................................................................................................... 6

19 C.F.R. § 111.91(a) ..................................................................................................... 6

19 C.F.R. § 141.19(b)(1) .............................................................................................. 25

19 C.F.R. § 141.31 .......................................................................................................... 7

19 C.F.R. § 141.32 .................................................................................................................. 7

19 C.F.R. § 141.38 .................................................................................................................. 7

19 C.F.R. § 141.46 .............................................................................................................. 8, 25

19 C.F.R. § 141.86 .................................................................................................................. 7

19 C.F.R. § 142.3a ................................................................................................................ 15

19 C.F.R. § 142.3a(a)-(b) ........................................................................................................ 3

19 C.F.R. § 142.3a(b) .............................................................................................................. 3

19 C.F.R. § 142.3a(b)(1) .......................................................................................................... 3

19 C.F.R. § 142.3a(d) .................................................................................................. 4, 12, 26

19 C.F.R. § 142.3a(e) ................................................................................................... 5, 10, 23

19 C.F.R. § 143.0 .................................................................................................................... 3

19 C.F.R. § 143.31 .................................................................................................................. 3

19 C.F.R. § 143.32(o) ................................................................................................... 4, 15, 26

19 C.F.R. § 143.34 ........................................................................................................ 4, 15, 26

## Other Authorities

Executive Order 14411, 91 Fed. Reg. 35125 (June 10, 2026) ...................................................... 25

Executive Order 14256, 90 Fed. Reg. 14, 899 (Apr. 7, 2025) ...................................................... 25

Customs Broker Guidance for the Trade Community, CBP Publication No. 3221-0523,
(Sept. 8, 2023), .......................................................................................................... *passim*

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HONORABLE LISA W. WANG, JUDGE

|  |  |
|---|---|
| Forrest Xu, <br><br> *Plaintiff*, <br><br> v. <br><br> UNITED STATES, *et al.*, <br><br> *Defendants*. | Court No. 26-03403 |

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S EMERGENY MOTION FOR A PRELIMINARY INJUNCTION

Pursuant to Rule 65 of the United States Court of International Trade, defendant, the

United States, respectfully requests that the Court deny plaintiff's, Forrest Xu ("Plaintiff" or

"Mr. Xu"), motion for a preliminary injunction.  ECF No. 13.

This motion is Mr. Xu's third application for emergency relief in the past nine days.  Mr.

Xu asserts that U.S. Customs and Border Protection ("CBP") suspended his electronic entry filer

code for persistent misuse without the benefit of sufficient due process—when, in fact, he was

provided with a multitude of notices for a litany of violations, and was given several

opportunities to correct his deficiencies over the course of an almost two-year period, well in

excess of the procedural requirements set forth in the Administrative Procedure Act ("APA").

As explained below, before suspending his entry filer code, the APA requires that Plaintiff must

be given (1) notice of the facts warranting suspension and (2) an opportunity to cure his

deficiencies.  5 U.S.C. § 558(c).  Mr. Xu was provided with both in abundance through

numerous letters, emails, and other communications from CBP warning him to cease his entry

filer code misuse.  Plaintiff's contention that he was entitled to an adjudicative disciplinary

proceeding before an administrative law judge ("ALJ") pursuant to 19 U.S.C. § 1641(d)(2)(B) is

1

unsupported by statute or any other authority.

A preliminary injunction is an extraordinary remedy, not lightly granted. Aside from his unsuccessful attempt to establish a likelihood of success on the merits, Plaintiff fails to establish that any of the other elements for a preliminary injunction fall in his favor. For the same reasons he failed to secure a temporary restraining order on the same facts, Plaintiff has failed to carry his burden to justify a preliminary injunction.

## BACKGROUND

### I.    The Legal Framework

#### a.  Customs Broker License

Congress established a licensing regime for "customs brokers" conducting customs business. 19 U.S.C. § 1641(b)(1) (defining the term "customs broker"). The term "customs business" means

> those activities involving transactions with U.S. Customs and Border Protection concerning the entry and admissibility of merchandise, its classification and valuation, the payment of duties, taxes, or other charges assessed or collected by U.S. Customs and Border Protection upon merchandise by reason of its importation, or the refund, rebate, or drawback thereof. It also includes the preparation of documents or forms in any format and the electronic transmission of documents, invoices, bills, or parts thereof, intended to be filed with U.S. Customs and Border Protection in furtherance of such activities, whether or not signed or filed by the preparer, or activities relating to such preparation, but does not include the mere electronic transmission of data received for transmission to Customs.

19 U.S.C. § 1641(a)(2); *see also* 19 C.F.R. § 111.1 (defining "customs broker" and "customs business", among other terms).

CBP may issue licenses to individuals or corporations, provided the corporation has one officer holding an individual license. 19 U.S.C. § 1641(b). A prospective broker may apply for a license, provided he meets the threshold requirements and passes an examination. 19 U.S.C. § 1641(b)(2); 19 C.F.R. §§ 111.11-111.14. A customs broker also cannot perform customs business until he is granted a national permit. 19 U.S.C. § 1641(c); 19 C.F.R. § 111.19(a).

2

A customs broker is required to comply with a multitude of CBP requirements.  *See* 19 C.F.R. §111, Subpart C.  Critically, a broker must at all times exercise responsible supervision and control over the customs business he performs, ensuring that all agents and employees also comply with the broker's obligations. 19 U.S.C. § 1641(b)(4); 19 C.F.R. § 111.28.  Incumbent in doing so is not violating any of the many obligations, responsibilities, and requirements set forth in 19 U.S.C. § 1641 and 19 C.F.R. Part 111 and associated laws.

### b.  Entry Filer Code

All documentation relating to an entry of goods into the United States must be identified by a unique 11-character entry number.  19 C.F.R. § 142.3a(a)-(b) (explaining entry documentation required).  The first three digits represent a unique code identifying the filer, and are known as an entry filer code, or simply a filer code.  19 C.F.R. § 142.3a(b); *see also* Customs Broker Guidance for the Trade Community ("Customs Broker Guidance"), CBP Publication No. 3221-0523, v.2.0, Ch. 9.A (Sept. 8, 2023), *available at* https://www.cbp.gov/sites/default/files/2025-08/Version%202.0%20-%20Customs%20Broker%20Guidance.pdf.  A party wishing to obtain an entry filer code must apply through the relevant port and Center of Excellence and Expertise ("Center") that processed or is processing the broker's license and permit applications.  *Id.*  An entry filer code may be assigned to any broker, importers meeting certain criteria, and certain other entities.  *Id.*, Ch. 9.A, D.; *see also* 19 C.F.R. § 142.3a(b)(1).  A filer code is non-transferrable.  Customs Broker Guidance, Ch. 9.A.  An individually licensed broker who later obtains a corporate license must obtain a separate code for business conducted by that corporation.  *Id.*  The number may be used on electronically submitted documents through the Automated Commercial Environment ("ACE"), the Automated Broker Interface ("ABI"), or manual forms.  *Id.*  Electronic filing through ABI and ACE are among several voluntary special entry procedures a person may elect to utilize.  19 C.F.R. §§ 143.0, 143.31.  A broker wishing to utilize the ABI system must submit a letter of intent to the ABI client representative.  Customs Broker Guidance, Ch. 9.A.

ACE and ABI support electronic entry filing, in which data submitted is screened through an automated process and, based upon a set of "selectivity criteria," the entries may be automatically released for immediate delivery or considered for general examination, general examination with document review, or intensive examination.  19 C.F.R. §§ 143.32(o), 143.34.  The selectivity criteria system is dependent on the accuracy of the data submitted by the broker, and any inaccuracy or misrepresentation would compromise CBP's ability to effectively target entries for further scrutiny.  *See* 19 C.F.R. § 143.34.

The Executive Assistant Commissioner, Office of Trade,[1] or designee, "may refuse to allow use of the assigned entry filer code if it is misused by the importer or broker."  19 C.F.R. § 142.3a(d).  CBP's publicly available Customs Broker Guidance contains the following, nonexclusive list of examples of misuse:

> The broker conducts customs business, with the intent to defraud, or in any manner willfully and/or knowingly deceived, misled or threatened a client or CBP (e.g., the broker is not in possession of a valid power of attorney.)[;] The broker, while conducting customs business, fails to timely and accurately adhere to CBP informed compliance measures and corrective actions. (e.g., CBP issues repeat CBP Forms 28 on identical and/or strikingly similar issues but the broker fails to adhere to the informed compliance measures.)[;] The broker allows unlicensed persons and employees of unlicensed persons to use the broker's filer code for the purpose of conducting customs business[;] The broker is involuntarily removed from CBP security and compliance focused programs.

Customs Broker Guidance, at Ch. 9.E.  This procedure (the refusal to allow the use of an entry filer code) is independent from disciplinary proceedings for a license set forth in Section 1641(d) and 19 C.F.R. Part 111, Subpart D.  If a party either did not receive an entry filer code or had it suspended for misuse, that broker or importer may nonetheless continue to file entry documentation without the use of ACE or ABI.  The party may obtain forms with pre-printed, machine-readable entry numbers

---

[1] The terms "Assistant Commissioner" and "Office of International Trade" have since been superseded by the Facilitation and Trade Enforcement Act, Pub. L. 114-125 (Feb. 24, 2016). *See also* 19 U.S.C. § 2084.

to file the documents and transact this customs business manually.  19 C.F.R. § 142.3a(e).

### c.  Suspension or Revocation of a Customs Broker License

It is important to note that a determination by CBP involving the refusal to allow the use of an entry filer code is an independent process from the disciplinary proceedings that may be instituted against a broker and its license set forth in Section 1641(d) and 19 C.F.R. Part 111, Subpart D.  If a customs broker fails to abide by regulations or program requirements, CBP may attempt to address the deficiency by sending "informed compliance" or "warning" letters, conducting in-person visits of the broker's office, or speaking to the broker by telephone or virtually.  Customs Broker Guidance, Ch. 10.D, 11.A.  For specified violations, CBP can also initiate a disciplinary proceeding to impose a monetary penalty or to suspend or revoke the broker's license.  19 U.S.C. § 1641(d); 19 C.F.R. Part 111, Subpart D.  CBP may seek these consequences when progressive remedial steps fail or, immediately, for egregious violations.  Customs Broker Guidance, Ch. 11.A-11.B.

CBP may impose a monetary penalty by providing notice to show cause why the penalty should not be imposed, and the opportunity to seek mitigation or remission.  19 U.S.C. § 1641(d)(2)(A).  Monetary penalties are not subject to an adjudicative hearing before an ALJ.  *See id.*

To suspend or revoke a broker's license, CBP must provide notice to the broker, allow 30 days for the broker to respond, and, if not waived by the broker, hold a hearing before an ALJ within the succeeding 30 days.  19 U.S.C. § 1641(d)(2)(B); *see also* 19 C.F.R. §§ 111.55-111.74.  In connection with the hearing, the broker may be represented by counsel, conduct discovery, and submit argumentation and evidence.  19 U.S.C. § 1641(d)(2)(B); 19 C.F.R. §§111.67-111.68.  The ALJ will then submit his findings of fact and recommended decision to the Executive Assistant Commissioner, who may, by order, adopt the decision and suspend or revoke the broker's license. 19 C.F.R. §§ 111.68, 111.74.  A broker may seek judicial review of that decision in the Court of International Trade within 60 days of the issuance of CBP's order.  19 U.S.C. § 1641(e); 19 C.F.R. § 111.75.

## II.    Facts at Issue

Plaintiff holds an individual license as a customs broker.  *See* Letter from Susan Thomas to Plaintiff, dated June 1, 2026 (the "Suspension Letter"), Compl. Ex. B, Enc., pg. 8-9[2] (ECF No. 4-1). On August 7, 2024, CBP conducted an on-site broker visit with Plaintiff, and conducted an interview and reviewed his records.[3]  Suspension letter, pg. 8; Center Supporting Documentation, Second Decl. of Sharolyn McCann dated Aug. 12, 2026, Ex. A, pg. 3-25.  During this interview, CBP uncovered numerous violations of regulations and broker requirements.  Suspension Letter, at 8. During this visit, CBP also informed Plaintiff that he was impermissibly conducting business in the name of Eton Customs Brokers Inc. ("Eton").  *Id.*  Eton is an unlicensed entity controlled by Plaintiff for which he is in the process of applying for a corporate broker's license.  *See id.* at pg. 8.

On October 10, 2025, CBP sent Plaintiff seven informed compliance letters for failing to identify a proper importer of record in his electronic entry filings in violation of Section 1641(b)(4), 19 C.F.R. § 111.28(a), and 19 C.F.R. § 111.91(a).  Center Supporting Documentation, at pg. 38-44. Plaintiff identified companies with no financial interest in the importation as the importers of record, rather than the owner or purchaser of the goods as required.  *Id.*  These letters noted CBP's intent to "work with [Plaintiff's] office to achieve informed compliance," but that future violations could result in consequences, such as penalties or liquidated damages.  *Id.*  On October 22, 2024, two similar informed compliance letters were issued for additional failures to properly identify the importer of record.  *Id* at pg. 45-46.

---

[2] The first page of the Suspension Letter attached as an exhibit to the Complaint, bears the page number 8, although it is found on page 5 of that pdf file.

[3] Because Plaintiff brought this action pursuant to 28 U.S.C. § 1581(i), evidence is limited to the administrative record.  *Carolina Tobacco Co. v. U.S. Customs Serv.*, 28 C.I.T. 324, 325 (2004) ("The scope of review in a 28 § 1581(i) action is limited to the administrative record.").  Given the emergency relief sought by Plaintiff, CBP has yet to be able to compile and certify an administrative record.  The Center Supporting Documents cited herein, are a collection of documents related to CBP's suspension of Plaintiff's entry filer code and represent part of what will be the administrative record, although more documents will likely be necessary to complete the administrative record.

On February 5, 2025, Alan Aprea, Director for the Electronics Center, Los Angeles Field Office, sent Plaintiff a letter detailing the deficiencies identified during the August 7, 2024 broker visit. *Id.* at pg. 26-27. The letter notified Plaintiff that he had: (1) improperly conducted business as Eton, based on advertising, signage, and invoices in violation of Section 1641(b)(6) and 19 C.F.R. § 111.30; (2) used improperly executed powers of attorney to transact business with CBP on behalf of clients in violation of 19 C.F.R. §§ 141.31, 141.32, 141.38; (3) failed to provide information on his brokerage's standard operating procedures upon request in violation of 19 C.F.R. § 111.28(a)(11), (12), and (13); and (4) provided commercial invoices with incomplete or inaccurate information in violation of 19 C.F.R. § 141.86. Center Supporting Documentation, at pg. 26-27. The letter indicated that Plaintiff had ten days to justify his conduct and explain the actions taken to address the identified issues. *Id.* On February 12, 2025, Plaintiff acknowledged his violations and explained how he would implement corrective actions and cease doing business at Eton. *Id*. at 28-29; Suspension Letter, at pg. 8.

On May 27, 2025, CBP issued a letter to Plaintiff for his failure to answer a request from CBP for information in violation of 19 C.F.R. §§ 111.19(f) and 111.28(a)(12); Center Supporting Documents, at pg. 47. CBP gave Plaintiff until June 2, 2025 to respond and warned that future violations may result in penalties. *Id.*

On May 30, 2025, Plaintiff was issued an informed compliance letter for, again, possessing invalid powers of attorney. *Id.* at pg. 63.

On June 6, 2025, Customs Entry Officer Miyoshi Feliciano sent an email to Plaintiff informing him that, contrary to the instructions in the February 5, 2025 informed compliance letter, he continued transacting customs business as Eton when he again submitted duty checks under Eton's name. *Id.* at pg. 36.

On December 19, 2025, CBP sent an informed compliance letter to Plaintiff for his failure to possess valid powers of attorney for certain clients in violation of 19 C.F.R. §§ 141.46 and

111.36(c)(3). Center Supporting Documentation, at pg. 49-50. On December, 22, 2025, Plaintiff sent a response letter detailing how he would improve his procedures. Xu Response to Informed Compliance Letter, dated Dec. 22, 2025, Second McCann Decl., Ex. C.

CBP sent two additional letters on March 9, 2026, three letters on March 11, 2026, and one on March 27, 2026, for similarly invalid powers of attorney in violation of Section 1641(b), 19 C.F.R. §§ 111.28(a), 111.36(c)(3), and/or 141.46. Center Supporting Documentation at pg. 51-62; Suspension letter, at pg. 9. Through these letters, CBP sought to work with Plaintiff to achieve compliance but warned that future violations may incur further consequences. Center Supporting Documentation, at pg. 51-62. The letters dated March 9 and March 11 specifically noted that "continued misuse of [Plaintiff's] filer code when conducting Customs business including submission of invalid POAs or filing inaccurate data with CBP may result in the suspension of [Plaintiff's] filer code." *Id.* at pg. 52, 56, 58, 60.

On April 24, 2026, CBP sent Plaintiff a letter stating that it suspected that he had used ACE to electronically file several CBP Form 5106s[4] for importers of record with inaccurate or invalid contact information or addresses. *Id.* at pg. 81-83. CBP requested that, within seven days, Plaintiff verify the information in each form, provide all communications with the importers of record, and explain Plaintiff's process for verifying the accuracy of such information, including steps taken to validate and verify the information for each power of attorney for each importer. *Id.*, at pg. 82-83; Suspension letter, at pg. 9. The letter warned that, in addition to other consequences, failure to respond could result in CBP disabling Plaintiff's ability to electronically file CBP Form 5106s through ACE. Center Supporting Documentation, at pg. 83. The letter further reiterated Plaintiff's duty as a broker to refrain from filing or assisting in the filing of false information and that a failure to comply could include "revocation or suspension of [his] customs license, or other appropriate

---

[4] A CBP Form 5106 identifies an importer of record and is necessary for CBP to assign an importer of record number.

action." *Id.* at pg. 83.  On April 19, 2026, Plaintiff responded, providing some, but not all, of the information and documents CBP requested.  *Id.* at pg. 78; Letter from Plaintiff to CBP, dated Apr. 29, 2026, Second McCann Decl., Ex. B.  In this response, Plaintiff also provided justification for his conduct and detailed corrective actions.  *See* Center Supporting Documentation, at pg. 77-78.

On May 4, 2026, CBP sent a letter to Plaintiff responding to his submission.  *Id.* at pg. 77.  CBP found that Plaintiff did not provide evidence that he directly communicated with seven of the importers about the information included in the CBP Form 5106 as required and provided only partial correspondence for another 15.  *Id.* at pg. 78.  CBP found that, despite Plaintiff's claim that he reviewed all powers of attorney for completeness, 35 were incomplete or unverified.  *Id.* at pg. 78.  CBP also found that, despite Plaintiff's representations that all the importers of record were legitimate, operating business, two of the supposedly government-issued identification numbers provided by Plaintiff were not valid.  *Id.* at pg. 78.  CBP also stated that Plaintiff admitted to knowingly providing false or inaccurate contact information for several importers of record.  *Id.* at pg. 78; Suspension Letter, at pg. 9.  CBP thus concluded that Plaintiff electronically submitted documentation that he certified to be true, when he knew or should have known it was not.  Centers Supporting Documentation, at pg. 78; Suspension Letter, at pg. 9.  In order to give CBP the opportunity to more fully review each of Plaintiff's future CBP Form 5106s for veracity and accuracy before assigning an importer of record number, CBP suspended Plaintiff's ability to file them through ACE for 180 days and required him instead to email the form to CBP for review and to provide additional information with the submission regarding the steps he took to verify the identities of importers on whose behalf he was requesting an importer of record number be issued.  *Id.* at pg. 78-79; Suspension Letter, at pg. 9.

On June 1, 2026, Executive Assistant Commissioner ("EAC") Susan Thomas suspended Plaintiff's ability to use his entry filer code through ACE and ABI for a minimum of 180 days for the persistent misuse detailed above.  Suspension Letter, at 8-10.  He was also provided with

instructions regarding how to manually file documents on behalf of his clients pursuant to 19 C.F.R. § 142.3a(e).  Suspension Letter at pg. 10.  Plaintiff was given the opportunity to have his entry filer code reinstated if he satisfactorily submitted certain documentation within 60 days, including a supervision plan and standard operating procedures demonstrating how he would achieve compliance with his obligations, and he participated in a broker visit within 180 days.  *Id.* at pg. 9.

On June 3, 2026, Salvatore Ingrassia, Acting Executive Director of Cargo and Conveyance Security, Office of Field Operations, distributed an internal memorandum notifying all directors that Plaintiff's entry filer code had been suspended, but that his documents should still be manually processed by CBP port personnel.  Suspension of Broker's Filer Code: Forrest Gang Xu, CBP Memorandum for Directors, Office of Field Operations (the "Field Operations Memo"), Second McCann Decl., Ex. E.  The memo instructed CBP port personnel to review his submissions with enhanced diligence to ensure their accuracy, given the demonstrated risk of inaccurate filings.  *Id.*

Plaintiff has continued to conduct some customs business since this suspension, filing 14 protests, which can be filed through ACE without an entry filer code.  Second McCann Decl. ¶ 13.

On July 20, 2026, Plaintiff's counsel sent, via email, a letter to Susan Thomas dated July 13, 2026, demanding the reactivation of Plaintiff's entry filer number or threatening that he would file a motion for a temporary restraining order.  Letter from Christopher Duncan to Susan Thomas, dated July 13, 2026, Compl., Ex. A, pg. 5-6 (ECF No. 4-1).  On July 24, 2026, EAC Thomas responded by declining to rescind the suspension and noting the multitude of instances of misuse remaining unresolved.  Letter from Susan Thomas to Christopher Duncan, dated July 24, 2026 (the "July 24, 2026 Letter"), Compl. Ex. B (ECF No. 4-2).  EAC Thomas again invited Plaintiff to submit the requested documentation and offered to consider reducing the length of the suspension provided Plaintiff "adequately address[ed] the outstanding requirements and demonstrate[d] a commitment and ability to fully comply with his obligations as a customs broker . . ."  *Id.*

Plaintiff then commenced this action by filing a summons (ECF No. 1) and a Motion for a

Temporary Restraining Order on July 29, 2026 (ECF No. 4).  Plaintiff later filed the Complaint (ECF No. 5) on July 30, 2026.[5]  On August 4, 2026, the Court entered an order (ECF No. 9) denying Plaintiff's Motion for a Temporary Restraining Order for his failure to establish the factors required for injunctive relief, noting that "[s]pecifically, Plaintiff's motion does not establish that Plaintiff will face irreparable harm in the absence of injunctive relief."  On August 6, 2026, Plaintiff next filed an Emergency Motion for Reconsideration of the Court's order denying his motion for a temporary restraining order (ECF No. 10), attempting to introduce expanded testimony by Mr. Xu. Supp. Decl. of Forrest Xu (ECF No. 10-5).  Later on August 6, 2026, the Court denied Plaintiff's motion for reconsideration (ECF No. 12).  The next day, on August 7, 2026, Plaintiff filed a collection of the same evidence asserted in the prior two motions as an Emergency Motion for Preliminary Injunction (ECF No. 13).

## ARGUMENT

### A.  Preliminary Injunction Standard

Preliminary relief is an "extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis and citation omitted).  A preliminary injunction is "never awarded as of right."  *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008)).  "To receive a preliminary injunction, the movant must show '(1) likelihood of success on the merits, (2) irreparable harm absent immediate relief, (3) the balance of interests weighing in favor of relief, and (4) that the injunction serves the public interest.'"  *Sumecht NA, Inc. v. United States*, 923 F.3d 1340, 1345

---

[5] For actions commenced pursuant to 28 U.S.C. § 1581(i), the plaintiff must file the summons and complaint "concurrently."  USCIT Rule 3(a)(3); 28 U.S.C. § 2632(a).  Plaintiff failed to follow this procedure.  Not filing the summons and complaint concurrently is grounds for dismissal for lack of subject matter jurisdiction.  *See American National Fire Ins. Co., v. United States*, 30 C.I.T. 931, 937 (2006) ("Because Plaintiff filed its summons on January 4, 2000, and complaint on January 26, 2000, the Court can have no jurisdiction to hear its claims under 28 U.S.C. § 1581(i).")

(Fed. Cir. 2019) (quoting *Silfab Solar, Inc. v. United States*, 892 F.3d 1340, 1345 (Fed. Cir. 2018)).  The balance of interests and public interest factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).  "[C]ase law and logic both require that a movant cannot be granted a preliminary injunction unless it establishes both of the first two factors, *i.e.*, likelihood of success on the merits and irreparable harm." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001) (citation omitted).  As discussed below, Plaintiff has failed to establish any element of the standard for a preliminary injunction and the application should be denied.

### B.  Plaintiff Cannot Establish that He is Likely to Succeed on the Merits

As explained herein, the due process afforded to a determination involving the refusal to allow the use of an entry filer code (19 C.F.R. § 142.3a(d)) is governed by the APA (Section 558(c)), and CBP provided this process to Mr. Xu before making the determination.  Plaintiff's assertions that he was entitled to further due process or that CBP failed, as a matter of fact, to fulfill its obligations are without merit.

### 1.  Plaintiff Is Entitled to Notice and an Opportunity to Achieve Compliance Under the APA.

As we demonstrate below, the due process afforded to an individual before the suspension of an entry filer code is governed by Section 558(c) of the APA, which involves notice by the agency in writing of the facts or conduct which may warrant the action, and an opportunity to demonstrate or achieve compliance with all lawful requirements.  CBP afforded Mr. Xu with this due process.

To begin, the procedures of this process are tied to the APA's definition of a license.  The APA defines the term license broadly to "include[] the whole or a part of an agency permit, certificate, approval, registration, charter, membership, statutory exemption or other form of permission." 5 U.S.C. § 551(8).  This definition is broader than credentials formally named as a license, to include a range of permits and permissions granted by the United States Government. *Pillsbury Co. v. United States*, 18 F. Supp. 2d 1034, 1037 (Ct. Int'l Trade 1998) (collecting examples

of APA licenses).  In line with this broad definition, the permission to use an entry filer code to interface with the ACE and ABI systems to electronically submit required documentation to CBP constitutes a license under Section 558(c) of the APA.  *See Pillsbury*, 18 F. Supp. at 1036-37 (holding that Customs Service's permission to file for drawbacks through an expedited procedure constituted a license).

Under the APA, prior to the "withdrawal, suspension, revocation, or annulment of a license," Section 558(c) requires: "(1) notice by the agency in writing of the facts or conduct which may warrant the action; and (2) opportunity to demonstrate or achieve compliance with all lawful requirements."  Because the permission to use an entry filer code falls within the scope of a license under the APA, Mr. Xu is entitled to the process set forth in Section 558(c) before a determination to refuse to allow its use.  *See, e.g.*, *Pillsbury*, 18 F. Supp. 2d at 1037-38; *see also Holt Hauling and Warehousing System, Inc. v. U.S. Customs Serv.*, 650 F. Supp. 1013, 1016-17 (Ct. Int'l Trade 1986) (finding that customs license to operate bonded warehouse was an APA license entitled to Section 558(c) procedures).  As we show in the next section below, CBP followed this process.

However, Plaintiff asserts that he was entitled to greater process, namely a hearing before an ALJ.  *See* Compl. ¶ 7.  This argument is unsupported by the plain provisions of the APA.  The suspension of a license pursuant to Section 558(c) simply "does not require formal adjudications for license revocations."  *Empresa Cubana Exportadora de Alimentos y Productos Varios v. U.S. Dep't of Treasury*, 638 F.3d 794, 802 (D.C. Cir. 2011).  The APA provides uniform baseline procedures to be followed for all manner of Government activities, like the suspension of an entry filer code, whereas Congress may direct different procedures for specified Government actions, such as the revocation of a customs broker license.  *See Mann Construction, Inc. v. United States*, 27 F.4th 1138, 1145 (6th Cir. 2022) (describing the APA as a "baseline"); *see also Dickinson v. Zurko*, 527 U.S. 150, 155 (1999) ("The APA was meant to bring uniformity to a field full of variation and diversity.").  Pursuant to 5 U.S.C. § 559, any requirement to deviate from the APA's default

13

procedures must be stated expressly in statute, and no such deviation will be effected by mere implication. *See Lake Carriers' Ass'n v. E.P.A.*, 652 F.3d 1, 6 (D.C. Cir. 2011) (citing 5 U.S.C. § 559 for the proposition that subsequent statutes may not amend the APA's procedures unless they do so "expressly"); *Five Points Road Joint Venture v. Johanns*, 542 F.3d 1121, 1126-27 (7th Cir. 2008) (explaining that 5 U.S.C. § 559 "forbids amendments of the APA by implication").

Plaintiff relies on Section 1641(d)(2)(B) in an attempt to invoke the procedures for the suspension or revocation of a customs broker license for purposes of the determination involving his entry filer code. While the use of an entry filer code meets the broad definition of a license under the APA, as we explain below, the use of an entry filer code is not the legal equivalent of a customs broker's license. Consequently, Mr. Xu is not entitled to the same due process as provided for the suspension or revocation of a customs broker's license.

While Section 1641(d) clearly evidences Congress's intent to provide a heightened procedure to the suspension or revocation of a customs broker's license, Congress has not evidenced a similarly explicit intent to subject the suspension or revocation of an entry filer code to anything other than the procedures of the APA, Section 558(c). Deviations from the APA must be expressly stated in statute, and Plaintiff's argument (that the suspension of an entry filer code requires the same due process as that provided under section 1641) does not meet this exacting standard. *See Lake Carriers' Ass'n,* 652 F.3d at 6 (deviations from the APA must be expressly stated in statute). Plaintiff's argument fails as there is no indication in the statute that Congress expressly removed the suspension of an entry filer code from the uniform APA process set forth in Section 558(c). *See Five Points Road*, 542 F.3d at 1126-27 (finding that 5 U.S.C. § 559 "forbids amendments of the APA by implication").

In any event, an entry filer code is plainly not equivalent to a customs broker's license. Each item (an entry filer code versus a customs broker's license) entails separate qualifications, application processes, privileges, duties, and independent revocation procedures. A customs broker

14

license permits an individual generally to conduct the full range of customs business as a broker, and, with a valid power of attorney, on behalf of importers before CBP.  An entry filer code primarily identifies the party filing entries with CBP and facilitates the electronic filing of information via ABI and ACE.  *Compare* 19 U.S.C. § 1641(b)(1)-(4), (b)(6), (d)(1) *and* 19 C.F.R. §§ 111.2(a)(1), 111.5(a), 111.11, 111.21-111.42 *to* 19 C.F.R. § 142.3a.  The structure of CBP's regulations make this distinction stark.  Electronic filing, through ABI and ACE, is just one of several special entry procedures enumerated in 19 C.F.R. part 143 that can be used in addition to manual filings.  19 C.F.R. § 143.0.   Moreover, the "[u]se of [electronic entry filing] is voluntary and optional on behalf of the filer" and does not preclude manual filings.  19 C.F.R. § 143.31.

As CBP informed Plaintiff, the suspension of his entry filer code does not preclude him from filing entries on behalf of importers, albeit in a manual fashion, and from conducting other forms of customs business.  Suspension Letter, at pg. 10 (Noting that Plaintiff "may still file paper documents on [his] clients' behalf at the appropriate port of entry for manual processing while [his] assigned filer code is suspended, . . ."); *see also* Field Operations Memo (expressly instructing port staff to process Plaintiff's manual filings).  This manual process allows CBP to ensure the accuracy of Mr. Xu's filings until such time as Plaintiff puts in place the necessary practices and procedures to ensure the integrity of his electronic filings.  Suspension Letter at pg. 9-10 (describing necessary safeguards); Field Operations Memo; *cf.* 19 C.F.R. §§ 143.32(o), 143.34 (inaccurate electronic data may impair screening of imports for heightened scrutiny).  Indeed, by filing protests without an entry filer code, Plaintiff has actually continued to conduct some customs business for which a customs broker license is required, further illustrating that they are not equivalent.  Second McCann Decl. ¶ 13.

Furthermore, the distinction between a customs broker license under Section 1641 and an entry filer code as a separate license under the APA is a purely legal construct, and the process to suspend each is, therefore, set forth in the corresponding statute.  *See* 19 U.S.C. § 1641(d); 5 U.S.C.

§ 558(c).  Plaintiff's argument that the purported practical equivalence between the two makes them legally equivalent is, accordingly, misplaced.  Even assuming, *arguendo*, that Plaintiff is correct that a broker cannot conduct any business without electronic filing "in today's electronic environment," the entry filer code cannot be the legal equivalent of a broker's license.  Pl. Br., at 4.  Prior to the availability of electronic filing, and certainly for a period thereafter before electronic filing became widespread, many brokers conducted business without electronic filing and manual filing continues in some instances today.  The mere passage of time and changing market conditions cannot transform an entry filer code from a general license under the APA into a broker's license to conduct the full range of customs business under Section 1641.  *See Bostock v. Clayton County, Georgia*, 590 U.S. 644, 654-55 (2020) (explaining that statutory interpretation should be anchored to its meaning at the time of enactment, without updating such terms).  Accordingly, suspension of an entry filer code is not equivalent to a suspension or revocation of a customs broker license, and therefore is not entitled to the same procedures.

Plaintiff's citation to *Lizarraga Customs Broker v. Bureau of Customs and Border Protection* to support his purported entitlement to a hearing before an ALJ is misplaced.  35 C.I.T. 1439 (2011). First, the facts of that case are readily distinguished.  In *Lizarraga*, the court concluded that CBP provided Mr. Lizarraga essentially no notice or process whatsoever when summarily revoking his entry filer code after an undisclosed internal review.  *Id.* at 1440-42, 1453.  Here, by contrast and as explained *infra*, Plaintiff was provided with several notices and opportunities to achieve compliance consistent with Section 558(c).  Furthermore, the *Lizarraga* court expressly noted that it did not examine whether that plaintiff was entitled to an administrative hearing before an ALJ regarding the merits of that plaintiff's suspension, and the case accordingly provides no support for Plaintiff's contention that he is entitled to a hearing.[6]  *Id.* at 1457 ("While it is clear that defendants' suspension

---

[6] Plaintiff also cites to the *Lizarraga* court's opinion entering the Government's confession of judgment and denying the plaintiff's preliminary injunction motion as moot.  34 C.I.T. 1309 (2010).

of Mr. Lizarraga's entry filer code at the administrative level was not substantially justified, it is also clear that the precise degree of due process to which he was entitled at the administrative level remained an open question at the close of the case.  The court never reached a final decision on this issue because defendants' Confession of Judgment ended the case.").  Although the *Lizarraga* court did remand to the agency to appoint an ALJ to create a factual record as to the impact the entry code deactivation would have on the conduct and operation of his business, *see* ECF No. 102 of the *Lizarraga* docket, *Lizarraga* provides no support for Plaintiff's argument that he is entitled to an ALJ to review the merits of the suspension of his code, akin to the procedures for the revocation of a broker's license.

### 2.  Plaintiff Received Process Consistent with Section 558(c)

Section 558(c) requires notice of the non-compliance and an opportunity to achieve compliance, often termed a "second chance" to conform.  *See Buckingham v. Secretary of U.S. Dep't of Agr.*, 603 F.3d 1073, 1086 (9th Cir. 2010).  Among other things, Plaintiff persistently misused his entry filer code by failing to secure valid powers of attorney, conducting business in the name of an unlicensed entity, transmitting false or inaccurate data about importers of record under his code, and failing to correct his conduct as required by informed compliance letters.  Plaintiff had advance notice because his conduct closely tracked the non-exhaustive examples of filer code misuse that could result in suspension or revocation listed in the publicly available Customs Broker Guidance. *Id.* at 9.E.  Plaintiff received actual notice of each of the instances in which he misused his entry filer code through informed compliance notices, letters, emails, and verbal communications and was granted an opportunity over a substantial period of time to cease or correct his offending conduct, easily satisfying both prongs of Section 558(c).  *See*, *e.g.*, *Gallagher & Ascher Co. Simon*, 687 F.2d 1067, 1075-76 (7th Cir. 1982) (upholding the suspension of customs brokers' special permits after

---

That opinion similarly noted that the court did not reach the question of whether the suspension of an entry filer code was entitled to the process set forth in Section 1641.  *Id.* at 1315.

they were issued a warning letter for excessive untimely entries and several weeks elapsed before suspension in which brokers could have corrected their behavior.)  CBP made Plaintiff aware of violations as early as August, 2024.  CBP did not immediately suspend, but first attempted to secure Plaintiff's compliance with the requirements associated with his entry filer code.  Only after many months of persistent noncompliance did CBP take this step.  The full scope and timeframe of CBP's notice to Plaintiff, associated warnings, and time to achieve compliance are detailed as follows:

| Date | Notice to Pl. | Violation Identified | Warnings | Page[7] |
|---|---|---|---|---|
| Aug. 7, 2024 | Broker visit | Transacting business as unlicensed corporate broker | Verbal | NA[8] |
| Oct. 10, 2024 | 7 informed compliance letters | Improper importer of record | Penalties or liquidated damages | 38-44 |
| Oct. 22, 2024 | 2 informed compliance letters | Improper importer of record | Penalties or liquidated damages | 45-46 |
| Feb. 5, 2025 | Letter regarding finding of Aug. 7, 2024 broker visit | Transacting business as unlicensed corporate broker; invalid power of attorney; failure to timely respond timely to CBP requests for information and documentation; improper commercial invoices | Imposition of penalties | 26-27 |
| May 27, 2025 | Informed compliance letter | Failure to respond to CBP request for information | Future violations may result in penalties or liquidated damages | 47 |
| May 30, 2025 | Informed Compliance Letter | Invalid power of attorney | NA | 63 |
| June 6, 2025 | Letter to Plaintiff | Transacting business as unlicensed corporate broker | NA | 36 |
| Dec. 19, 2025 | Informed Compliance Letter | Invalid power of attorney | Future violations may result in penalties or liquidated damages | 49-50 |
| Mar. 9, 2026 | 2 informed compliance letters | Invalid power of attorney | Continued misuse of entry filer code may result in suspension of code | 51-54 |

---

[7] Page citations to Center Supporting Documents.

[8] *See* Suspension Letter, at pg. 8.

| Mar. 11, 2026 | 3 informed compliance letters | Invalid power of attorney | Continued misuse of entry filer code may result in suspension of code | 55-60 |
|---|---|---|---|---|
| Mar 27, 2026 | Informed Compliance Letter | Invalid power of attorney | Future violations may result in penalties or liquidated damages | 61-62 |
| Apr. 24, 2026 | Informed compliance review letter. | Suspected invalid or inaccurate CBP Form 5106 data electronically submitted by Plaintiff | Failure to respond may result disabling Plaintiff's ability to file CBP Form 5106s electronically | 81-83 |
| May 4, 2026 | Review of CBP Form 5106 data and powers of attorney | Disabling electronic 5106 filing privileges for 180 days after finding inaccurate and incomplete Form 5106 and power of attorney data | Monetary penalties, suspension or revocation of license, or other appropriate action | 77-80 |

As demonstrated, several of the letters noted that CBP was prepared "to work with your office to achieve informed compliance" and that continued violations might result in consequences including, penalties, liquidated damages, suspension of Plaintiff's entry filer code, other appropriate action, and/or suspension or revocation of his broker's license.[9]  *E.g.*, Center Supporting Documentation, at pg. 52.  Indeed, CBP found that Plaintiff acknowledged deficiencies or admitted to the misuse with respect to several violations.  *See* Suspension Letter, at pg. 8-9 ("you responded and acknowledged improperly conducting customs business") ("you admitted that you knowingly provided CBP with invalid contact information not belonging to these [importers of record]"); *see also* Center Supporting Documentation, at pg. 28 (acknowledging "deficiencies," including incomplete powers of attorney); *see* Xu Response to Informed Compliance Letter, dated Dec. 22, 2025 (detailing new procedures to address informed compliance letter).  At other times, he submitted explanation, justification, or documentation regarding the misuse raised by CBP.  Letter from Plaintiff to CBP, dated Apr. 29, 2026; Xu Response to Informed Compliance Letter, dated Dec. 22, 2025.  Notably, Plaintiff has declined to challenge the substance of CBP's decision or otherwise

---

[9] On several occasions, Plaintiff was invited to demonstrate compliance and/or submit additional documentation or justification.  *See, e.g.*, Center Supporting Documents, at pg. 27-28, 77-83.

argue that Plaintiff did not engage in the acts of misuse detailed by CBP.  He does not contend, for instance, that CBP's decision was arbitrary and capricious or unsupported by substantial evidence under the APA.  As demonstrated above, CBP afforded Plaintiff process well in excess of that required by Section 558(c).  *Cf. Gallagher & Ascher Co.*, 687 F.2d at 1075-76 (describing minimal process as satisfying Section 558(c)); *see Holt Hauling and Warehousing System*, 650 F. Supp. 1013, at 1016-18 (describing the minimal process required to suspend bonded warehouse license pursuant to Section 558(c)).

## C. Plaintiff has Failed to Establish Irreparable Harm

Plaintiffs seeking an injunction bear an "extremely heavy burden" to establish irreparable harm.  *Shandong Hurong General Group v. U.S*, 122 F. Supp. 2d 143,146 (Ct. Int'l Trade 2000).  To satisfy this standard, Plaintiff must offer more than "speculative" evidence; they must demonstrate that they face an "immediate and viable" threat of irreparable harm.  *Otter Products LLC v. U.S*, 37 F. Supp. 1306, 1315 (Ct. Int'l Trade 2014) (quoting *Kwo Lee, Inc. v. United States*, 24 F. Supp. 3d 1322, 1326, 1328 (Ct. Int'l Trade 2014)) (holding that imminent and immediate bankruptcy constituted irreparable harm); *Sumecht*, 331 F. Supp. 3d at 1412 (citing *Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (Fed. Cir. 1983)).  As the Federal Circuit explained in *Zenith*: "A preliminary injunction will not issue simply to prevent a mere possibility of injury, even where prospective injury is great.  A presently existing actual threat must be shown."  *Zenith*, 710 F.2d at 809 (citing *S.J. Stile Assoc. v. Snyder*, 646 F.2d 522, 525 (C.C.P.A. 1981)).  And, as the *Otter* court recognized, "[t]he threat of irreparable harm must be 'demonstrated by probative evidence,'" and "'cannot be determined by surmise.'"  37 F. Supp. 3d at 1315 (quoting *Am. Inst. for Imported Steel Inc. v. United States,* 600 F. Supp. 204, 209 (Ct. Int'l Trade 1984), and *Elkem Metals Co. v. United States,* 135 F. Supp. 2d 1324, 1331 (Ct. Int'l Trade 2001); *see also Ashley Furniture Indus. LLC v. United States*, 569 F. Supp. 3d 1261, 1275-78 (Ct. Int'l Trade 2022).  Allegations of significant monetary injury do not constitute irreparable harm, absent a credible

20

threat of economic extinction.  *See Shree Rama Enter. v. United States*, 983 F. Supp. 192, 195 (Ct. Int'l Trade 1997).

As a threshold matter, this motion is Mr. Xu's third application for emergency relief in the past nine days, and case law shows that seriatim requests for injunctive relief should be denied absent the discovery of new evidence that could not have been submitted to the Court when the first application was filed.  *International Business Machines Corp. v. Johnson*, No. 09-CV-4826(SCR), 2009 WL 2356430, at *2 (S.D.N.Y. July 30, 2009) (denying second motion for preliminary injunction because it was based on facts available to movant when the first motion was filed) (collecting cases stating that a party must put forth its strongest case in an initial motion and that courts disfavor piecemeal litigation and succession of motions); 43A C.J.S. Injunctions § 365 ("[A]s a general rule, the second application will be denied merely on a showing that the first one was denied, unless the plaintiff presents new and additional matter discovered since the former hearing. Successive applications for injunctive relief on grounds that could have been raised in connection with an earlier request for such relief are not allowed where there is insufficient reason why the grounds were not urged in the earlier application.").

The only evidence of irreparable harm Plaintiff offered with his original motion for a temporary restraining order was the conclusory and self-serving declaration that CBP's suspension "prevents [him] from operating as a customhouse broker" and that he "will continue to incur substantial additional costs and irreparable financial harm."  Decl. of Forrest Xu ¶¶ 7-8 (ECF No. 4-3).  In its August 4, 2026 order, this Court agreed that such conclusory testimony was inadequate to establish irreparable harm.  *See Wonderland Switzerland AG v. Evenflo Company, Inc.*, 162 F.4th 1346, 1358 (Fed. Cir. 2025).

Plaintiff then attached a supplemental declaration from Mr. Xu, dated August 6, 2026, to his motion for reconsideration in an attempt to introduce *some* evidence of irreparable harm.  Xu Supp. Decl.  He again attempts to rely on it in support of this latest motion for emergency relief, but has

21

failed to explain why Mr. Xu, with the assistance of counsel, was unable to draft these two pages of written testimony in the almost two months between CBP issuing the suspension letter and his first motion for a temporary restraining order. *See id.* at pdf. pg. 4-5 (ECF No. 13-2). Because the facts contained in Mr. Xu's supplemental declaration were almost certainly available to him in connection with his original motion, his unexplained refusal to offer this small amount of written testimony with his original motion provides no basis to consider these facts, and his failure to timely provide these facts undercuts the urgency that inherently undergirds an emergency injunction. *See Khalil v. Trump*, 793 F. Supp. 3d 630, 633-35, 639-41 (D.N.J. 2025) (denying second motion for preliminary injunction where plaintiff sought to "plug holes" with additional sworn evidence and arguments available when first motion was filed); *cf. Wreal, LLC v. Amazon.com, Inc.* 840 F.3d 1244, 1248-49 (11th Cir. 2016) (finding that a long delay in moving for a preliminary injunction did not support the urgency associated with irreparable harm when movant already possessed all necessary evidence).

Next, in CBP's July 24, 2026 letter responding to Plaintiff's demand for immediate reactivation of his entry filer code, CBP offered to consider reducing the suspension to less than the original 180 days if Plaintiff submitted the previously requested documentation to demonstrate that he had instituted the procedures to ensure his compliance with his obligations as a broker. July 24, 2026 Letter. Plaintiff's failure to mitigate his damages from a suspension, the term of which has already almost halfway elapsed even if not reduced further, precludes his assertion of irreparable harm. *Lanvin, Inc. v. Colonia, Inc.*, 739 F. Supp. 182, 192-93 (S.D.N.Y. 1990) ("A movant for extraordinary relief cannot mask an ongoing failure on its part to mitigate its damages as an ongoing instance or irreparable harm."). Plaintiff has also declined to challenge the substance of CBP's decision to suspend him under the APA, which further undermines his arguments that immediate injunctive relief is urgently needed to prevent irreparable harm.

Finally, affidavits from interested parties, such as Plaintiff himself, are an exceptionally

22

weak form of evidence, absent any independent corroboration. *See*, *e.g.*, *Tabacos de Wilson, Inc. v. United States*, 324 F. Supp. 3d 1304, 1312 (Ct. Int'l Trade 2018) (finding affidavits of plaintiffs' corporate officers insufficient to establish irreparable harm). Nonetheless, Plaintiff's supplemental declaration fails to establish irreparable harm. Plaintiff has proffered insufficient evidence to establish why he cannot follow the manual entry filing procedures pursuant to 19 C.F.R. § 142.3a(e), and what the specific effects on his business would be. *See Di Jub Leasing Corp. v. U.S.*, 505 F. Supp. 1113, 1121 (Ct. Int'l Trade 1980) (finding that the failure to explain how revocation of customs cartman license would impact other business operations insufficient to support irreparable harm). Plaintiff has failed to explain why he cannot conduct some customs business, albeit at a reduced volume, for at least a portion of his clients, especially in light of the fact that he has continued to file protests on behalf of some clients. Second McCann Decl. ¶ 13. The information available to CBP indicates that from August 1, 2025, to August 1, 2026, more than 50 filers have filed over 125,000 manual entries with CBP, indicating that it is possible to conduct some amount of customs business manually. *Id.* ¶ 4.

Mr. Xu also fails to provide independent proof as to why his customers are purportedly deserting him. Mr. Xu claims they are leaving because he must file documents manually, but he fails to rebut the possibility that the loss of business could be due to the conduct and violations found by CBP. Although the manual process is admittedly less efficient, it will aid not just the public interest, but Plaintiff and his importing clients by preventing him from making entries with inaccurate or incomplete information.

Furthermore, Plaintiff lacks a detailed showing of "hard evidence," such as financial statements, or evidence from independent sources necessary for such extraordinary relief. *Shree Rama Enter.*, 983 F. Supp. 192 at 1167-8; *Shandong Hurong*, 122 F. Supp. 2d at 147 (explaining that plaintiff produced no financial statement to support its position). Plaintiff has failed to offer any specific evidence that his finances, assets, and other business activities are insufficient to

cover any *potential* operating costs he *may* incur until his entry filer code is reinstated, instead offering only the conclusory statements that he will "deplete [his] savings account" and his "brokerage [was] his *main* source of income." Xu Supp. Decl. ¶ 13 (emphasis added); s*ee Celik Halat ve Tel Sanayi A.S. v. United States*, 483 F. Supp. 3d 1370, 1379-80 (Ct. Int'l Trade 2020) (finding no irreparable harm where generalized statements of harm to operations, loss of customers, and financial deficits did not establish "severe" harm to business).

Finally, Mr. Xu speculates that if the Court were to enter an injunction his customers would soon return and ameliorate his asserted harm, but he also implies (without evidence) that, absent an injunction, those same customers would refuse to return if his filer code is reinstated by CBP a few months later. *Koninklijke Philips N.V. v. Thasles DIS AIS USA, LLC*, 39 F.4th 1377, 1380 (Fed. Cir. 2022) ("A party seeking a preliminary injunction must establish that it is *likely* to suffer irreparable harm *without* an injunction. The mere possibility or speculation of harm is insufficient.") (citations omitted) (emphasis added). Plaintiff's assertions of the negative effects on his business fall short of demonstrating the severe or imminent threat of financial extinction required, and he has accordingly failed to establish irreparable harm. *Halat ve Tel Sanayi*, 483 F. Supp. 3d 1370 at 1379-80; *Shree Rama Enter.*, 983 F. Supp. at 1167-68 (finding evidence insufficient to "claim a threat of extinction").

### D. The Balance of Hardships and Public Interest Factors Weigh Decidedly in Favor of Denial

The enforcement of the trade laws to ensure a party's compliance with its duties and responsibilities is the foremost public importance. *See Union Steel v. U.S.*, 617 F. Supp. 2d 1373, 1381 (Ct. Int'l Trade 2009) ("Accurate and effective enforcement of trade laws serves the public interest."). Here, Mr. Xu's misuse of his entry filer code implicates greater concerns. Congress expressly required that CBP establish a program to assign numbers to importers of record and accurately collect certain information about them. 19 U.S.C. § 4320. Consistent with this directive, CBP requires that accurate and complete information be provided for all importers of record on

24

CBP Form 5106 and that brokers retain valid powers of attorney for their client importers. 19 C.F.R. §§ 24.5, 111.36(c)(3), 141.19(b)(1), 141.46. The President, through Executive Order 14411, Fed. Reg. 35125 (June 10, 2026), found that effective enforcement "ensures importers of record (IORs) are correctly assigned and accountable for duties owed; and guarantees compliance with numerous Federal laws, including laws governing forced labor, rules of origin, origin marking, intellectual property, revenue collection, and product safety." *Id.* at Sec. 1. The President has found that this accurate and complete information regarding importers is necessary for the "national security, foreign policy, and economy of the United States." *Id.* The failure to provide accurate information regarding importers of record and obtain accurate and valid powers of attorney for them, frustrates Congress and the President's directives to ensure accurate information about importers and undermines CBP's ability to enforce the health, safety, and national security laws of the United States as they relate to imports. *Id.* at Sec. 2(a)(i), (d); 19 U.S.C. § 4320.

As CBP explained in repeated notices, Plaintiff misused his entry filer code to, among other things, knowingly transmit to CBP false or unverified information incorrectly identifying multiple importers of record, with invalid powers of attorney, and without any direct contact between Plaintiff and the importer of record. As a result of Plaintiff's actions, dozens of importer of record numbers were issued for which CBP does not have accurate and complete information, exposing the public's health and safety, and the nation's security, to the unacceptable risk of unlawful importation of dangerous goods and lost customs revenue. *See, e.g.*, Executive Order 14256, 90 Fed. Reg. 14,899, Sec. 1 (Apr. 7, 2025) ("Many shippers based in the People's Republic of China (PRC) hide illicit substances and conceal the true contents of shipments sent to the United States through deceptive shipping practices … [and] these exports play a significant role in the synthetic opioid crisis in the United States."). Plaintiff's persistent pattern of noncompliance and, failure to submit in the 72 days since the suspension, evidence to CBP that he has instituted procedures to prevent future violations as requested in the Suspension Letter, suggests that Plaintiff's misuse of

25

his entry filer code will continue during the period of any injunction, further placing at risk public health, safety, and national security.  Suspension Letter, at pg. 8.  Indeed, it is only through the manual processing of Plaintiff's entries and related filings that CBP can provide the additional scrutiny necessary to ensure the accuracy of Plaintiff's documents and information while still permitting him to engage in customs business.  *See* Field Operations Memo; *cf.* 19 C.F.R. §§ 143.32(o), 143.34 (inaccurate electronic data may impair screening of imports for heightened scrutiny).

There are over 16,000 licensed customs brokers, of which 2,547 have national permits and are thus authorized to conduct customs business.  *See* Second McCann Declaration, ¶ 3.  CBP's actions ensure that the small minority of brokers who misuse their entry filer codes do not continue to put at risk the revenue of the United States and the health and safety of all its people, while not diminishing the availability of compliant customs brokers to the importer community.

Issuing Plaintiff's requested injunction would also encourage other brokers to disregard their duty to properly use their entry filing codes.  19 C.F.R. § 142.3a(d).  The harm claimed by Plaintiff dwarfs in comparison to the public harm that would result in allowing Plaintiff's continued misuse during the pendency of this action.  Thus, the balance of hardships and the public interest weigh overwhelmingly against granting plaintiffs' motion.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court deny Plaintiff's motion for a preliminary injunction.

Respectfully submitted,

OF COUNSEL

MARC MATTHEWS
ALEXANDRA KHREBTUKOVA
LISA ROSS
ROBERT MATHAI
Office of Chief Counsel
U.S. Customs and Border Protection
August 12, 2026

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

AIMEE LEE
Assistant Director

By: /s/ David Heitner
DAVID N. HEITNER
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, NY 10278
(202) 598-3861

*Attorneys for Defendants*

27

## **CERTIFICATE OF COMPLIANCE**

I, David Heitner, an attorney in the Department of Justice, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is responsible for the Government's memorandum in opposition to the plaintiff's motion for a preliminary injunction, dated August 12, 2026, relying upon the word count feature of the word processing program used to prepare the memorandum, certify that this memorandum complies with the word count limitation under the Court's chambers procedures, and contains 9098 words.

/s/ David Heitner