**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HONORABLE LISA W. WANG, JUDGE**

| | | |
|---|---|---|
| FORREST XU,<br><br>Plaintiff,<br>v.<br><br>U.S. CUSTOMS AND BORDER PROTECTION, U.S. DEPARTMENT OF HOMELAND SECURITY, SUSAN S. THOMAS, EXECUTIVE ASSISTANT COMMISSIONER, OFFICE OF TRADE,<br><br>Defendants. | : | Court No. 26-03403 |

**PLAINTIFF'S REPLY TO GOVERNMENT'S OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR PRELIMINARY INJUNCTION**

The government concedes it failed to provide plaintiff with the written notice proposing entry filer code suspension with an opportunity to respond it admits is required to suspend his entry filer code, so plaintiff will succeed on the merits. The government also concedes plaintiff cannot practically file entries on behalf of importer clients because Customs suspended his entry filer code, and the government is estopped from challenging the irreparable harm caused by its suspension of an entry filer code, so plaintiff has suffered irreparable harm. The government also concedes that it believes the ends of its purported interests justify the means of violating plaintiff's property rights. Finally, the government concedes that if the court does not step in it will unleash the same mistreatment of plaintiff on any broker it chooses without due process or any other limitation. Given the government concedes and is estopped from challenging that plaintiff is entitled to full relief, this court should grant plaintiff's motion for a preliminary injunction until the conclusion of this case, as well as other relief the court may deem appropriate.

**<u>The Government Concedes it Disclosed Confidential Information</u>**

At the outset, it is important to account for the government's concession, in an *ex parte* communication with the court's case manager that plaintiff's counsel was made aware of after-the-fact, that in its 100+ page opposition brief to the court it disclosed unidentified and potentially extensive confidential business, and personally identifiable, information generated by Customs. *See* Exhibit 1, Heitner email. The government failed to notify plaintiff of this potentially harmful error before going *ex parte* to the court and has still failed to identify the unlawfully disclosed information. As a result, plaintiff does not know the extent of the harm caused by the government's error and is powerless to take steps to protect itself from this unauthorized disclosure. Suffice to say this is the same type of sloppiness by Customs that undercuts its procedurally defective entry filer code suspension action against plaintiff. Adding to plaintiff's frustration about the government's efforts to use this confidential information to defend Customs' clearly flawed action, is that plaintiff's motion concerns only procedural, not substantive questions concerning underlying alleged broker activities. So, the government's disclosure of potentially over 100 pages containing confidential information was not only potentially harmful and unlawful, but it was also entirely unnecessary. If the government believes Customs' suspension action was righteous, all the government had to do was produce a written notice proposing entry filer code suspension that details the factual charges and provides an opportunity for plaintiff to respond to these charges. In fact, this simple act would be its only defense. That the government haphazardly emptied its files instead of producing the required notice, which obviously does not exist, seals its fate.

**<u>The Government Concedes It Failed to Provide Plaintiff with the Written Proposal Notice it Admits it is Required to Suspend a Plaintiff's Entry Filer Code</u>**

Customs' deactivation of plaintiff's electronic filer code without prior notice or any opportunity to respond violates plaintiff's constitutional right to due process and the APA.

Plaintiff's electronic filer code is essentially his authorization, issued pursuant to 19 U.S.C. § 1641(b)(1), 19 C.F.R. Part 111, and his customs broker's license, that enables him to conduct customs business, file entries, serve clients, and make a living. By deactivating his electronic filer code effective summarily and immediately on June 1, 2026, Customs effectively suspended, and essentially constructively revoked, plaintiff's ability to exercise the full range of privileges under his customs broker's license.

Due process requires notice that is "reasonably calculated" to apprise an affected party of the government's contemplated action and to provide a meaningful opportunity to present objections before a protected property interest is deprived. *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Here, it is clear from the government's opposition to plaintiff's Motion for a Preliminary Injunction that Customs provided no advance notice at all. Instead, Customs merely informed plaintiff that the deactivation was already effective, depriving him of any meaningful opportunity to contest the allegations, correct perceived deficiencies, or otherwise defend against Customs' action before suffering severe and potentially terminal economic and professional harm.

The Supreme Court has repeatedly struck down such summary agency actions and held that the government may not suspend or terminate an authorization essential to the pursuit of one's occupation without constitutionally adequate procedures. In *Bell v. Burson*, 402 U.S. 535, 539 (1971), the Court recognized that once issued, an occupational or governmental authorization necessary to pursue one's livelihood may not be withdrawn without procedural due process. Likewise, in *Barry v. Barchi*, 443 U.S. 55, 64-66 (1979), the Court held that the suspension of a professional license implicates a substantial property interest protected by the Due Process Clause. Applying the balancing test set forth In *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976),

the Court set forth a balancing test to determine the amount of notice the government is required to provide depending on the private interest at stake, the risk of erroneous deprivation, and the government's burden.

Applying the balancing test in *Mathews*, the deprivation here cannot withstand constitutional scrutiny. Plaintiff's interest in maintaining access to his electronic filer code and continuing his business operations is extraordinarily significant – the risk of erroneous deprivation is substantial where Customs acted without first providing notice or an opportunity to be heard – and the government's burden in providing basic notice procedures, such as written notice and an opportunity to respond, would have been minimal. Under these circumstances, Customs' summary suspension of plaintiff's filer code without due process violated the U.S. Constitution and the APA.

The government, aided by a cadre of no less than four Customs attorneys, admits on the first page of its opposition brief that "the APA requires that [p]laintiff must be given (1) notice of the facts warranting suspension and (2) an opportunity to cure his deficiencies. 5 U.S.C. § 558(c)." Gov. Opp. Br. at 1. The government knows how to provide plaintiff with such a notice because it provided plaintiff with a notice describing the facts warranting the proposed action when it proposed the far lesser sanction of penalizing him $1,000. *See* Exhibit 2. As set forth in 19 U.S.C. § 1641(d)(2)(A) and 19 C.F.R. § 111.92, prior to issuing a customs broker a penalty, which does not in any way limit use of a broker's license, Customs must comply with the baseline APA standard of issuing the broker a written notice describing the facts, proposing a penalty, and providing an opportunity for the broker to respond before Customs makes a final decision. Brokers such as plaintiff facing suspension of their entry filer codes, a sanction that will in effect

prevent them from operating and drive them out of business entirely, certainly require, at a minimum, the same or more due process required for a minor $1,000 penalty.

Despite the government's claims to the contrary, a hodgepodge of vaguely-worded informed compliance warning letters, which are on their face "non-disciplinary," are not equivalent to the APA-required written proposal notice describing charges and specifically proposing entry filer code suspension with an opportunity to respond by a set deadline. This is especially true here where Customs issued informed compliance letters in March 2026 casually referring to entry filer codes, followed by subsequent letters in April and May 2026 making no reference to entry filer codes, followed by Custom's abrupt summary suspension letter on June 1, 2026, which provided no opportunity to respond.

Customs' claim that nothing was provided to the broker in *Lizarraga* prior to entry filer code deactivation is patently false. The undersigned was Customs counsel second-chairing that case along with DOJ Attorney-in-Charge Justin Miller, and the truth is there was the same kind of back and forth informed compliance correspondence with broker *Lizarraga* about importer vetting, power of attorney forms, and the involvement of unsupervised third parties in conducting customs business, prior to Customs' summary filer code deactivation there. If anything, the broker in *Lizarraga* was warned of far more serious and consequential alleged behavior – alleged facilitation of drug smuggling – prior to summary suspension of his entry filer code. Even with this evidence, Judge Eaton utterly rejected the government's specious claims in *Lizarraga*, the same ones the government makes here, holding an emergency hearing and readily granting a TRO on the day after the case was initiated. Further, Judge Eaton was considering whether to require a hearing before an Administrative Law Judge prior to entry filer code deactivation when

the government threw in the towel to avoid an adverse decision on this issue. The government's false revisionist history will not save it here.

What makes the government's protestations in this case particularly disingenuous is that, after filing a confession of judgment in *Lizarraga*, the government itself proposed specific APA-compliant due process procedures for suspending entry filer codes pursuant to 19 C.F.R. § 142.3a (about which it conveniently forgot to advise the court in its opposition brief) that it admittedly did not provide plaintiff. *See* "Establishment of Due Process Procedures on License-Like Processes," 78 FR 12998-01 (Tuesday, February 26, 2013). In the background section to these proposed regulations, Customs explains that it designed these procedures to specifically meet the APA standard set forth in 5 U.S.C. § 558(c), closely mirroring the procedures it provides for broker penalties in 19 U.S.C. § 1641(d)(2)(A) and 19 C.F.R. § 111.92. Customs entry filer code procedures are as follows:

> (d) Suspension or revocation of the entry filer code.
>
> (1) Proposed suspension or revocation. If the port director finds that an assigned entry filer code has been misused by the importer or broker, the importer or **broker will be provided with written notice proposing the suspension or revocation of the entry filer code along with a description of the facts or conduct warranting the action**. Any notice to suspend or revoke a filer code will also specify that participation in Remote Location Filing would also be suspended or revoked pursuant to § 143.46. The importer or **broker will be offered the opportunity to appeal the port director's decision in writing within 10 calendar days of receipt of the written notice.** The Assistant Commissioner, Office of International Trade, or his designee, will issue a decision in writing on the proposed action within 30 working days after receiving a timely filed appeal. If no timely appeal is received, the proposed notice becomes the final decision of the Agency as of the date that the appeal period expires. **A proposed suspension or revocation of an importer's or broker's entry filer code will not take effect unless the appeal process under this paragraph has been concluded with a decision adverse to the importer or broker.**

Establishment of Due Process Procedures on License-Like Processes, 78 FR 12998-01 (emphasis added). Again, one would expect the government, not plaintiff, to advise the court of its own proposed procedures but given the government does not do so, plaintiff fills the void. By not producing such a written proposal notice issued by the port director here, the government admits it did not provide the very procedure Customs itself determined it is required to provide prior to suspending a broker's entry filer code. This concession is an admission that plaintiff will prevail on the merits and indicates that the government's litigation position is not substantially justified under the government's own standards, which is perhaps why it chose not to apprise the court of these procedures.

**The Government Is Estopped from Challenging Harm and Concedes Plaintiff Cannot File Entries Because It Suspended Plaintiff's Entry Filer Code**

In *Lizarraga*, Judge Eaton issued a TRO the day after the litigation was filed, concluding that the broker suffered irreparable harm from filer code deactivation in exactly the same manner as plaintiff here. As set forth in plaintiff's declaration, which closely mirrors the declarations in *Lizarraga*, plaintiff suffered the same injury as the broker in *Lizarraga* – the inability to file electronic entries resulting in the imminent termination of his customs brokerage. Further, the government conceded this issue by confessing judgment in *Lizarraga*. In oral argument regarding its confession of judgment, to alleviate broker Lizarraga's concerns about a repeat irreparable harm, the government, through then-DOJ Trial Attorney Miller, pledged to Judge Eaton that it would never suspend or revoke a broker's entry filer code again without first providing basic APA due process – a proposal notice describing the charges, proposing a specific penalty, and providing an opportunity to respond to these charges. *See Lizarraga Customs Broker v. Bureau of Customs & Border Prot.*, 34 C.I.T. 1309, 1317 (2010). Thus, the government is collaterally estopped from

challenging the irreparable harm issue by this court's prior TRO decision, as well as the government's confession of judgment and promises to this court, on the identical issue.

This court's recent decision in *AGS Co. Auto. Sols. v. U.S. Customs & Border Prot*., 813 F. Supp. 3d 1298, 1303 (Ct. Int'l Trade 2025) is instructive on this issue. In *AGS*, a panel of three of this court's most experienced judges denied the plaintiff's motion for preliminary injunction on the limited grounds that "the Government has taken the 'unequivocal position' that 'liquidation will not affect the availability of refunds after a final decision' so '[t]he Government would be judicially estopped from 'assum[ing] a contrary position' in the future. New Hampshire v. Maine, 532 U.S. at 749, 121 S.Ct. 1808." Here, the government took the "unequivocal position" in *Lizarraga* that it would never suspend a broker's entry filer code again without first providing an APA-compliant notice and opportunity to respond. Yet, Customs broke that promise to this court and did just that here. Accordingly, as this court held in *AGS*, the government is estopped from taking the contrary position it is taking in this case and given the government's open intransigence, unlike in *AGS*, a preliminary injunction is needed here to ensure its compliance.

Further, more specifically, the government admits plaintiff has been effectively unable to file any entries because it suspended his entry filer code. Gov. Opp. Bri. at 10. Filing entries is 99 percent of the customs business brokers conduct, and 99 percent of the entries brokers file are electronic, in part because the government has pressured brokers for years to file entries only electronically. The government's claim that plaintiff has somehow been able to continue to conduct customs business as a broker by filing protests is laughable because these few protests were filed on <u>electronically filed</u> entries, which he can no longer file. Now that plaintiff cannot file entries at all, there will be no entries to protest and plaintiff will be totally precluded by Customs' suspension action from conducting even the most trivial customs business to protect his

clients. This threatens to destroy any last hope that they may return as clients once his filer code is reactivated.

Customs' claim that thousands of entries are filed manually over the last one and a half years is as ridiculous as it is misleading. Gov Opp. Br. at 23. Customs knows this is a tiny fraction of the tens of millions of entries filed every year. And these are obviously filed as one-off entries by small-time importers without an ACE account themselves, not by customs brokers, or the government would have said so. It is undisputed that no self-respecting broker would file a manual entry instead of an electronic entry. Customs knows this but does not reveal these facts to the court in an attempt to secure a win in this case. This court should not indulge the government's obfuscation.

**Customs Concedes its Position is the Ends Justify the Means**

Almost as an afterthought, on page 24 of its opposition brief, the government attempts to argue that the court should overlook Customs' defective notice procedures because, it alleges without support, plaintiff submitted information about certain importers that may not be accurate. To be clear, Customs does not even claim any harm occurred because of this alleged conduct. But, given Customs needs accurate information, the government claims, it should not be held to the same APA notice procedural standard it developed for itself after *Lizarraga* or uses for the far less serious penalty actions. To make matters worse, the government then perversely condemns plaintiff for not being more responsive to Customs after it has effectively put him out of business with no likelihood or guarantee that his cooperation will cause Customs to reverse course. Frankly, this argument is non-sensical and not worthy of the high standard of advocacy to which the government should hold itself. If Customs were permitted to take an action first due to its subjective perceived understanding of the situation and only consider relief if the victim of its

action comports itself to Customs' satisfaction, it would do this any time it takes a disciplinary action against a broker. This "take names and ask questions later" approach may be the theme of the moment for this Administration, but it does not pass constitutional or APA muster – not by a longshot. Ironically, if Customs had just given plaintiff the due process it admits he deserved, it would have been far more likely to obtain the response it is looking for. By putting plaintiff out of business first and then seeking cooperation, Customs forced plaintiff to initiate this litigation to protect his interests as he could not have any reasonable confidence that his efforts at cooperation would do any good with the federal agency that just violated his due process rights to bully him out of business.

**Customs Concedes it Plans to Violate the Due Process Rights of Other Brokers**

The government gives the effects of its entry filer code suspension on the public interest, a critical criterion for this court, even shorter shrift (two paragraphs). The substance of the government's arguments here are that this court should allow it to freely break constitutional, APA, and its own procedural requirements to punish plaintiff without due process because if it is not allowed to violate these rights other brokers will be encouraged to commit misconduct. This is equivalent to a comical "the beatings will continue until morale improves" defense. The government asks this court for unfettered authority to crush brokers it does not like based on the irrational theory that if it has to provide brokers with their entitled due process they are more likely to violate laws. This theorizing may be commonplace in authoritarian states but, here in America, license holders, such as brokers, just as criminal defendants, get receive process before their rights are taken away. This is not a dangerous bug, as the government would argue, but instead the main feature of our democracy. For the government to argue the converse is deeply troubling and even further supports the urgent need for court action.

**Conclusion**

The government concedes to, and is estopped from challenging, plaintiff's showing of likelihood of success and the merits, irreparable harm, balance of interests, and public interest. Further, the government has proven itself unworthy of credence by presenting a false description of the facts in *Lizarraga*, not being forthcoming about its failure to comply with its own procedural standard for suspending a broker's entry filer code, and breaking its promise to Judge Eaton that it would never act in this manner again. All Customs needs do is start over, reactivate plaintiff's entry filer code, and issue a formal proposal notice detailing the specific reasons why Customs intends to deactivate plaintiff's entry filer code, along with providing the plaintiff with an opportunity to respond, just like it does in every other situation in which it seeks to discipline a broker. Customs' steadfast unwillingness to follow the law and its own procedures is telling and underscores the urgent need for court intervention. Given the government's conduct, refusal to provide basic due process, and willingness to defend a substantially unjustified action, this court should: (1) issue a preliminary injunction returning the parties to the *status quo ante* prior to the unlawful June 1, 2026, suspension letter; (2) order Customs to immediately reactivate plaintiff's entry filer code; and (3) consider such other relief as may be necessary to make plaintiff whole and deter such government conduct in the future.

Dated: August 17, 2026

*/s/ Christopher J. Duncan*
Christopher J. Duncan
SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Lost Angeles, CA 90071
Telephone: (213) 624-2500
Facsimile: (213) 623-4581

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on August 17, 2026, the foregoing **PLAINTIFF'S REPLY TO GOVERNMENT'S OPPOSITION EMERGENCY MOTION FOR PRELIMINARY INJUNCTION** was filed and served via CM/ECF to the following parties:

Justin R. Miller
Attorney-in-Charge
International Trade Field Office

David Heitner
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278

*Attorneys for Defendant*

*/s/ Christopher J. Duncan*
Christopher J. Duncan