**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HONORABLE LISA W. WANG, JUDGE**

| | | |
|---|---|---|
| FORREST XU,<br><br>Plaintiff,<br>v.<br><br>U.S. CUSTOMS AND BORDER PROTECTION, U.S. DEPARTMENT OF HOMELAND SECURITY, SUSAN S. THOMAS, EXECUTIVE ASSISTANT COMMISSIONER, OFFICE OF TRADE,<br><br>Defendants. | : | Court No. 26-03403 |

**PLAINTIFF FORREST XU'S MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Pursuant to Rule 56.2 of the Rules of the United States Court of International Trade, Plaintiff Forrest Xu ("Mr. Xu") moves for judgment on the agency record.

Dated: October 30, 2026

*<u>/s/ Christopher J. Duncan</u>*
Christopher J. Duncan
SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Lost Angeles, CA 90071
Telephone: (213) 624-2500
Facsimile: (213) 623-4581
Email: chris.duncan@squirepb.com

*Attorneys for Plaintiff*

# TABLE OF CONTENTS


Page

I. RULE 56.2 STATEMENT ........ 1
  A. The Administrative Determination Under Review ........ 1
  B. Statement of Issues Presented ........ 1
II. INTRODUCTION ........ 1
III. STATEMENT OF FACTS ........ 3
  A. Mr. Xu's Customs Broker License and Entry Filer Code ........ 3
  B. CBP's August 2024 Broker Compliance Review ........ 4
  C. CBP's February 2025 Informed Compliance Letter ........ 4
  D. CBP's Subsequent Informed Compliance Correspondence ........ 5
  E. CBP's March 3, 2026 Penalty Notice for Power of Attorney Validation ........ 6
  F. CBP's April 2026 Importer Verification Review ........ 6
  G. CBP's May 4, 2026 Suspension of Mr. Xu's Form 5106 Filing Privileges ........ 8
  H. CBP's May 19, 2026 Penalty for Power of Attorney Validation ........ 8
  I. CBP's June 1, 2026 Suspension of Mr. Xu's Entry Filer Code ........ 9
  J. Mr. Xu's August 2026 Commencement of this Action ........ 10
IV. STANDARD OF REVIEW ........ 11
V. ARGUMENT ........ 12
  A. CBP Did Not Allege Entry Filer Code Misuse ........ 12
  B. CBP Did Not Provide Required Due Process ........ 15
    1. Mr. Xu Possessed a Significant Protected Interest in the Continued Use of His Filer Code ........ 16
    2. The Procedures Utilized by CBP Were Inadequate Given the Severe Nature of the Deprivation ........ 16
    3. CBP's Own Regulatory History Demonstrates That Greater Procedural Protections Were Feasible ........ 17
VI. CONCLUSION ........ 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Axiom Resource Mgmt., Inc. v. United States*,
564 F.3d 1374 (Fed. Cir. 2009)....................11

*Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*,
419 U.S. 281 (1974)....................11

*Camp v. Pitts*,
411 U.S. 138 (1973)....................11

*Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*,
508 U.S. 602 (1993)....................11

*Mathews v. Eldridge*,
424 U.S. 319 (1976)....................16

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983)....................11

*NationsBank of Tex., N.A. v. United States*,
269 F.3d 1332 (Fed. Cir. 2001)....................11

*Robinson v. Shell Oil Co.*,
519 U.S. 337 (1997)....................12

*Skidmore v. Swift & Co.*,
323 U.S. 134 (1944)....................18

**Statutes**

5 U.S.C. § 554(b)-(c) ....................16

5 U.S.C. § 558(c) ....................3, 16

5 U.S.C. § 706(2)(A)....................11

19 U.S.C. § 1641....................9

19 U.S.C. § 1641(d) .................... *passim*

28 U.S.C. § 2640(e) ....................11

**Other Authorities**

19 C.F.R. Part 111 ........ *passim*

19 C.F.R. Part 111, Subpart C ........ *passim*

19 C.F.R. Part 111, Subpart C: (1) ........ 9

19 C.F.R. Part 111, Subpart D ........ *passim*

19 C.F.R. Part 143.6 ........ 2, 18

19 C.F.R. § 111.28 ........ 5, 9

19 C.F.R. § 111.32 ........ 9

19 C.F.R. § 111.36(c)(3) ........ 9

19 C.F.R. § 111.37 ........ 9

19 C.F.R. § 141.46 ........ 6, 8

19 C.F.R. § 142.3 ........ 11

19 C.F.R. § 142.3.2(f) ........ 2

19 C.F.R. § 142.3a ........ *passim*

19 C.F.R. § 142.3a(b)(1) ........ 1

19 C.F.R. § 142.3a(d) ........ *passim*

78 F.R. 12998-01 ........ 17

# I. RULE 56.2 STATEMENT

## A. The Administrative Determination Under Review

Mr. Xu seeks review and reversal of U.S. Customs and Border Protection ("CBP")'s decision to suspend his entry filer code for a minimum of 180 days, as set forth in CBP's suspension letter dated June 1, 2026.

## B. Statement of Issues Presented

1. Whether the allegations against Mr. Xu in CBP's suspension letter do not constitute misuse of an entry filer code.

2. Whether CBP failed to provide Mr. Xu with an opportunity to demonstrate compliance before it suspended his entry filer code.

# II. INTRODUCTION

Mr. Xu is a licensed customs broker with a national permit. CBP issued Mr. Xu entry filer code N8Y. Mr. Xu challenges CBP's unlawful decision to suspend his entry filer code for entry filer code misuse pursuant to 19 C.F.R. § 142.3a(d) ("Entry numbers").

An entry filer code is a unique three-character identifier placed at the beginning of an entry number that CBP assigns to licensed customs brokers and high-volume importers who file customs entries. 19 C.F.R. § 142.3a(b)(1). Every entry number must start with this assigned 3-character filer code (e.g., XXX-NNNNNNN-N, where XXX is the filer code). *Id*. The sole use and purpose of an entry filer code is to identify the entity responsible for filing an entry and it has no other use. *Id*.

CBP's guidance related to entry filer codes demonstrates that the concept of entry filer code misuse targets the use of the filer code itself, including situations in which unauthorized persons use a broker's filer code or where the identity of the true filer is obscured. AR0143-0144; AR0206-0207. CBP did not allege Mr. Xu misused his entry filer code in this manner pursuant to

19 C.F.R. § 142.3a. Rather, CBP alleged Mr. Xu violated broker license and permit regulations that do not involve entry filer code use set forth in 19 C.F.R. Part 111, Subpart C, for which there are exclusive disciplinary procedures in 19 U.S.C. § 1641(d) and 19 C.F.R. Part 111, Subpart D. Accordingly, CBP's suspension of Mr. Xu's entry filer code was not based on entry filer code misuse under 19 C.F.R. § 142.3a but rather on alleged broker license and/or permit violations required to be addressed using different disciplinary procedures in different regulations.

Customs brokers such as Mr. Xu file virtually all entries electronically through CBP's Automated Broker Interface ("ABI"), a function within CBP's Automated Commercial Environment ("ACE"). ACE is an online platform where brokers and importers can engage in customs business with CBP. As a precondition to accessing ABI, brokers must have an active entry filer code, although the code itself is not used to access ABI or ACE. 19 C.F.R. § 142.3.2(f). If CBP suspends a broker's entry filer code, as it did with Mr. Xu, the broker is unable to access ABI or file entries electronically.

By suspending Mr. Xu's entry filer code, CBP prevented Mr. Xu from accessing ABI to file electronic entries, effectively terminating his customs brokerage. However, CBP did not comply with the due process procedures required for suspending access to ABI set forth in 19 C.F.R. Part 143.6, including providing 10 days to respond to a proposal notice prior to disabling his access to ABI. These procedures, including the 10-day response window, are mirrored by the proposed regulations CBP itself recognizes are required before suspending an entry filer code. Accordingly, by not providing Mr. Xu an opportunity to demonstrate compliance, CBP did not provide the basic due process it admits is required prior to suspending Mr. Xu's entry filer code.

Mr. Xu does not contend that every critique raised by CBP is without merit, nor does this case require the court to determine the merits of CBP's allegations of various broker license or

permit violations. The two questions presented here are narrow. The first question is whether, even assuming every allegation in CBP's suspension letter is true, these allegations do not constitute misuse of an entry filer code under 19 C.F.R. § 142.3a(d) but are rather broker license or permit violations listed in 19 C.F.R. Part 111. The second question is whether, even if the allegations constitute entry filer code misuse, CBP did not provide a proposal notice and opportunity to respond to specific factual allegations required by the Fifth Amendment and the Administrative Procedures Act ("APA") (5 U.S.C. § 558(c)) but rather summarily suspended Mr. Xu's entry filer code.

The implications of the court's decision will reverberate throughout the broker community. Denial of Mr. Xu's motion will allow CBP to put any broker out of business for any alleged violation of the basic broker license and permit regulations even if they do not involve entry filer code misuse. Further, if the court condones the CBP's suspension action, CBP will have unbounded discretion to characterize any alleged broker compliance deficiency as "entry filer code misuse" and deactivate entry filer codes with impunity in lieu of using the disciplinary mechanisms specifically provided for by Congress and CBP for addressing general broker compliance deficiencies, such as validation of powers of attorney. This would effectively supersede Congress' mandated administrative broker disciplinary procedures and force brokers to seek relief from this court for every entry filer code suspension.

## III. <u>STATEMENT OF FACTS</u>

### A. Mr. Xu's Customs Broker License and Entry Filer Code

Mr. Xu is a licensed customs broker authorized to transact customs business with CBP. AR0282-0283. CBP activated and assigned entry filer code N8Y to Mr. Xu. AR0284. Although an active entry filer code was required for Mr. Xu to access ABI and electronically transmit customs entries, the entry filer code itself is not used to access ABI or to perform any other

function. Rather, having an active entry filer code is merely a background pre-condition to ABI access, and Mr. Xu, like all brokers and importers filing entries through ABI, used a standard email and password to access ABI via ACE. AR0143-AR0144; AR0206-AR0207. Given customs entries are predominantly filed electronically, Mr. Xu's ability to operate as a licensed customs broker was contingent on his entry filer code being active such that he had access to ABI. AR0284.

### B. CBP's August 2024 Broker Compliance Review

In August 2024, CBP conducted a standard broker compliance review of Mr. Xu's customs brokerage operations. AR0292-0293. Following CBP's review, it identified concerns relating to Mr. Xu's customs brokerage practices and prepared an executive summary and related memoranda concerning the results of its review. AR0287-0289; AR0292-0293. CBP's review covered only on broker license and permit regulatory requirements set forth in 19 C.F.R. Part 111 such as Mr. Xu's use of Eton Customs Brokers Inc. when conducting customs business despite it being an unlicensed entity, responsible supervision and control of his customs brokerage, customs business conducted by his employees on behalf of importers under his license and permit, and compliance with other broker license and permit regulatory requirements set forth in 19 C.F.R. Part 111. AR0287-0289; AR0292-0293. CBP's 2025 broker compliance review did not identify any entry filer code misuse or cite to 19 C.F.R. § 142.3a.

### C. CBP's February 2025 Informed Compliance Letter

On February 5, 2025, CBP issued an informed compliance letter to Mr. Xu identifying various concerns arising from its 2024 broker compliance review and directing Mr. Xu to take corrective actions relating to his customs broker practices. AR0294-0299. Among other matters, CBP reiterated its concern regarding customs business conducted under the name Eton Customs

Brokers Inc., Mr. Xu's supervision of brokerage license and permit activities by his authorized employees, and general customs broker license and permit compliance requirements set forth in 19 C.F.R. Part 111. AR0294-0299. CBP's February 5, 2025, informed compliance letter warned Mr. Xu that additional alleged violations of his customs broker duties and responsibilities under 19 C.F.R. Part 111 could result in further enforcement action but did not specify the contemplated types of enforcement action. AR0294-0299. Again, CBP did not identify or discuss any kind of alleged entry filer code misuse or cite to 19 C.F.R. § 142.3a in its February 5, 2025, informed compliance letter. On February 12, 2025, Mr. Xu responded to CBP's letter and addressed CBP's concerns related to his broker license and permit duties and responsibilities under 19 C.F.R. Part 111. AR0300-0308. Mr. Xu did not address entry filer code misuse because none was alleged.

### D. CBP's Subsequent Informed Compliance Correspondence

Following CBP's February 2025 informed compliance letter, CBP continued to communicate with Mr. Xu regarding his customs broker compliance obligations under 19 C.F.R. Part 111. AR0356-0365. These informed compliance letters addressed similar types of general broker license and permit matters, including obtaining and validating client powers of attorney, general customs broker responsibilities, brokerage supervision and control requirements, and customs broker license and permit regulatory obligations. AR0356-0365. Again, however, CBP did not identify any instances of entry filer code misuse or cite to 19 C.F.R. § 142.3a. Although one of the informed compliance letters advised Mr. Xu that misuse of a CBP filer code could eventually result in suspension of Mr. Xu's entry filer code, the referenced conduct, such as submission of invalid POAs or inaccurate data to CBP, is broker license conduct covered by 19 C.F.R. § 111.28 ("Responsible supervision and control") and does not involve use of an entry

filer code. AR0365. To be clear, entry filer codes are not used to prepare or validate powers of attorney, vet importers of record, access CBP systems, or transmit information to CBP. Rather, entry filer codes are only used by brokers and importers as the first three digits of their entry numbers to identify for CBP the broker or importer who prepared and filed the entry. Accordingly, the conduct identified by CBP concerning powers of attorney, importer verification procedures, and responsible supervision and control over brokerage activities does not involve the use of the filer code itself, much less the misuse of that code.

**E. CBP's March 3, 2026 Penalty Notice for Power of Attorney Validation**

On March 3, 2026, CBP issued Mr. Xu a pre-penalty notice proposing to issue a $1,000 penalty against Mr. Xu based on allegations Mr. Xu conducted customs business for an importer without properly validating the importer's power of attorney, a violation of 19 C.F.R. § 141.46 ("Powers of attorney retained by customshouse broker"), which is the same type of broker license issue CBP previously raised in its informed compliance correspondence. *See* Exhibit 1. CBP's pre-penalty notice correctly did not allege that this conduct constituted entry filer code misuse or cite to 19 C.F.R. § 142.3a. The pre-penalty notice provided Mr. Xu with the opportunity to respond within 30 days. Mr. Xu paid the $1,000 penalty rather than responding. CBP did not include the pre-penalty notice in the agency record even though it includes the same type of conduct relied upon by CBP in its entry filer code suspension.

**F. CBP's April 2026 Importer Verification Review**

On April 24, 2026, CBP advised Mr. Xu that it was conducting a compliance review concerning the accuracy of information in CBP Form 5106s ("Importer Create/Update Identity Form") that Mr. Xu prepared and transmitted through ACE on behalf of numerous importers of record. AR0386-0388. CBP informed Mr. Xu that available information indicated that certain

CBP Form 5106 transmissions may contain inaccurate or invalid information, including telephone numbers, email addresses, and mailing addresses. AR0386-0388. CBP requested that Mr. Xu provide a detailed explanation of the procedures used to verify importer identities, validate powers of attorney, confirm importer contact information, review identification documents, and verify the accuracy of information transmitted to CBP through CBP Form 5106 filings. AR0386-0388. CBP additionally requested communications between Mr. Xu and the identified importers, documentation relating to powers of attorney, and records supporting the information submitted to CBP. AR0386-0388. CBP's allegations concerning CBP Form 5106 transmissions address the accuracy of importer information and Mr. Xu's verification procedures. Those allegations concern the content of information transmitted to CBP, not the use of Mr. Xu's entry filer code. While the entry filer code identifies the filer associated with an entry, the alleged inaccuracies identified by CBP do not arise from the use of the entry filer code itself. Again, none of these allegations involve entry filer code misuse and CBP did not identify, describe, or even discuss any entry filer code misuse in its review.

CBP advised Mr. Xu that failure to provide a sufficient response and supporting documentation could result in CBP disabling Mr. Xu's ability to electronically transmit CBP Form 5106 filings through ACE. AR0386-0388. However, again, CBP did not mention entry filer code misuse, much less explain why or how Mr. Xu's alleged violation of customs broker license and permit regulations relating to transmission of CBP Form 5106s constituted entry filer code misuse, as distinct from a general broker license or permit violation. Mr. Xu provided documentation and information in response to CBP's requests detailing his customer broker practices. AR0389-0403. Mr. Xu did not address entry filer code misuse because CBP did not allege any entry filer code misuse.

### G. CBP's May 4, 2026 Suspension of Mr. Xu's Form 5106 Filing Privileges

On May 4, 2026, CBP notified Mr. Xu that it was disabling his ability to electronically submit CBP Form 5106 filings through ACE as a consequence of its April 2026 review. AR0382-0385. CBP explained that the action was being taken in connection with its ongoing review of verification information related to the importer, powers of attorney, and supporting documentation previously requested from and provided by Mr. Xu. AR0382-0385. CBP did not provide Mr. Xu a notice specifying the reasons for its proposed disabling if his CBP Form 5106 privileges or an opportunity to respond before the decision became final. Further, CBP did not mention entry filer code misuse, explain how Mr. Xu's CBP Form 5106 practices are related to his use of his entry filer code, or mention entry filer codes at all.

### H. CBP's May 19, 2026 Penalty for Power of Attorney Validation

On May 19, 2026, CBP issued Mr. Xu a second pre-penalty notice proposing to issue a $5,000 penalty against Mr. Xu based on multiple allegations Mr. Xu conducted customs business for importers without properly validating the importers' powers of attorney in violation of 19 C.F.R. §§ 141.46 ("Powers of attorney retained by customshouse broker"), 111.36(c)(3) ("Relations with unlicensed person"), and 111.28(a) ("Responsible supervision and control"). *See* Exhibit 2. This same broker license issue was previously raised in CBP's earlier informed compliance correspondence and in CBP's March 3, 2026 pre-penalty notice for the same broker conduct. *See* Exhibit 1. CBP's pre-penalty notice did not allege that this conduct constituted entry filer code misuse or city to 19 C.F.R. § 142.3a. The pre-penalty notice provided Mr. Xu with the opportunity to respond within 30 days. Mr. Xu paid the $5,000 penalty rather than responding. Again, CBP likewise did not include the pre-penalty notice in the agency record even though it includes the same conduct relied upon by CBP to support its entry filer code

suspension.

## I. CBP's June 1, 2026 Suspension of Mr. Xu's Entry Filer Code

On June 1, 2026, CBP notified Mr. Xu that it was immediately suspending his entry filer code N8Y pursuant to 19 C.F.R. § 142.3a(d). AR0404-0406. CBP stated that it determined Mr. Xu "willfully misused" his entry filer code N8Y but did not list any instances of entry filer code misuse. AR0404. Instead of alleging Mr. Xu misused his entry filer code under 19 C.F.R. § 142.3a, CBP exclusively alleged Mr. Xu misused his customs broker license and/or permit, a separate offense with its own exclusive disciplinary action procedures set forth in 19 U.S.C. § 1641 and 19 C.F.R. Part 111. In CBP's suspension letter, CBP alleged Mr. Xu committed four types of broker license or permit violations under 19 C.F.R. Part 111, Subpart C: (1) billing clients for customs duties and paying clients' duty bills to CBP through his unlicensed corporation, Eton Customs Brokers Inc., in violation of 19 C.F.R. § 111.37 (Misuse of customs broker license or permit); (2) failure to identify the proper importer of record on entries or validate powers of attorney in violation of 19 C.F.R. § 111.28 ("Responsible supervision and control"); (3) failure to obtain a power of attorney directly from a client in violation of 19 C.F.R. § 111.36(c)(3) ("Relations with unlicensed persons"); and (4) transmission of CBP Form 5106s containing false or unverified information in violation of 19 C.F.R. § 111.32 ("False information").

None of CBP's four listed reasons for suspending Mr. Xu's entry filer code allege Mr. Xu allowed an unauthorized person to use his entry filer code, used another person's entry filer code, or any other type of conduct that could be considered entry filer code misuse. Therefore, they do not allege entry filer code misuse under 19 C.F.R. § 142.3a. Rather, each of the four listed reasons underpinning the entry filer code suspension alleges violation of the customs broker

license and permit duties and responsibilities set forth in various regulations within 19 C.F.R. Part 111, Subpart C ("Duties and responsibilities of customs brokers"). 19 C.F.R. Part 111, Subpart D ("Cancellation, suspension, or revocation of license or permit, and penalties in lieu of suspension or revocation") provides the exclusive procedures for disciplinary action against brokers based on alleged violations of these customs broker regulations, with sanctions ranging from a monetary penalty, such as CBP previously imposed on Mr. Xu for some of these same alleged violations, to license revocation. Subpart D does not provide for or authorize entry filer code suspension or revocation for violations of the customs broker regulations in Subpart C.

Based upon these alleged violations of broker duties and responsibilities under 19 C.F.R. Part 111, Subpart C, CBP suspended Mr. Xu's entry filer code for a minimum period of 180 days. AR0406. CBP advised Mr. Xu that reinstatement would not occur automatically upon expiration of the 180-day period but would instead depend upon Mr. Xu's submission of corrective documentation and CBP's determination that the identified deficiencies were adequately addressed. AR0406. CBP did not provide Mr. Xu with an opportunity to address or correct any entry filer code misuse, however, because none was alleged. Given there is no alleged entry filer code misuse for Mr. Xu to correct, it is unclear how Mr. Xu can obtain reactivation of his suspended entry filer code without court action.

**J. Mr. Xu's August 2026 Commencement of this Action**

CBP's suspension of Mr. Xu's entry filer code prevented him from accessing ABI to file electronic entries, forcing him to go out of business. Left with no other option, Mr. Xu commenced this case seeking judicial review of CBP's decision to suspend his entry filer code. Mr. Xu respectfully requests that the court issue an order concluding CBP's entry filer code suspension action was unlawful, requiring CBP to immediately reactivate Mr. Xu's entry filer

code, and enjoining CBP from suspending Mr. Xu's entry filer code without due process.

## IV. STANDARD OF REVIEW

This court reviews CBP's suspension action pursuant to the standards set forth in the APA. 28 U.S.C. § 2640(e). The court must set aside an agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A). An agency action is arbitrary and capricious where the agency relies on factors not intended to govern the decision at issue, fails to consider an important aspect of the problem, or fails to articulate a rational connection between the facts found and the choice made. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

In reviewing CBP's suspension action, this court must determine whether CBP's stated grounds for suspending Mr. Xu's entry filer code are supported by the administrative record and consistent with the legal authority governing entry filer code administration and suspension. *See Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 285-86 (1974) (requiring a rational basis in the administrative record for agency action). Because an entry filer code is the vital operational lifeblood required to file electronic entries under 19 C.F.R. § 142.3, any suspension or other type of deactivation must be strictly scrutinized against the record compiled by CBP at the time of its decision. *See Camp v. Pitts*, 411 U.S. 138, 142 (1973) (holding that "the focal point for judicial review should be the administrative record already in existence"); *Axiom Resource Mgmt., Inc. v. United States*, 564 F.3d 1374, 1379 (Fed. Cir. 2009) (holding that judicial review of agency action ordinarily is limited to the administrative record before the agency and cautioning against reliance on extra-record evidence or rationalizations).

Constitutional challenges are reviewed *de novo*. *See Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 637 (1993); *NationsBank of Tex., N.A. v. United States*, 269 F.3d 1332, 1335 (Fed. Cir. 2001). Given Mr. Xu's claim that CBP failed to

provide adequate due process arises under the Fifth Amendment and the APA, his claim presents a question of law this court reviews *de novo* with no deference to CBP.

## V. ARGUMENT

### A. CBP Did Not Allege Entry Filer Code Misuse

CBP suspended Mr. Xu's entry filer code solely pursuant to 19 C.F.R. § 142.3a(d) after determining that Mr. Xu had "willfully misused" entry filer code N8Y. AR0404-0406. CBP's suspension is facially unlawful because it did not allege any entry filer code misuse. Rather, it only alleged violations of CBP customs regulations governing the duties and responsibilities associated with customs broker licenses and permits in 19 C.F.R. Part 111, Subpart C, not 19 C.F.R. § 142.3a. Although such allegations may be used to support a disciplinary action under 19 U.S.C. § 1641(d) and its implementing regulations in 19 C.F.R. Part 111, Subpart D, they do not constitute or involve entry filer code misuse, so they cannot be used to support an entry filer code suspension action under 19 C.F.R. § 142.3a(d).

Section 142.3a(d) authorizes CBP to refuse to allow the use of an entry filer code when that code has been misused. The regulation does not define the term "misuse," so the term must be interpreted considering the purpose of entry numbers and the function that entry filer codes serve within CBP's electronic entry process. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). An entry filer code is a unique identifier assigned to a customs broker solely for use in the transmission of customs entries. AR0284. Every entry number must start with this assigned 3-character filer code (e.g., XXX-NNNNNNN-N, where XXX is the filer code) such that CBP can determine based on the entry number who prepared and filed an entry. AR0284. The sole purpose and use of the entry filer code is to identify the party responsible for preparing and transmitting entry information to CBP and to thereby preserve the integrity of the electronic

filing system by ensuring CBP can monitor the veracity of an entry filer's entries. *See* AR0143-0144; AR0206-0207. Entry filer codes have no use other than to identify the entry filer. *Id.*

CBP's own guidance to the trade community reflects that entry filer code misuse concerns the use of the filer code itself, not other broker conduct that does not involve use of an entry filer code. For example, on its public-facing website, CBP identifies entry filer code misuse only in circumstances involving unauthorized use of a broker's entry filer code by an unlicensed person. AR0213. Although CBP's private broker management handbook labeled "for internal use only" lists general violations of the customs broker regulations, such as not possessing a valid power of attorney and repeated failure to comply with informed compliance measures, as other types of entry filer code misuse, this conduct does not involve use of an entry filer code so cannot constitute entry filer code misuse. AR0143-0144. This court should disregard CBP's self-serving and baseless attempt to transform these alleged violations of broker conduct regulations in 19 C.F.R. Part 111, Subpart C into entry filer code misuse in 19 C.F.R. § 142.3a.

The conduct identified in CBP's June 1, 2026, suspension letter as forming the basis for the suspension of Mr. Xu's entry filer code likewise does not involve entry filer code misuse and only involves violations of the general customs regulations governing brokers' licenses and permits in 19 C.F.R. Part 111, Subpart C. CBP did not allege Mr. Xu allowed an unauthorized person to use his entry filer code or that he misused his or another person's entry filer code in any other way. Rather, CBP relied solely upon allegations concerning customs business conducted through Eton Customs Brokers Inc., responsible supervision and control of customs business, importer-verification procedures, verification of powers of attorney, and information associated with CBP Form 5106 submissions. AR0404-0406. These allegations overtly concern customs broker license and permit compliance obligations covered by 19 C.F.R. Part 111,

Subpart C and the suspension letter cites directly to the relevant regulatory sections within this subpart. The allegations do not involve theft of an entry filer code, unauthorized use of an entry filer code by a third party, false entry filer code identity, or anything else that remotely concerns use of the three digits at the beginning of an entry number. Although CBP alleges Mr. Xu used his entry filer code to transmit CBP Form 5106s, this is a mischaracterization of how brokers submit CBP Form 5106s to CBP. Rather, Mr. Xu prepared and transmitted the forms to CBP via CBP's online platform, ACE, with no use of, or reference to, his entry filer code. Mr. Xu did not use his entry filer code to access ACE or prepare the forms. Further, unlike CBP Form 7501s that contain entry numbers, CBP Form 5106s do not call out entry filer codes or other unique identifiers for the persons who prepare or file the forms.

Disciplinary actions for the 19 C.F.R. Part 111, Subpart C general broker conduct allegations CBP identified in the suspension letter are addressed exclusively through the due process procedures in 19 U.S.C. § 1641(d) and 19 C.F.R. Part 111, Subpart D. In fact, as recently as a few months ago, CBP used these very procedures to penalize Mr. Xu twice for the same type of general broker conduct, verification of powers of attorney, which it incorrectly described in the suspension letter as entry filer code misuse. *See* Exhibits 1 and 2. Given CBP's penalty notices would have presumably supported CBP's suspension action for prior notice and progressive discipline reasons, it is fair to question why the government did not include them in the agency record. One explanation is that these notices completely undercut the government's position that such conduct having nothing to do with entry filer codes is nonetheless entry filer code misuse and demonstrate that this type of general broker conduct is addressed solely via 19 U.S.C. § 1641(d) and 19 C.F.R. Part 111, Subpart D, not 19 C.F.R. § 142.3a(d).

Rather than using the detailed and cumbersome due process provisions in 19 U.S.C. § 1641(d) and 19 C.F.R. Part 111, Subpart D created by Congress and promulgated by CBP following public notice and comment, CBP used entry filer code suspension under 19 C.F.R. § 142.3a(d), which conveniently has no due process requirements at all, to suspend Mr. Xu's entry filer code. But Congress and CBP regulations already provide exclusive enforcement mechanisms for the types of broker-compliance violations listed in the suspension letter, including warning letters, monetary penalties, permit actions, and suspension and revocation proceedings. By transforming alleged broker-compliance deficiencies into entry filer code misuse, CBP effectively avoided having to meet the strict due process requirements in 19 U.S.C. § 1641(d) and 19 C.F.R. Part 111, Subpart D and broadened 19 C.F.R. § 142.3a(d), which has no such procedural requirements, beyond its intended function into an easy and quick tool to put a disfavored broker such as Mr. Xu out of business.

The Court should reject CBP's expansive interpretation of entry filer code misuse to actions that do not involve use of an entry filer code and fall within the exclusive jurisdiction of other customs regulations, and hold that CBP acted arbitrarily, capriciously, abused its discretion, and otherwise acted contrary to law when it determined that Mr. Xu's alleged conduct constituted "willful misuse" of an entry filer code.

### B. CBP Did Not Provide Required Due Process

Even assuming the conduct identified by CBP in its suspension letter could be considered entry filer code misuse subject to 19 C.F.R. § 142.3a(d), this court should still reverse CBP's action.

### 1. Mr. Xu Possessed a Significant Protected Interest in the Continued Use of His Filer Code

Mr. Xu's active entry filer code was required to obtain an ACE account permitting him to electronically transmit entries through CBP's online systems. AR0284. Given modern customs brokerage operations depend overwhelmingly upon electronic entry filing, CBP's suspension of Mr. Xu's broker's entry filer code effectively prevented him from operating as a broker. CBP's June 1, 2026, suspension action imposed a minimum 180-day suspension and conditioned reactivation upon further agency review and additional corrective measures. AR0406. The deprivation imposed by CBP was therefore substantial.

### 2. The Procedures Utilized by CBP Were Inadequate Given the Severe Nature of the Deprivation

While CBP corresponded with Mr. Xu on numerous occasions and conducted compliance reviews, it ultimately imposed a minimum six-month suspension based upon a broad and evolving set of allegations concerning broker operations, powers of attorney, importer verification, and regulatory compliance, which all fall exclusively within the scope of 19 C.F.R. Part 111. AR0294-0299; AR0356-0365; AR0386-0388; AR0404-0406. The principle that regulated parties should receive notice of alleged deficiencies and an opportunity to respond before the imposition of significant sanctions is deeply embedded in both administrative law and due process jurisprudence. See 5 U.S.C. § 554(b)-(c); *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Congress has likewise recognized the importance of such protections in the licensing context. *See* 5 U.S.C. § 558(c). Given the severity of a 180-day entry filer code suspension, meaningful advance notice and an opportunity to contest the proposed action were both feasible and consistent with longstanding principles of administrative law.

At no point did CBP provide Mr. Xu with an opportunity to contest or respond to the factual and legal basis for deactivation before a neutral decisionmaker prior to the imposition of the sanction. CBP instead combined investigatory, prosecutorial, and adjudicatory functions in a single process culminating in a summary six-month suspension. The first time Mr. Xu learned the specific allegations CBP used to suspend his entry filer code was in CBP's June 1, 2026, suspension letter when it was too late to contest them. This foreclosed his opportunity to argue, *inter alia*, that these allegations do not constitute entry filer code misuse. If CBP had given Mr. Xu this opportunity to demonstrate he did not misuse his entry filer code, perhaps CBP would have changed its position, initiated disciplinary proceedings via the required procedures in 19 C.F.R. Part 111, Subpart D, and saved the parties and court from litigating the instant matter concerning CBP's unlawful suspension action.

### 3. CBP's Own Regulatory History Demonstrates That Greater Procedural Protections Were Feasible

CBP has previously recognized the substantial consequences associated with denying, suspending, or revoking entry filer codes and has proposed comprehensive administrative procedures that include meaningful procedural safeguards prior to the imposition of such sanctions. Following the government's confession of judgment in *Lizarraga*, Slip Op. 11-128 (October 17, 2011), in which it pledged that CBP would not suspend an entry filer code without providing basic due process, CBP proposed substantial revisions to 19 C.F.R. § 142.3a that included such mandatory due process provisions. *See* Establishment of Due Process Procedures on License-Like Processes, 78 F.R. 12998-01. In particular, CBP proposed "to add new subsection (1) to paragraph (d) in § 142.3a to provide that, in the event a port director finds that an assigned entry filer code has been misused by the importer or broker, CBP will provide the importer or broker with written notice proposing the suspension or revocation of the entry filer

code, including a description of the facts or conduct warranting the action. The importer or broker will have the opportunity to appeal the port director's decision in writing within 10 calendar days of receiving the written notice. Within 30 working days after receiving a timely filed appeal, the Assistant Commissioner, Office of International Trade, or his designee, will issue a decision in writing on the proposed action." *Id*. These procedures naturally closely mirror the due process procedures CBP enacted for suspending access to ABI set forth in 19 C.F.R. § 143.6 because the practical effect of the two actions in the same: inability to file electronic entries.

CBP's own regulatory history demonstrates that greater procedural protections were both feasible and appropriate. In CBP's proposed rule, it contemplated a detailed process governing the suspension and revocation of entry filer codes. Although the proposal was ultimately not promulgated, it remains instructive because it reflects CBP's own assessment of the seriousness of entry filer code deactivation warranting procedural protections well beyond those afforded to Mr. Xu. *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (recognizing that agency pronouncements, while not controlling, may constitute a body of experience and informed judgment to which courts may properly resort for guidance). CBP's proposed regulation thus demonstrates that it historically viewed entry filer code suspension as a significant deprivation warranting meaningful procedural safeguards. The entry filer code suspension sanction CBP imposed against Mr. Xu without providing him with any opportunity to first challenge the proposed action deprived Mr. Xu of the ability to conduct ordinary customs brokerage operations without due process. The Fifth Amendment and the APA require greater procedural protections than those provided by CBP. Accordingly, the court should hold that CBP violated Mr. Xu's

Fifth Amendment and APA right to due process and set aside CBP's entry filer code suspension action.

## VI. CONCLUSION

CBP's suspension of Mr. Xu's entry filer code was not based on any allegation of entry filer code misuse and was imposed without providing Mr. Xu an opportunity to respond to CBP's allegations before it imposed the suspension. CBP's decision was arbitrary, capricious, contrary to law, and reached without the due process required by the Fifth Amendment and APA. Accordingly, Mr. Xu respectfully requests that the court grant Mr. Xu's Rule 56.2 motion for judgment on the agency record, set aside CBP's entry filer code suspension decision, order CBP to immediately reactivate Mr. Xu's entry filer code, and grant any other further relief as the court deems just and proper.

This court's decision to reverse CBP's unlawful suspension action would not prevent CBP from addressing its genuine concerns with Mr. Xu's broker activities. Instead, it would merely ensure CBP acts in accordance with its own regulations. If CBP can identify actual entry filer code misuse by Mr. Xu, it is free to propose suspension of Mr. Xu's entry filer code if it first provides Mr. Xu with the opportunity to respond to specific factual allegations of such misuse prior to taking an enforcement action. Alternatively, CBP is free to propose suspension of Mr. Xu's broker license or permit for the existing allegations if it first complies with the due process requirements in 19 U.S.C. § 1641(d) and 19 C.F.R. Part 111, Subpart D. The court's decision would make clear, however, that CBP cannot allege broker license violations in 19 C.F.R. Part 111, Subpart C yet use the disciplinary provisions for entry filer code misuse in 19 C.F.R. § 142.3a, as it did here with Mr. Xu.

Dated: October 30, 2026

*/s/ Christopher J. Duncan*
Christopher J. Duncan
SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Lost Angeles, CA 90071
Telephone: (213) 624-2500
Facsimile: (213) 623-4581
Email: chris.duncan@squirepb.com

*Attorneys for Plaintiff*

**CERTIFICATE OF COMPLIANCE**

Pursuant to the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that this brief complies with the applicable word limitation. Excluding those portions of the brief exempted from the word limitation pursuant to Section 2(B)(1) of the Chambers Procedures, this brief contains 5,919 words. The undersigned relied on the word-count feature of Microsoft Word in preparing this certificate.

*/s/ Christopher J. Duncan*
Christopher J. Duncan

## CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2026, the foregoing **PLAINTIFF FORREST XU'S MOTION FOR JUDGMENT ON THE AGENCY RECORD** was filed and served via CM/ECF to the following parties:

Justin R. Miller
Attorney-in-Charge
International Trade Field Office

David Heitner
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278

*Attorneys for Defendant*

*/s/ Christopher J. Duncan*
Christopher J. Duncan